IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

MIAMI DIVISION

CASE NO.: 18-cr-20685-KMW-4

UNITED STATES OF AMERICA,        )
                                 )
         Plaintiff,              )         September 12, 2018
v.                               )
                                 )
ABRAHAM EDGARDO ORTEGA,          )         Pages 1 - 8
                                 )
         Defendant.              )
_____/

INITIAL APPEARANCE AND ARRAIGNMENT PROCEEDINGS

BEFORE THE HONORABLE CHRIS M. MCALILEY
UNITED STATES MAGISTRATE JUDGE

APPEARANCES:

On behalf of the Plaintiff:

                    UNITED STATES ATTORNEY'S OFFICE
                    Southern District of Florida
                    99 N.E. 4th Street
                    Miami, FL 33132
                    BY:  MICHAEL NADLER, AUSA

APPEARANCES CONTINUED:

On behalf of the Defendant:

    THE LS LAW FIRM
    Four Seasons Tower
    1441 Brickell Avenue
    Suite 1200,
    Miami, FL 33131
    BY: LILLY ANN SANCHEZ, ESQ.

Transcribed By:

    BONNIE JOY LEWIS, R.P.R.
    7001 SW 13 Street
    Pembroke Pines, FL 33023
    954-985-8875
    caselawrptg@gmail.com

1        (Thereupon, the following proceedings were held:)
2        THE COURT: Abraham Edgardo Ortega; Case Number
3   18-20685.
4        MR. NADLER: Good afternoon, Your Honor.
5        Michael Nadler on behalf of the United States.
6        THE COURT: Okay.
7        MS. SANCHEZ: Good afternoon, Your Honor.
8        Lilly Ann Sanchez on behalf of Mr. Ortega, who is
9   present before the Court.
10       THE COURT: Okay. Mr. Ortega, did you understand the
11  legal rights I explained?
12       THE DEFENDANT: Yes, I understand them.
13       THE COURT: Okay. There is an indictment that has
14  been filed against you. Have you had a chance to see it, sir?
15       THE DEFENDANT: Yes.
16       THE COURT: Okay. So then you are familiar with the
17  charges?
18       THE DEFENDANT: Yes, I do.
19       THE COURT: Okay. All right. And Miss Sanchez, did
20  you enter a permanent appearance?
21       MS. SANCHEZ: I did, Your Honor.
22       THE COURT: Okay. Very good. What about Mr. Ortega's
23  release?
24       MR. NADLER: The parties have stipulated to a bond,
25  Your Honor.

```
 1              THE COURT:  Okay.
 2              MR. NADLER:  It as a million dollar personal surety
 3    bond co-signed by the Defendant's brother and collateralized by
 4    his house in Palm Beach Gardens.
 5              The address being -- it is also identified in the
 6    Presentence Report.
 7              THE COURT:  Okay.
 8              MR. NADLER:  Sienna Circle.
 9              THE COURT:  Not on the first page.  Where?
10              MR. NADLER:  It's on the bottom of Page 4.
11    10169 --
12              THE COURT:  Hold on one second.  Oh, got it.
13              MR. NADLER:  Sienna Oaks Circle East, Palm Beach
14    Gardens, Florida.
15              THE COURT:  Nancy, that's S-I-E-N-N-A; Sienna Oaks
16    Circle East.  Okay.
17              MR. NADLER:  Mr. Ortega's brother is in the courtroom.
18    He has agreed not to encumber that property.  The parties have
19    also stipulated --
20              THE COURT:  Oh, does the brother own that property?
21              MR. NADLER:  The brother owns that property.
22              THE COURT:  I see.
23              MR. NADLER:  His name is also Abraham Ortega.
24              THE COURT:  Okay.
25              MR. NADLER:  A slightly different middle name.
```

```
 1              THE COURT:  Okay.
 2              MR. NADLER:  The parties have also stipulated to home
 3   confinement and electronic monitoring paid for by the
 4   Defendant.
 5              THE COURT:  Hold on.
 6               Okay.  Those are the terms that have been agreed to?
 7              MS. SANCHEZ:  Yes, Your Honor.
 8              THE COURT:  Okay.  So, Mr. Ortega, you can be released
 9   upon completing the paperwork for a one million dollar personal
10   surety bond co-signed by your brother also named Abraham
11   Ortega.
12              The special conditions are as follows:  If you have
13   any travel documents you must give them to your pretrial
14   services officer.  You will report to that officer as directed.
15              You must reside -- so he is going to reside at his
16   brother's home?
17              MS. SANCHEZ:  Yes, Your Honor.
18              THE COURT:  Okay.  Your brother's home at 10169 Sienna
19   Oaks Circle East in Palm Beach Gardens, Florida.
20              You will be subject to electronic monitoring, the cost
21   to be paid by you, and home confinement.  You can leave your
22   brother's home to meet with your lawyer, to attend court
23   appearances, and to receive necessary medical care, and any
24   other reasons that are preauthorized by Pretrial Services.
25   That's up to them without might not approve.
```

