UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NUMBER: 18-CR-20685-WILLIAMS

UNITED STATES OF AMERICA,

-vs-

**ABRAHAM EDGARDO ORTEGA,**
    Defendant.
    _____/

## THE BOLIVARIAN REPUBLIC OF VENEZUELA'S MOTION FOR VICTIM STATUS AND RESTITUTION AND INCORPORATED MEMORANDUM OF LAW

COMES NOW, the Bolivarian Republic of Venezuela ("Venezuela"), and moves this Honorable Court, pursuant to 18 U.S.C. §§ 3663A, 3664, and 3771 and Federal Rules of Criminal Procedure 32 and 60, for recognition as a victim and entitlement to the rights afforded to victims, including restitution from Defendant Abraham Edgardo Ortega.

Venezuela requests that this Court conduct a restitution hearing at the time of the Defendant's sentencing, but prior to the entry of a forfeiture order, to determine Venezuela's loss amount. Venezuela will establish the losses directly and proximately caused by Ortega and his co-conspirators. Venezuela will seek a restitution judgment and will suggest that any monies recovered, or off-set by the property held under this Court's Protective Order, be placed into a blocked account,

administered by a third-party or placed into any judicially acceptable fund to inure to and for the benefit of the Venezuelan people.

Undersigned Counsel has conferred with AUSA Michael Nadler, and he has indicated that the Government opposes the instant motion.

## MEMORANDUM OF LAW

### I. INTRODUCTION

Petroleos de Venezuela, S.A. ("PDVSA")[1], Venezuela's state-owned oil company, is the Republic's primary source of income and foreign currency, and has also acted as a foreign currency exchange system. The PDVSA exchange system has been run by corrupt officials that have victimized Venezuela and its citizens by utilizing the foreign currency income of PDVSA, monies owned by the Republic, to fund corrupt foreign exchange embezzlement schemes, all while enriching themselves by accepting millions of dollars in bribes for access to the system.

The PDVSA funded foreign currency exchange system operated with a fixed-rate for Bolivares to U.S. Dollars. This was done in an effort to stabilize the economy

---

[1] The Constitution of the Bolivarian Republic of Venezuela ("Venezuela") establishes the ownership of "Mineral and hydrocarbon deposits, whatever their nature may be, existing within the nation's territory, under the territorial seabed, in the exclusive economic zone and on the continental shelf, belong to the Republic, are goods of the public domain and therefore are inalienable." Title II, Chapter I, article 12. Not only does the Bolivarian Republic of Venezuela own the raw materials, it also owns any entity created for the managment of the oil industry (i.e., Petroleos de Venezuela, S.A.). See, Title VI, Chapter I, article 303.[1]

and attract foreign companies in joint ventures. For example, in 2014, the true market rate was 60 Bolivares to $1, whereas the official government fixed-rate was 6 Bolivares to $1. One could purchase 6,000,000 Bolivares in the market for $100,000, then, if granted access by a corrupt official, exchange the same 6,000,000 Bolivares for $1,000,000 through the PDVSA funded currency exchange system. The ten-fold difference between the marketplace and the official, fixed-rate currency exchange system was funded from the Republic's coffers.

Corrupt officials, such as PDVSA Executive Director of Financial Planning Abraham Edgardo Oretaga ("Oretaga"), accepted muti-million dollar bribes to grant "priority status" to joint venture participants, permit access to the favorable foreign exchange rates and participate in fraudulent loan schemes. These schemes funneled billions of dollars out of the Republic and into the accounts of corrupt officials, wealthy businessmen and international money launderers.

On August 16, 2018, a federal Grand Jury returned an Indictment charging Francisco Convit Guruceaga, Jose Vicente Amparan Croquer, Carmelo Antonio Urdaneta Aquí, Abraham Edgardo Oretaga, Gustavo Adolfo Hernandez Frieri, Hugo Andre Ramalho Gois, Marcelo Frederico Gutierrez Acosts Y Lara, and Mario Enrique Bonilla Vallera with Conspiracy to Commit Money Laundering, substantive counts of Laundering of Money Instruments and substantive counts of Interstate and Foreign Travel in Aid of Racketeering. (D.E. 19). The Indictment also contained

forfetiure allegations. *Id.* At 5-6. On August 21, 2018, the Government filed its Motion for Protective Order (D.E. 31), and this Court entered its Protective Order for Assets Subject to Forfeiture (D.E. 32).

