HUD-1

U.S. Department of Housing
and Urban Development

OMB No. 2502-0265

**A. Settlement Statement**

**B. Type of Loan**

| ○ 1. FHA | ○ 2. FmHA | ○ 3. Conv. Unins. | **6. File Number** | **7. Loan Number** | **8. Mortg. Ins. Case Num.** |
|---|---|---|---|---|---|
| ○ 4. V.A. | ○ 5. Conv. Ins. | | 15234 | ID: | |

**C. NOTE:** This form is furnished to give you a statement of actual settlement costs. Amounts paid to and by the settlement agent are shown. Items marked "(p.o.c.)" were paid outside the closing; they are shown here for informational purposes and are not included in the totals.

**D. NAME OF BORROWER:** LAND TRUST TH 041117 dated April 10, 2017
**Address of Borrower:** 2101 South Surf Road, Unit 2 E, Hollywood, Florida 33019

**E. NAME OF SELLER:** PMG DRIFTWOOD, LLC, a Florida limited liability company
**Address of Seller:** 1441 Brickell Avenue, Suite 1510, Miami, Florida 33131          TIN: 45-5122415

**F. NAME OF LENDER:**
**Address of Lender:**

**G. PROPERTY LOCATION:** 2101 South Surf Road, Unit 2E, Hollywood, Florida 33019          TIN: 36-2041272

**H. SETTLEMENT AGENT:** Arnstein & Lohr, LLP
**Place of Settlement:** 200 S. Biscayne Boulevard, Suite 3600, Miami, Florida 33131          Phone: 305-428-4500

**I. SETTLEMENT DATE:** 4/14/17          DISBURSEMENT DATE: 4/14/17

| J. Summary of borrower's transaction | | K. Summary of seller's transaction | |
|---|---|---|---|
| **100. Gross amount due from borrower:** | | **400. Gross amount due to seller:** | |
| 101. Contract sales price | 1,050,000.00 | 401. Contract sales price | 1,050,000.00 |
| 102. Personal property | | 402. Personal property | |
| 103. Settlement charges to borrower (Line 1400) | 7,830.97 | 403. | |
| 104. | | 404. | |
| 105. Closing charge 1.75% | 18,375.00 | 405. Closing charge 1.75% | 18,375.00 |
| **Adjustments for items paid by seller in advance:** | | **Adjustments for items paid by seller in advance:** | |
| 106. City/town taxes | | 406. City/town taxes | |
| 107. County taxes | | 407. County taxes | |
| 108. Assessments | | 408. Assessments | |
| 109. Hook up fee | 2,000.00 | 409. Hook up fee | 2,000.00 |
| 110. | | 410. | |
| 111. | | 411. | |
| 112. | | 412. | |
| **120. Gross amount due from borrower:** | 1,078,205.97 | **420. Gross amount due to seller:** | 1,070,375.00 |
| **200. Amounts paid by or in behalf of borrower:** | | **500. Reductions in amount due to seller:** | |
| 201. Deposit or earnest money | 900,000.00 | 501. Excess deposit (see instructions) | |
| 202. Principal amount of new loan(s) | | 502. Settlement charges to seller (line 1400) | 112,484.14 |
| 203. Existing loan(s) taken subject to | | 503. Existing loan(s) taken subject to | |
| 204. Principal amount of second mortgage | | 504. Payoff of first mortgage loan | |
| 205. | | 505. Payoff of second mortgage loan | |
| 206. | | 506. Deposits held by seller | |
| 207. Principal amt of mortgage held by seller | | 507. Principal amt of mortgage held by seller | |
| 208. Closing Credit | 61,500.00 | 508. Closing Credit | 61,500.00 |
| 209. | | 509. | |
| **Adjustments for items unpaid by seller:** | | **Adjustments for items unpaid by seller:** | |
| 210. | | 510. | |
| 211. County taxes from 01/01/17 to 04/14/17 | 586.14 | 511. County taxes from 01/01/17 to 04/14/17 | 586.14 |
| 212. | | 512. | |
| 213. | | 513. | |
| 214. | | 514. | |
| 215. | | 515. | |
| 216. | | 516. | |
| 217. | | 517. | |
| 218. | | 518. | |
| 219. | | 519. | |
| **220. Total paid by/for borrower:** | 962,086.14 | **520. Total reductions in amount due seller:** | 174,570.28 |
| **300. Cash at settlement from/to borrower:** | | **600. Cash at settlement to/from seller:** | |
| 301. Gross amount due from borrower (line 120) | 1,078,205.97 | 601. Gross amount due to seller (line 420) | 1,070,375.00 |
| 302. Less amount paid by/for the borrower (line 220) | (962,086.14) | 602. Less total reductions in amount due seller (line 520) | (174,570.28) |
| 303. Cash [✓] From [ ] To Borrower: | 116,119.83 | 603. Cash [✓] To [ ] From Seller: | 895,804.72 |