1              You may not possess a firearm or dangerous weapon.
2  That includes having any weapons in that home.
3              The Pretrial Services had suggested a GPS location
4  monitoring.  Now that you have heard the stipulations of the
5  parties is that still something that you recommend?
6              MR. NADLER:  The parties would stipulate to that as
7  well the GPS.
8              THE COURT:  Okay.  Then we will get specific about
9  that.
10             Okay.  Were there any other special conditions that
11 are sought?
12             MS. SANCHEZ:  Your Honor, I went through the special
13 conditions with the Government.  And they are checked off here
14 and I think the other ones here is not to visit any commercial
15 transportation establishments which I believe is --
16             THE COURT:  Okay.  I will order that.
17             MS. SANCHEZ:  And he also will be having perhaps if
18 there are any meetings that we have with the Government that
19 that should be included as well and not just attorney meetings.
20             THE COURT:  Well, presumably you would be there when
21 he does that, right?  So it falls under meetings with his
22 attorney.
23             MS. SANCHEZ:  Mr. Nadler mentioned that to me.
24             THE COURT:  Right.
25             MS. SANCHEZ:  I think that --

```
 1          MR. NADLER:  I think there is one other and that is no
 2  communication with any of the co-Defendants.
 3          THE COURT:  Okay.  So, you can't communicate with your
 4  co-Defendants except with your attorney.
 5          MR. NADLER:  That is all.  I think that's the extent
 6  of the terms, Your Honor.
 7          THE COURT:  Okay.  We could also go ahead with
 8  arraignment.
 9          MS. SANCHEZ:  Yes, we are prepared to arraign him,
10  Your Honor.  Absolutely.
11          THE COURT:  Okay.  Go ahead.
12          MS. SANCHEZ:  We waive formal reading of the
13  indictment.  We plead not guilty to the charges.  We request a
14  standing discovery order be entered by the Court and a jury
15  trial.
16          THE COURT:  All right.  So I will note your not guilty
17  plea and issue that standing discovery order and so you also
18  have been arraigned.
19          MS. SANCHEZ:  And his brother is here if you want to
20  take care of him that he understands that he cannot encumber
21  the house or anything.
22          THE COURT:  Sure.  Okay.
23          MS. SANCHEZ:  Just so we make sure that we take care
24  of that and we don't have to file -- and he speaks English.  So
25  no translator is necessary.
```

```
 1              THE COURT:  Okay.  Tell me your name, sir?
 2              MR. ORTEGA:  Abraham Ortega.
 3              THE COURT:  Okay.  So, Mr. Ortega, for your brother to
 4   be released you have to choose to sign on this bond.  You and
 5   your brother are signing a contract with the Government for a
 6   million dollars.
 7              So long as your brother meets all of the conditions of
 8   the bond, when the case is over, you and he will be released
 9   from any further obligation on that bond.
10              If, however, your bother were not to follow any of the
11   terms of the bond, then both you and he will be fully
12   responsible for the amount of the bond.
13              A Government lawyer presumably would file a judgment
14   against both of you and they would have at least 20 years to
15   try to collect on that bond.
16              So that is obviously a serious financial obligation
17   you assume when you sign on a bond.
18              Do you understand what I have just said, sir?
19              MR. ORTEGA:  I do.
20              THE COURT:  I also see that you own this home in Palm
21   Beach Gardens.  And under the terms of the bond, you are
22   agreeing to not in any way pledge, encumber, mortgage, rent,
23   lease, sell, et cetera, your home while the bond is pending.
24              Do you understand that?
25              MR. ORTEGA:  I do.
```

```
 1            THE COURT:  And you are okay with your brother living
 2   there under home confinement while this case is pending?
 3            MR. ORTEGA:  I am okay with that.
 4            THE COURT:  Okay.  Any questions for me, sir?
 5            MR. ORTEGA:  No, I do not have any questions.
 6            THE COURT:  All right.  Thank you for being here.
 7            MR. ORTEGA:  Thank you, Your Honor.
 8            THE COURT:  Okay.
 9            MR. NADLER:  Thank you, Your Honor.
10            (Thereupon, the proceedings concluded.)
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

## CERTIFICATE

I hereby certify that the foregoing transcript is an accurate transcript of the audio recorded proceedings in the above-entitled matter.

09/14/18

Bonnie Joy Lewis,
Registered Professional Reporter
CASE LAW REPORTING, INC.
7001 Southwest 13 Street,
Pembroke Pines, Florida 33023
954-985-8875