On October 24, 2018, the Government filed a Superseding Information as to Abraham Edgardo Ortega ("Oretaga"), charging him with Conspiracy to Commit Money Laundering (amending the dates to include November 2014 to July 2018) and a forfeiture allegation which includes a provision for the forefetiure of substitute assets. (D.E. 53). The Information alleges that the unlawful activity is: "(a) A felony violation of the Foreign Corrupt Practices Act, in violaiton of Title 15, United States Code, Section 78dd-3, and (b) <u>An offense against a foreign nation</u> [Venezuela] involving bribery of a public official, and the <u>misappropriation, theft and embezzlement of public [Venezuelan] funds</u> by and for the benefit of a public official." *Id.* (emphasis added).

On October 31, 2018, pursuant to a plea agreement (D.E. 64), Ortega pled guilty to the offenses in the Superseding Information. Ortega agreed to assist in the forfeiture of assets, including, but not limited to:

(i)  A sum of at least $12 million in U.S. currency, which may be sought as a forfeiture money judgment;

> (ii) All assets on deposit in account numbers 1466054, 1465724, and 55102421 at City National Bank in New Jersey held by Global Securities Trade Finance;
>
> (iii) All assets on deposit in account/portfolio number 1303311-00 at Deltec Bank & Trust Limited in Nassau, THE BAHAMAS, including, but not limited to, all shares of Global Securities Trade Finance Class D Series D-1;
>
> (iv) All assets on deposit in accounting/portfolio number 10.609020 at Zarrattini & Co. Bank in Lugano, SWITZERLAND, held in the name of Big Green Valley SA, including but not limited to, all shares of Global Securities Trade Finance Class C; and
>
> (v) All assets on deposit in account number 200020600 at Ansbacher Limited in THE BAHAMAS, held in the name of Greatwalls FS.

*Id.* At 7-8. Ortega's Factual Proffer, (D.E. 65), contains a thorough recitation of the fraud and theft of Venezuelan funds facilitated by Ortega and his co-conspirators in three separate fraudulent schemes.

## II. THE BOLIVARIAN REPUBLIC OF VENEZUELA IS ENTITLED TO THE RIGHTS OF A "VICTIM" UNDER BOTH THE CVRA AND THE MVRA.

Both the CVRA and the MVRA define a crime "victim" as "a person directly and proximately harmed as a result of the commission of" an offense. 18 U.S.C. §§

3771(e)(2)(A) and 3663A(a)(2).

The broad "directly and proximately harmed" language accords crime victims' rights to all persons incurring foreseeable harms as a result of a defendant's criminal acts. Thus, as long as a person "suffers harm as a result of the crime's commission" he, she, or it is a crime victim under the CVRA, regardless of whether a defendant intended to victimize that particular person or entity. *In re Stewart*, 552 F.3d 1285, 1289 (11th Cir. 2008).

In enacting the CVRA, Congress meant to protect a victim's right to "full and timely restitution as provided by law." 18 U.S.C. § 3771(a)(6). The statutory purpose of the CVRA is to ensure that victims of crime are treated with respect and heard by the prosecution and the court, and to enable them to obtain the restitution they are legally entitled to under the MVRA 18 U.S.C. § 3663A.

The MVRA provides that, "when sentencing a defendant convicted of an offense described in subsection (c) [of the MVRA], the court shall order [. . . ] that the defendant make restitution to the victim of the offense[.]" 18 U.S.C. § 3663A(a)(1). Subsection (c), mandates application of the MVRA to all offenses "against property under [Title 18] [. . .] including any offense committed by fraud or deceit." *Id.* at § 3663A(c)(1)(A)(ii). Foreign Corrupt Practices Act violations, money laundering, and conspiracy to commit FCPA offenses and money laundering are all offenses subject to mandatory restitution under the MVRA. *See, e.g., United States*

*v. Collins,* 854 F.3d 1324 (11th Cir. 2017); *United States v. Luis* 765 F.3d 1061, 1066 (9th Cir. 2014); *United States v. Diaz,* 245 F.3d 294, 296 (3d Cir. 2001); *United States v. Peterson,* 538 F.3d 1064, 1075 (9th Cir. 2008). In the FCPA context several victimized government entities have received restitution, *See Cook Islands in U.S. v. Kenny Int'l Corp.,* Cr. No. 79-372 (D.D.C. 1979) (ordering restitution to Cook Islands government for a guilty plea to FCPA bribery violations); *West Germany in U.S. v. F.G. Mason Eng'g, Inc.,* Cr. B-90-29 (D.Conn. 1990) (ordering restitution to the West German government for a guilty plea to FCPA bribery violations); Haiti in *U.S. v. Diaz,* No. 09-cr-20346-JEM, at Dkt. 37 (S.D. Fla. Aug. 5, 2010) (Defendant ordered to pay restitution to Haitian government resulting from a guilty plea to FCPA bribery violations involving state-owned telecommunications company).