**Substitute Form 1099 Seller Statement:** The information contained in blocks E, G, H, and I and on line 401 is important tax information and is being furnished to the IRS. If you are required to file a return, a negligence penalty or other sanction will be imposed on you if this item is required to be reported and the IRS determines that it has not been reported.

**Seller Instructions:** If this real estate was your principal residence, file Form 2119, Sale or Exchange of Principal Residence, for any gain, with your tax return; for other transactions, complete the applicable parts of Form 4797, Form 6262 and/or Schedule D (Form 1040).

DoubleTime®

| L. Settlement charges | | Borrower POC/Seller POC | Paid from Borrower's Funds at Settlement | Paid from Seller's Funds at Settlement |
|---|---|---|---|---|
| 700. Total Sales/Brokers Com. based on price | $1,050,000.00 @ | % = 91,875.00 | | |
| 701. | 28,875.00 | % to First Way Realty | | |
| 702. | 63,000.00 | % to ISG | | |
| 703. Commission paid at settlement | | | | 91,875.00 |
| 704. | | to | | |
| **800. Items payable in connection with loan:** | | Borrower POC/Seller POC | | |
| 801. | % to | | | |
| 802. | % to | | | |
| 803. | | to | | |
| 804. | | to | | |
| 805. | | to | | |
| 806. | | to | | |
| 807. | | to | | |
| 808. | | to | | |
| 809. | | to | | |
| 810. | | to | | |
| 811. | | to | | |
| **900. Items required by lender to be paid in advance:** | | Borrower POC/Seller POC | | |
| 901. Interest from | to | @ | /day | |
| 902. Mortgage insurance premium for | months to | | | |
| 903. Hazard insurance premium for | years to | | | |
| 904. Flood insurance premium for | years to | | | |
| 905. | years to | | | |
| **1000. Reserves deposited with lender:** | | Borrower POC/Seller POC | | |
| 1001. Hazard insurance | months @ | per month | | |
| 1002. Mortgage insurance | months @ | per month | | |
| 1003. City property taxes | months @ | per month | | |
| 1004. County property taxes | months @ | per month | | |
| 1005. Annual assessments | months @ | per month | | |
| 1006. Flood insurance | months @ | per month | | |
| 1007. | months @ | per month | | |
| 1008. | months @ | per month | | |
| 1009. Aggregate accounting adjustment | | | | |
| **1100. Title charges:** | | Borrower POC/Seller POC | | |
| 1101. Settlement or closing fee | to Arnstein & Lehr, LLP | | 500.00 | |
| 1102. Abstract or title search | to | | | |
| 1103. Title examination | to | | | |
| 1104. Title insurance binder | to | | | |
| 1105. Document preparation | to | | | |
| 1106. Notary fees | to | | | |
| 1107. Attorney's Fees | to Arnstein & Lehr, LLP | | | 5,806.50 |
| (includes above item numbers: | | ) | | |
| 1108. Title Insurance | to First American Title Insurance Company/Arnstein & Lehr, LLP | | | 5,200.00 |
| (includes above item numbers: | | ) | | |
| 1109. Lender's coverage (Premium): | | | | |
| 1110. Owner's coverage (Premium): | $1,050,000.00 ($5,200.00) | | | |
| 1111. Endorse: | | | | |
| 1112. | to | | | |
| 1113. | to | | | |
| **1200. Government recording and transfer charges:** | | | | |
| 1201. Recording fees | Deed | $18.50 Mortgage(s) | Releases | 18.50 |
| 1202. City/county tax/stamps | Deed | Mortgage(s) | | |
| 1203. State tax/stamps | Deed | $7,350.00 Mortgage(s) | | 7,350.00 |
| 1204. E-recording fee | to Broward County Board of County Commissioners | | 35.00 | |
| 1205. Sufficient Funds Affidavit | to Broward County Board of County Commissioners | | | 27.00 |
| **1300. Additional settlement charges:** | | Borrower POC/Seller POC | | |
| 1301. Working Capital Contribution | to Sage Beach Condominium Association, Inc. | | 4,091.20 | |
| 1302. Maint. 4/14/17-4/30/17 | to Sage Beach Condominium Association, Inc. | | 1,159.17 | |
| 1303. Maint. 5/1/17-5/31/17 | to Sage Beach Condominium Association, Inc. | | 2,045.60 | |
| 1304. 2016 Real Estate Taxes | to Broward County Tax Collector | | | 2,207.14 |
| 1305. | to | | | |
| 1306. | to | | | |
| 1307. | to | | | |
| 1308. | to | | | |
| 1309. | | | | |
| **1400. Total settlement charges:** | | | 7,830.97 | 112,484.14 |
| ( Enter on lines 103, Section J and 502, Section K ) | | | | |