Further, where an offense involves as an element "a scheme, conspiracy, or pattern of criminal activity," any person directly harmed by the defendant's criminal conduct in the course of the scheme is a victim. 18 U.S.C. 3663A(a)(2). *See, United States v. Dickerson,* 370 F.3d 1330 (11th Cir. 2004); *United States v. Lawrence,* 189 F.3d 838, 846 (9th Cir. 1999); *United States v. Maturin,* 488 F.3d 657, 662 (5th Cir. 2007) ("The MVRA ... broadens the definition of the term 'victim' for any 'offense that involves as an element a scheme, conspiracy, or pattern of criminal activity' to include 'any person directly harmed by the defendant's criminal conduct

in the course of the scheme, conspiracy, or pattern.'"); *United States v. Hughey*, 147 F.3d 423, 437 (5th Cir. 1998).

Nothing within the MVRA precludes a foreign government from receiving restitution as an identified victim. *See United States v. Zhang*, 789 F.3d 214, 216-17 (1st Cir. 2015); *United States v. Bengis*, 631 F.3d 33 (2d Cir. 2011) (South Africa awarded restitution as victim of lobster catching scheme); *United States v. Khanh Vu,* C.R. No. V-11-31, 2011 U.S. Dist. LEXIS 59471, at *11 (S.D. Tex. 2011) (holding that the government can qualify for restitution for violations of the Migratory Bird Act); *United States v. Ekanem*, 383 F.3d 40, 42-43 (2d Cir. 2004) (holding that the U.S. government was a "victim" for purposes of restitution and that the meaning of "victim" in the MVRA "is not controlled by the default definition of 'person' in the Dictionary Act."). Appellate courts from around the country have affirmed restitution orders to the U.S. Government, its agencies and local governments. See, *United States v. Vaknin*, 112 F.3d 579, 591 (1st Cit. 1997) (FDIC); *Ratliff v. United States*, 999 F.2d 1023, 1027 (6th Cir. 1993) (Department of Labor); *United States v. Savoie*, 985 F.2d 612, 619 (1st Cir. 1993) (city government); *United States v. Hand*, 863 F.2d 1100, 1103 (3d Cit. 1988) (U.S. Attorney's Office); *United States v. Lewis*, 104 F.3d 690, 693 (5th Cir. 1996) (Department of Agriculture); and *United States v. Lynch*, 699 F.2d 839, 845 (7th Cir. 1982) (governmental bodies are "persons" because they stand in the shoes of the

taxpayers).

Similarly, in *Pasquantino v. United States*, 544 U.S. 349, 382, 125 S. Ct. 1766, 1787 (2005) (Ginsburg, J., dissenting), the government acknowledged that providing restitution to a foreign government would be appropriate. There, the defendants were convicted of wire fraud in a scheme that smuggled liquor into Canada without paying Canadian taxes. The *Pasquantino* dissent observed that, at oral argument, the government conceded that "restitution [to Canada] under the [MVRA] should be ordered[.] *Id.* at 382; *see also United States v. Near,* 708 F. App'x 590 (11th Cir. 2017) (stating that "[t]he MVRA defines the term "victim" expansively. ").

Abraham Edgardo Ortega pled guilty to Conspiracy to Commit Money Laundering with the specific allegation that he violated the Foreign Corrupt Practices Act and committed an offense against the Bolivarian Republic of Venezuela involving the misappropriation, theft, and embezzlement of Venezuelan funds. Ortega utilized his high-level position(s) within PDVSA to grant priority status to companies interested in entering joint ventures with the Venezuelan Government in exchange for multi-million-dollar bribes. Further, Ortega knowingly permitted the use of fraudulent loan schemes utilizing the PDVSA currency exchange, wherein, shell companies armed with assignments could, with two simple transactions, turn 35 million Euros into 510 million Euros. See D.E. 65 at 5-6. The 475 million Euro difference between the two exchanges came directly from the funds

owned by Venezuela.

Thus, Venezuela should be recognized as a victim under the MVRA and CVRA because of Ortega's admitted illegal conduct and because but-for Ortega's involvement in the conspiracy, and his influence over PDVSA, Venezuela would not have been injured to the extent it was here.

### III. AS A VICTIM UNDER THE CVRA AND MVRA, THE BOLIVARIAN REPUBLIC OF VENEZUELA HAS A RIGHT TO RESTITUTION.

Venezuela has the right, among others provided by the CVRA: (1) not to be excluded from any public court proceeding; (2) to be reasonably heard at any public proceeding in the district court involving release, plea, sentencing, or any parole proceeding; (3) to confer with the attorneys for the Government in the case and be informed by them; and (4) to be considered by the Court for "full and timely restitution as provided in law." 18 U.S.C. § 3771(a)(3)–(6).