I have carefully reviewed the HUD-1 Settlement Statement and to the best of my knowledge and belief, it is a true and accurate statement of all receipts and disbursements made on my account or by me in this transaction. I further certify that I have received a copy of the HUD-1 Settlement Statement.

_____  Borrower
Julia Eugenia Hernandez, Trustee

_____  Borrower

PMG DRIFTWOOD, LLC

By: _____  Seller
Jasmine Zanetti, Authorized Representative

_____  Seller

The HUD-1 Settlement Statement which I have prepared is a true and accurate account of this transaction. I have caused, or will cause, the funds to be disbursed in accordance with this statement.

Arnstein & Lehr, LLP

By: _____

As Its Authorized Representative                                    Date

WARNING: It is a crime to knowingly make false statements to the United States on this or any other similar form. Penalties upon conviction can include a fine and imprisonment. For details see: Title 18 U.S. Code Section 1001 and Section 1010.

DoubleTime®

## AMENDMENT TO PURCHASE AGREEMENT

**THIS AMENDMENT TO PURCHASE AGREEMENT** (this "Amendment") is entered into this _____ day of April, 2017, by and between **PMG DRIFTWOOD, LLC**, a Florida limited liability company ("Seller"), and **Tulia E. Quijano de Hernandez** ("Buyer"). Buyer and Seller are hereinafter referred to, individually, as a "Party," and, collectively, as the "Parties."

R E C I T A L S

WHEREAS, Seller and Buyer are the parties to that certain Purchase Agreement and certain addenda thereto, each dated on or about November 16, 2016 (the "Agreement"), with respect to Unit 2E in Sage Beach, a Condominium.

WHEREAS, the Parties desire to amend the Agreement in certain respects as more particularly set forth below.

NOW, THEREFORE, in consideration of the execution and delivery of this Amendment and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties hereby agree as follows:

1.      Recitals; Defined Terms.  The foregoing recitals are true and correct and are incorporated herein as if set forth herein at length.  Unless the context otherwise requires, all initial capitalized terms used but not defined in this Amendment shall have the meaning or meanings given to such terms in the Agreement.

2.      Assignment.  Paragraph 22 of the Agreement is hereby revised to reflect that Buyer may assign its rights and obligations under the Agreement to any immediate family member, any trust for the benefit of Buyer and/or his immediate family members and/or any corporation, partnership or other entity the majority of which is beneficially owned by Buyer (or his immediate family members), or has common beneficial ownership with Buyer, prior to closing provided Buyer and its proposed assignee execute and/or deliver to Seller (as applicable) not less than ten (10) days prior to closing (a) an Assignment of Purchase Agreement in the form attached hereto as Exhibit A, and (b) the Articles of Organization (or equivalent documents) for the assignee entity establishing the above requirements are met, if applicable.