Because Venezuela has suffered at the hands of Ortega and the other co-conspirators, because Venezuela is a victim as defined by the MVRA and CVRA, and because as a victim Venezuela is entitled to the remedies delineated in 18 U.S.C. § 3771(a)(3)–(6), Venezuela should be allowed to (1) participate in these and related proceedings; and (2) be awarded restitution.

A victim may present evidence at sentencing to establish its own claim for restitution, even though the victim is not a party and is not identified by the

Government or Probation Department as a victim. 18 U.S.C. § 3664(d). The victim must prove only that it is a victim and the amount of loss by a preponderance of the evidence. *See* 18 U.S.C. § 3664(e).

Defendant Ortega accepted millions of dollars in bribes to permit fraudulent loan schemes utilizing the PDVSA exchange rates (in one case, Rantor Capital and Eaton Global turned $35 million Euros into $510 million Euros), misappropriating hundreds of millions of dollars belonging to Venezuela. Venezuela's right to restitution extends to the "full amount of [its] ... losses ... without consideration of the economic circumstances" of the Defendant. 18 U.S.C. § 3664(f)(1)(A). Here, because the Defendant has pled guilty to conspiracy, the quantification of the "harms the offense caused" include harm "caused by the conspiracy itself." *United States v. Laney*, 189 F.3d 954, 965 (9th Cir. 1999).

The Indictment in this Defendant's case describes acts of conspiracy committed by the Defendant (for which he has admitted guilt) from "in or around November 2014 and continuing through in or around July 2018...." Venezuela seeks restitution for the monies paid to Ortega, and monies misappropriated/stolen from Venezuela by his co-conspirators, during the years in which he engaged in the various schemes underlying his offense of conviction and relevant conduct, *to wit*, the misappropriation, theft, and embezzlement of Venezuelan funds.

The fraudulent loan schemes, use of the PDVSA foreign currency exchange

rates and the international money laundering, all estimated at over $1.2 billion in this case, are all complex. Venezuela is presently in the process of attempting to calculate the losses directly and proximately caused by Ortega and his co-conspirators. Venezuela will be prepared to prove those losses at a restitution hearing.

Venezuela recognizes that there will be a significant forfeiture award entered in this case, and that the Government has the "discretionary authority to authorize the restoration of forfeited property to compensate victims by means of court-ordered restitution." Justice Manual, 9-121.000. The Department of Justice has given priority distribution of forfeiture assets to victims before proceeds can be shared with law enforcement agencies, and the chief of the Asset Forfeiture Money Laundering section may transfer forfeited property or proceeds to this Court for use in satisfaction of this Court's restitution order. However, prior to the forfeiture order being entered in this case, this Court has the authority to utilize the property being held under this Court's Protective Order(s) (i.e., D.E. 32) to offset the victim's loss. See, 18 U.S.C. 981(c). The sole authority enjoyed by the Attorney General does not arise until the entry of this Court's forfeiture order.

### IV. CONCLUSION

This motion shall not be construed to be a waiver of jurisidictional immunity under 28 U.S.C. §§ 1604 or 1605. Accordingly, for all of the reasons stated above, The Bolivarian Republic of Venezuela respectfully requests that:

1. The Court grant Venezuela's motion for victim status under both the CVRA and MVRA;

2. That a restitution hearing be set prior to or at the same time of the Defendant Ortega's July 12, 2019 sentencing;

3. The Court award Venezuela the restitution it is seeking;

4. The Court off-set the restitution order with the property or proceeds being held pursuant to this Court's Protective Order, prior to the entry of any forfeiture order.

Respectfully Submitted,

BY: /s/ *William R. Tunkey*
**WILLIAM R. TUNKEY**
**WILLIAM TUNKEY, P.A.**
FBN# 125153
Bill@TunkeyLaw.com

**JOSEPH E. NASCIMENTO**
**ROSS AMSEL RABEN**
**NASCIMENTO, PLLC**
FBN# 70096
JoeNascimento@crimlawfirm.com
2250 S.W. Third Avenue, 4th floor
Miami, Florida 33129-2095
(305) 858-9550
**COUNSEL FOR VICTIM**

## **CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that on this 2nd day of April, 2019, I electronically filed the foregoing document with the Clerk of the Court using the ECF system and electronically served all counsel of record.

BY: /s *JOSEPH E. NASCIMENTO*
JOSEPH E. NASCIMENTO