3.      No Rescission.  The execution of this Amendment shall neither extend, toll, nor reinstate any rights of the Buyer to rescind the Agreement pursuant to the terms thereof, or of Section 718.503(1)(a), Florida Statutes.  Notwithstanding the foregoing, in the event that it is determined that the execution of this Amendment does serve to extend, toll or reinstate any rights of Buyer to rescind the Agreement pursuant to its terms or the terms of Section 718.503(1)(a), Florida Statutes, then Buyer expressly understands and agrees that any such rescission right shall only be effective and apply to the terms and provisions of this Amendment only and that the Agreement, as unmodified by this Amendment, shall remain in full force and effect.

4.    Release.  As an inducement to each Party entering into this Amendment, each Party represents and warrants to the other Party that to its knowledge, as of the date hereof, it does not have any claims, defenses, counterclaims or offsets under the Agreement.  Furthermore, each Party hereby agrees and acknowledges that to its knowledge, as of the date hereof, the other Party is free from default under the terms of the Agreement.

5.    Ratification.  Except as expressly modified by this Amendment, the provisions of the Agreement remain in full force and effect and are hereby ratified and confirmed.

6.    Counterparts.  The Parties acknowledge and agree that this Amendment may be executed in separate or multiple counterparts, and transmitted via facsimile, each such counterpart (whether transmitted via facsimile or otherwise), when executed, shall constitute an integral part of one and the same agreement between the Parties and shall have the same validity as an originally executed Amendment.

7.    Entire Agreement.  This Amendment is the entire agreement of the Parties with respect to the subject matter hereof and can only be amended by a written instrument signed by the Party against whom enforcement is sought.

Wherefore, the Parties have set forth their hands and seals below.

BUYER:

Tulia E. Quijano de Hernandez

SELLER:

PMG DRIFTWOOD, LLC, a Florida
limited liability company

By: _____
Name: _____
Title: _____

EXHIBIT A

FORM OF ASSIGNMENT OF PURCHASE AGREEMENT

<u>ASSIGNMENT OF PURCHASE AGREEMENT</u>

For value received, the undersigned **Tulia E. Quijano de Hernandez** (the "**Assignor**") does hereby assign, transfer and set over unto **Land Trust TH 041117** (the "**Assignee**"), whose mailing address is 9055 SW 73rd Ct. Ap # 1910 Miami 33156, all of Assignor's right, title, interest, and obligations under that certain Purchase Agreement dated November 16, 2016 (the "**Purchase Agreement**") between Assignor and **PMG Driftwood, LLC** (the "**Seller**") with respect to the purchase and sale of **Unit 2E** in Sage Beach, A Condominium (the "**Assignment**").

The Assignee, by acceptance of this Assignment, assumes and agrees to perform the obligations of the Assignor under the aforesaid Purchase Agreement. Notwithstanding the Assignment by Assignor to Assignee, the Assignor shall remain liable to Seller under the terms and conditions of the Purchase Agreement until the closing of the transaction under the Purchase Agreement.

The parties hereto authorize the escrow agent holding the deposit, if any, to transfer the deposit being held by it to and for the benefit of Assignee.

The execution of this Assignment shall, neither extend, toll, nor reinstate any rights of the Assignor to rescind the Purchase Agreement pursuant to the terms thereof, or of Section 718.503(1)(a), Florida Statutes. Notwithstanding the foregoing, in the event that it is determined that the execution of this Assignment does serve to extend, toll or reinstate any rights of Assignor to rescind the Purchase Agreement pursuant to its terms or the terms of Section 718.503(1)(a), Florida Statutes, then Assignor and Assignee expressly understand and agree that any such rescission right shall only be effective and apply to the terms and provisions of this Assignment.

This Assignment may be executed in any number of counterparts and by the separate parties hereto in separate counterparts, each of which when taken together shall be deemed to be one and the same instrument. Signatures of the parties hereto on copies of this Assignment transmitted by facsimile machine shall be deemed originals for all purposes hereunder, and shall be binding upon the parties hereto. The captions in this Assignment are for convenience and are not intended to affect the interpretation of the terms hereof.

[Signature Page follows]

In witness whereof, the Assignor and the Assignee have executed the foregoing Assignment of Purchase Agreement effective this __17__ day of __April__, 2017.

Signed, Sealed & Delivered
in the Presence of:

Assignor:

Print Name: Marcela Velasquez

Print Name: Granitva Espindola

Assignee:

By:
Print Name: Gloria M. Cabus
Title: Notary

Print Name: Marcela Velasquez

Print Name: Granitva Espindola

GLORIA M CABUS
Commission # GG 030413
Expires September 14, 2020
Bonded Thru Troy Fain Insurance 800-385-7019

## CLOSING AGREEMENT

**THIS CLOSING AGREEMENT** (the "Agreement") is made as of the _____ day of _____, 2017 by and between **PMG Driftwood, LLC**, a Florida limited liability company (the "**Seller**") and **LAND TRUST TH 041117 dated April 10, 2017** (the "**Buyer**").

### R E C I T A L S:

A.      Buyer and Seller are, on this date, closing on the purchase and sale of:

   **Condominium Unit No. 2E, of SAGE BEACH, A CONDOMINIUM, according to the Declaration of Condominium thereof recorded under Instrument No. 113379593, of the Public Records of Broward County, Florida, and all amendments thereto, together with its undivided share in the common elements. (the "Unit") (the "Condominium").**

B.      Buyer and Seller desire to summarize certain agreements with respect to the closing of the Unit in this Agreement.

   **NOW, THEREFORE,** in consideration of the premises and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Buyer and Seller hereby agree as follows:

1.      <u>**Condominium Association Insurance and Unit Owner's Insurance**</u>. Buyer understands and agrees that the insurance carried by the Condominium association does not cover personal injury occurring within the Unit, nor does it cover damage to personal property within the Unit, including but not limited to floor, wall, and ceiling coverings, electrical fixtures, appliances, water heaters, water filters, built-in cabinets and countertops and window treatments, including curtains, drapes, blinds, hardware, and similar window treatment components or replacement of any of the forgoing which are located within the boundaries of the unit and serve only such unit. Such property and any insurance thereupon is the responsibility of the Unit owner. In the event the Buyer elects to purchase insurance coverage, Buyer acknowledges that a condominium unit owner's policy must conform to the requirements of Section 627.714 Florida Statutes.

2.      **Delivery of Amendments**.   As required by Rule 61B-18.001(4), F.A.C., Seller hereby confirms that it has provided to Buyer all documents and amendments thereto required to be delivered to purchaser(s) pursuant to Chapter 718, Florida Statutes including but not limited to the package of amendments dated **7.6.16** (the "**Documents**"). In accordance with Florida law, a purchaser of a condominium unit from a developer has the right to rescind his/her Purchase Agreement within fifteen (15) days of receipt of an amendment to the condominium documents which materially alters or modifies the offering in a manner that is adverse to the purchaser.

   **Buyer's Initials Acknowledging Receipt Of The Documents as more specifically defined in Section 2 above:**

3.      **Delivery of Closing Documents**.   Buyer hereby requests that Arnstein & Lehr LLP (the "**Law Firm**" or the "**Closing Agent**"), the Closing Agent, shall deliver a scanned copy of the closing documents, including a copy of the recorded deed and title policy to the Buyer via email only to the email address on file or to the following

114006488.1

Email address: 

By checking this box [ ] buyer requests that the closing documents, including but not limited to the original recorded deed and original title insurance policy, if not delivered at closing, be delivered to the Buyer at the following mailing address:

9055 SW 73rd Ct. Apt 1910
Miami, Fl 33156

Buyer acknowledges and agrees that the email address or the mailing address given above is the only address which needs to be used by the closing agent to deliver the closing documents to the Buyer.

4.  **Deposits**.   Buyer hereby authorizes the release of his deposits from escrow, and directs that said deposits be immediately delivered to Seller or its designee upon execution hereof, and upon such release, Buyer does hereby release the Escrow Agent from any and all liability with respect to said escrow deposit(s).

5.  **Representation**.   Buyer acknowledges and agrees that the law firm of Arnstein & Lehr LLP is the Seller's Closing Agent and that The Law Firm represents the Seller only, (and, if applicable, the Law Firm may also be acting as closing agent for Buyer's lender) and does not represent the Buyer in the subject transaction.  Buyer represents that the Buyer has either obtained separate legal advice prior to completing the transaction described in this Agreement or has voluntarily made the decision not to obtain counsel.

6.  **Vendors' Lien**.   Seller shall have a vendor's lien on the Unit until all funds due under the contract for the Unit have been received and have cleared.  Buyer agrees that Seller may record a lien against the Unit until such time as all proceeds have been received and cleared.

7.  **Agreement to Cooperate**.   If requested by the closing agent, title agent, title underwriter, Seller, Buyer, or lender (if any), the parties agree to fully cooperate and adjust for clerical errors, including the execution or re-execution of any documentation and / or the remittance of any additional sums.

8.  **Real Estate Taxes**.   In accordance with the terms of the Purchase Agreement between the parties, the Unit's 2016 real estate taxes are being prorated between the Buyer and the Seller based on the 2015 tax bill, the November amount.  At Closing, the Seller gave a credit to the Buyer on the settlement statement for the Unit's pro-rata share of said real estate tax bill from January 1, 2017 through the Closing date.  The Buyer is responsible to pay the 2017 real estate taxes any and all subsequent years' real estate taxes directly to the tax collector when due and payable. Upon request by either party, the 2017 real estate taxes may be reprorated post-closing provided that the non-requesting party receives a written request to reprorate same on or before December 15, 2016, along with: (a) a copy of the executed settlement statement, and (b) a copy of the final 2016 tax bill.  Any such reproration shall be based on the November amount. If the tax assessment is the subject of a protest, the reproration based on the actual tax bill will be postponed until a final determination of the tax assessment is adjudicated.

9.  **Final Agreement**.   Notwithstanding anything to the contrary contained in the Purchase Agreement between the Seller and the Buyer and/or any addenda or amendments thereto, or any

114006488.1

oral agreements between the Buyer and the Seller, the Buyer and the Seller represent to the Law Firm that the Settlement Statement executed by the Seller and by the Buyer at closing reflects the actual final financial transaction regarding the purchase and sale of the Unit and financing (if any) of the purchase and sale of the Unit, and to the extent applicable, amends any prior written or oral agreements.   The Buyer and the Seller agree to indemnify and hold the Law Firm and its employees, attorneys, paralegals, agents, shareholders and directors harmless from and against any costs or claims (including attorney's fees) resulting from the representations in the previous sentence being untrue or incorrect.

10.   **Disbursement Authorization**: The settlement statement has been reviewed and approved by the parties and the Closing Agent is irrevocably authorized and directed to complete the closing of the transaction and make disbursement in accordance therewith.   The parties agree that in the event there is a surplus in funds not to exceed $50.00 due to either party, due to the administrative cost involved in returning said funds, the parties agree that the Closing Agent is authorized to retain said funds as additional fees/costs associated with closing. Buyer and Seller do each hereby irrevocably and unconditionally assign Closing Agent as Closing Agent's sole property, the proceeds of any and all checks paid to Buyer, Seller or to any third parties which do not clear Closing Agent's trust account within one (1) year of the date of this Agreement.

11.   **Closing in Escrow.**   Closing Agent acknowledges receipt from the Seller of a Deed conveying the sale of the Unit (the "**Sale**") to Buyer, together with other closing documents (the "**Seller's Documents**"). Closing Agent shall hold all executed Seller's Documents in escrow (the "**Closing in Escrow**") until such time the Closing Agent has received the Buyer's executed documents and closing funds (collectively, the "**Buyer's Documents and Funds**") (collectively, the Seller's Documents and the Buyer's Documents and Funds hereinafter referred to the "**Closing Documents**").   **If by the end of business day following the Closing Date** the Closing Agent has not received all of the Closing Documents, the Closing Agent shall promptly return all of the Closing Documents, to the parties who brought them to the closing of the Sale upon: (i) Escrow Agent's receipt of a written request from the Seller, the Purchaser, or the Purchaser's lender (if any), or (ii) Closing Agent's sole discretion, by making them available for pick-up by the parties the following day, and if they are not picked up within a reasonable time, by mailing them to the parties at their last known addresses.   Closing Agent is hereby authorized and directed by the Seller and by the Buyer to disburse any and all funds received in connection with the Sale of the Unit and to release the Closing Documents and otherwise complete the closing of the Sale, when Closing Agent receives the Closing Documents.

12.   **Miscellaneous.**   The use of the singular is construed to include the plural and vice versa where applicable. If any portion of this Agreement is declared or held to be invalid or unenforceable by the court of competent jurisdiction, such declaration or holding shall not affect the remaining provisions of this Agreement, all of which shall remain in full force and effect.   This Agreement may be signed in more than one counterparts and/or by facsimile or electronic mail, in which case each counterpart shall constitute an original.   Paragraph headings are for convenience only and are not intended to expand or restrict the scope or substance of the provisions of this Agreement.

114006488.1

**IN WITNESS WHEREOF**, the parties have executed this Agreement as of the date and year first above written.

Buyer:

LAND TRUST TH 041117 dated April 10, 2017

_____
Tulia Eugenia Hernandez, Trustee

*Seller's Signature on the Following Page*

114006488.1

## ASSIGNMENT OF EXCLUSIVE RIGHT TO USE PARKING SPACES
### Sage Beach

KNOW ALL MEN BY THESE PRESENTS:

FOR AND IN CONSIDERATION OF the sum of Ten and No/100 Dollars ($10.00), the receipt of which from LAND TRUST TH 041117 dated April 10, 2017   (the "**Assignee**") is hereby acknowledged, **PMG Driftwood, LLC**, a Florida limited liability company, (the "**Assignor**") hereby assigns to **Unit 2E** (the "**Unit**") in Sage Beach, a Condominium (the "**Condominium**"), the exclusive right to use parking space number 34 located in the common elements of the Condominium **North** Building, its exact location is identified in the North Building Garage Level Floor Plan attached hereto as Exhibit A (the "**Parking Space**")

ASSIGNEE ACKNOWLEDGES and agrees that this is only an assignment of a use right in and to the Parking Spaces, and does not convey title to the Parking Space or any interest in the real property upon which they are located. Assignee hereby accepts each Parking Space in its "AS-IS" condition as it exists on the date hereof, and subject to all of the rights of Sage Beach Condominium Association, Inc. (the "**Association**") as stated below.

ASSIGNEE FURTHER ACKNOWLEDGES and agrees that the use of each Parking Space is governed by and subject to the terms, conditions and provisions of the Declaration of Condominium of Sage Beach Condominium, as from time to time supplemented and amended and any rules and regulations adopted or amended from time to time by the Association.

IN ACCORDANCE WITH the foregoing, Assignee further acknowledges and agrees that the assignment made herein is an assignment which attaches to the Unit and will automatically pass with title thereto, rather than being an assignment which is personal to Assignee.

THIS ASSIGNMENT shall be recorded in a log maintained by the Association but shall not be recorded in any public records.

IN WITNESS WHEREOF, Assignor and Assignee have executed this Assignment as of the _____ day of _____, 2017.

**Assignee:**

LAND TRUST TH 041117 dated April 10, 2017

_____
Tulia Eugenia Hernandez, Trustee

114006488.1

Exhibit A
South Building
Garage Level Floor Plan

114006488.1

A Condominium



**NOTES:**
For a complete description of the Unit boundaries shown hereon, refer to the Declaration of Condominium.

Other than those areas indicated as Limited Common Elements, all portions of the Condominium Property shown hereon are Common Elements, unless otherwise noted.

Parking spaces are Common Elements and shall become Limited Common Elements of and to the extent assigned for the exclusive use of a Unit.

**NOTE:**
1.) ASSOCIATION IS RESPONSIBLE FOR MAINTAINING SIDEWALKS, PAVERS & LANDSCAPING.
(LOCATED ADJACENT TO THE CONDOMINIUM PROPERTY)

**LEGEND:**

——————— PROPERTY LINE

— — — — — COMMON ELEMENT

**LEGEND**

SIDEWALKS & PAVERS TO BE MAINTAINED BY ASSOCIATION (LOCATED ADJACENT TO THE CONDOMINIUM PROPERTY)

LANDSCAPING TO BE MAINTAINED BY ASSOCIATION (LOCATED ADJACENT TO, BUT NOT A PART OF, THE CONDOMINIUM PROPERTY)

PROPOSED PUBLIC SIDEWALK AND PARKING EASEMENT

GRAPHIC SCALE

( IN FEET )
1 inch = 20 ft.

NORTH BUILDING
GARAGE LEVEL FLOOR PLAN

EXHIBIT 2

SHEET 5 OF 19





SAGE BEACH

NORTH TOWER

ATLANTIC OCEAN

RESIDENCE E
2 BEDROOMS PLUS MEDIA ROOM | 2.5 BATHS

AC AREA:                2,013 SQ. FT.
BALCONY:                  218 SQ. FT.
                        _____
TOTAL:                  2,231 SQ. FT.

THIS DOCUMENT PREPARED BY,
RECORD AND RETURN TO:

YAEL DORON, ESQ.
ARNSTEIN & LEHR, LLP
200 SOUTH BISCAYNE BLVD #3600
MIAMI FL 33131
305.428.4500

TAX FOLIO NUMBER:
514224-BE-0050                    [Reserved for Official Use]

## SPECIAL WARRANTY DEED

THIS SPECIAL WARRANTY DEED, is made this 14 day of April, 2017, by and between PMG Driftwood, LLC, a Florida limited liability company (the "GRANTOR"), whose mailing address is 1441 Brickell Avenue, #1510, Miami FL 33131, and LAND TRUST TH 041117 dated April 10, 2017 (the "GRANTEE") whose mailing address 2101 South Surf Road, Unit 2E Hollywood, Fl. 33019 (Wherever used herein, the terms "GRANTOR" and "GRANTEE" include all the parties to this instrument and the heirs, legal representatives and assigns of individuals, and the successors and assigns of corporations.)

### WITNESSETH:

THAT GRANTOR, for and in consideration of the sum of Ten and NO/100 dollars ($10.00) and other good and valuable considerations in hand paid to GRANTOR by GRANTEE, the receipt whereof is hereby acknowledged, does hereby grant, bargain, sell, alien, remise, release, convey and confirm unto the GRANTEE, the real property hereinafter described, and rights and interest in said real property located in Broward County, Florida, to wit:

**Condominium Unit No. 2E, of SAGE BEACH, A CONDOMINIUM, according to the Declaration of Condominium thereof recorded under Instrument No. 113779593, of the Public Records of Broward County, Florida, and all amendments thereto, together with its undivided share in the common elements.**

This conveyance is subject to the following:

1.      Real estate taxes for the year **2017**, and subsequent years.

2.      Conditions, covenants, restrictions, reservations, limitations and easements of record; however, this provision shall not operate to reimpose same.

3.      The Declaration of Condominium, Articles of Incorporation, By-Laws, Rules and Regulations, and the Exhibits attached thereto of Sage Beach, a Condominium, and all amendments thereto.

4.      Existing applicable government building and zoning laws and other governmental regulations.

AND GRANTOR hereby covenants with Grantee that Grantor is lawfully seized of the Property in fee simple; that Grantor has good right and lawful authority to sell and convey the Property; and that Grantor does hereby fully warrant the title to the Property and will defend the same against the lawful claims of all persons claiming by, through or under Grantor, but against none other.

**IN WITNESS WHEREOF**, the GRANTOR has caused this Special Warranty Deed to be executed the day and year first above written.

Signed and delivered
in our presence:

PMG Driftwood, LLC, a Florida limited
liability company

Print Name: _Melina Silva_

Print Name: _KELLEY PUGSLEY_

By: _____
        Ryan Shear, Vice President

STATE OF FLORIDA           )
                           ) SS:
COUNTY OF MIAMI-DADE       )

The foregoing instrument was acknowledged before me this __22ND__ day of
____September____, 2016, by Ryan Shear as Vice President of PMG Driftwood, LLC, a
Florida limited liability company, on behalf of the company, who [x] is personally known to me
or [ ] produced his driver's license as identification.

NOTARY SEAL:

KELLEY PUGSLEY
MY COMMISSION # FF 247402
EXPIRES: July 7, 2019
Bonded Thru Notary Public Underwriters

_____
Notary Public, State of Florida