UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 18-CR-20685-WILLIAMS/TORRES

UNITED STATES OF AMERICA

v.

GUSTAVO ADOLFO HERNANDEZ FRIERI,

Defendant.

## DECLARATION OF HSI SPECIAL AGENT ALAN G. VEGA
## IN SUPPORT OF SECOND PRELIMINARY ORDER OF FORFEITURE

I, ALAN G. VEGA, under penalty of perjury, declare:

1. I am a Special Agent with Homeland Security Investigations ("HSI"), performing the duties provided by law and regulation, and empowered to conduct investigations of offenses against the United States. I have been employed by HSI for the last 18 years. I am currently responsible for conducting and assisting in investigations relating to money laundering, wire fraud, and other federal crimes. I am currently assigned to the HSI Miami Illicit Proceeds and Foreign Corruption Group. I have been assigned to this group for approximately eight years. In my current role, I participate in investigations concerning the concealment and laundering of illicitly derived funds by Politically Exposed Persons ("PEPs") and/or Transnational Criminal Organizations ("TCOs").

2. The facts in this declaration come from my personal observations, my training and experience, and information obtained from other agents and witnesses. I make this sworn declaration in support of the United States' Motion for Second Preliminary Order of Forfeiture in

the above-captioned case. Because this declaration is being submitted for a limited purpose, it does not include all of the facts that I have learned during the course of the investigation.

3. On November 26, 2019, the Court accepted Gustavo Adolfo Hernandez Frieri's (the "Defendant") guilty plea to Count 1 of the Indictment, which charged him with conspiracy to commit money laundering in violation of 18 U.S.C. § 1956(h). *See* Minute Entry, ECF No. 162; Hernandez Plea Agreement, ECF No. 163.

4. On February 4, 2020, the Court entered a Preliminary Order of Forfeiture against the Defendant. *See* Hernandez Preliminary Order of Forfeiture, ECF No. 175.

5. The Preliminary Order of Forfeiture imposed a forfeiture money judgment in the amount of $12,330,000 in U.S. currency against the Defendant. *Id.* at 2-3.

6. In entering the forfeiture money judgment, the Court found that the Defendant, co-defendant Abraham Edgardo Ortega ("Ortega"), and others conspired to launder approximately $12 million that was given to Ortega as bribe payments. *See id.* at 2; Hernandez Factual Proffer 2-3, ECF No. 164. The Court also found that, in addition to this $12 million, the Defendant agreed with a confidential source to launder an additional $300,000 to an undercover law enforcement account. *See* Hernandez Preliminary Order of Forfeiture 2; Hernandez Factual Proffer 6. The Defendant, via an invoice from Global Securities Management, charged $30,000 to conduct such transfer. *See* Hernandez Preliminary Order of Forfeiture 2.

7. Based on a review of financial records and information from the Defendant, the Defendant laundered Ortega's $12 million in bribe payments using Class C and Class D of Global Securities Trade Finance ("GSTF").

8. GSTF maintained bank accounts at City National Bank of New Jersey ("CNB") for its fund and different classes, and the Defendant was a signatory of those accounts. Account

2

number 1466054 ("CNB Account 6054") was designated for Class C. Account number 55102421 ("CNB Account 2421") was designated for Class D.

9. A review of bank account records shows that Ortega's $12 million was transferred to CNB Account 6054 and CNB Account 2421, where the bribery proceeds were commingled with other funds in these accounts as well as with funds on deposit in one other CNB account held by GSTF. The United States ultimately forfeited approximately $818,990.01 from these three CNB accounts. *See* Ortega Final Order of Forfeiture, ECF No. 146.

10. The remainder of Ortega's $12 million that was deposited into CNB Account 6054 and CNB Account 2421 was transferred to third parties at the direction of the Defendant. More than $9.2 million was transferred to foreign bank accounts in Barbados, Cayman Islands, Colombia, Cyprus, Ireland, Panama, Peru, Singapore, and the United Kingdom. *See attached* **Exhibit 1** (Chart of Net Outgoing Transfers from CNB Account 6054 and CNB Account 2421 - Redacted).

11. These outgoing transfers were often justified by loan agreements with terms directing repayment to CNB Account 6054 or CNB Account 2421, giving the impression that these loans were made for the benefit of GSTF's Class C and Class D. According to an analysis of account records, the loans remain unpaid, with a negative net balance. *See id.*

12. On one occasion, the Defendant was requested to transfer approximately $400,000 into an undercover law enforcement account, purportedly to pay a confidential source for assisting in the laundering of Ortega's $12 million in bribery proceeds. To conceal the nature of these funds and justify the transaction, the Defendant executed a sham loan agreement on behalf of GSTF with the title account holder of the undercover law enforcement account. According to the terms of the

agreement, the loan was to be repaid to CNB Account 6054, but there was never any intention to make any loan repayments.

13. As a result of such arrangement, on or about April 24, 2017, the Defendant transferred, or caused to be transferred, approximately $396,000 to an undercover law enforcement account. The wire transfer details included the following explanation for the transaction: "GSTF Class C USD400K funding to [account holder of undercover account] Less 1 percent Structuring Fee." On or about April 24, 2017, law enforcement agents collected approximately $396,000 from the undercover account, which is the $400,000 minus the Defendant's fee of $4,000 that was subsequently transferred to Global Securities Management, LLC.

14. Global Securities Management, LLC was also involved in the transfer of the additional $300,000 to an undercover law enforcement account. As set forth in the Factual Proffer, a confidential source transferred approximately $300,000 from an undercover law enforcement account to a Wells Fargo account held by Global Securities Management, LLC. *See* Hernandez Factual Proffer 6. From the conversations and interactions with the confidential source, the Defendant was aware that there was a high probability that the $300,000 were criminally derived proceeds and the intent of the financial transactions the Defendant conducted was to conceal the true illegal origin of the money. *Id.* The Defendant transferred, or caused to be transferred, approximately $300,000 to a foreign account, and ultimately, law enforcement agents recovered approximately $288,810.55 from the transaction.

15. The Defendant has provided the United States a summary of the GSTF loans extended to third parties that were funded by the laundered funds. *See attached* **Exhibit 2** (Defendant's GSTF Portfolio Summary - Redacted). In the summary, the Defendant confirmed that the total capital subscribed in GSTF's Class C and Class D was Ortega's $12 million. *See id.*

4

at 1. The summary also indicates that approximately $5.6 million of the $12 million laundered for Ortega was transferred to four foreign entities (Serfindata S.A., Refinancia S.A., Metrolinea, Portfolio SAS) and to two domestic entities (Alpha FP, Ltd. and GSM, LLC). *See id.* at 2. The majority of the loans identified by the Defendant were to companies and accounts in foreign jurisdictions.

16. In addition, the Defendant has acknowledged that "in July 2018, [he] resigned as Director of all GS entities and funds inclusive of GSTF," that GSTF is in involved in a court-ordered liquidation, and that certain contact information he has for the borrowers "may be stale." *See attached* **Exhibit 3** (Defendant's Follow-up E-mail Re: GSTF - Redacted).

17. In his Financial Disclosure Statement, the Defendant has affirmed that he is not currently in possession or control of any of the laundered funds. *See attached* **Exhibit 4** (Financial Disclosure Statement and Accompanying Schedules - Redacted).

18. In fact, the Defendant made the following statement in his Financial Disclosure Statement: "I did not make any gains or profits from the criminal activity." *See id.* at 16. The Defendant executed the Financial Disclosure Statement under penalty of perjury on or about January 10, 2020. *See id.*

19. In the Financial Disclosure Statement, the Defendant revealed that his father had incorporated a family trust, HH Trust Ltd. ("HH Trust"), and the Defendant and his brother, Cesar Hernandez, served as Protector and were both contingent beneficiaries. *See id.* at 25. HH Trust "held the ownership interest in different Global Securities entities incorporated or acquired from the late 90's onwards," including (a) Global Strategic Investments, LLC; (b) PanAmerica Capital Group, Corp.; (c) Global Reach Advisors, LLC; (d) GRA Aseosres de Inversion, SA; (e) GSI Insurance Services, LLC; and (f) Alpha Financial Products, LLC. *Id.* The Defendant "was the

ultimate beneficial owner of the economic rights to ca. 24% of these entities," but their residual value is either "close to zero" or "remain[] uncertain," and he has not received any distributions since July 2018. *Id.*

20. The Defendant's Financial Disclosure Statement also confirms that property involved in the Defendant's money laundering conspiracy, or traceable to such property, has substantially diminished in value. For instance, the Defendant identifies his subscription for Series A convertible notes of Domaine Select Wine & Spirits ("DSWS") in the Financial Disclosure Statement. *See id.* at 22. The Court found that the funds used to acquire the DSWS convertible notes were traceable to Ortega's $12 million in bribery proceeds, and forfeited approximately $2 million in Series A convertible notes of DSWS. *See* Ortega Final Order of Forfeiture 4, ECF No. 146. In his Financial Disclosure Statement, the Defendant explained that DSWS has entered a restructuring process with its creditors, and "[t]o date the value of the DSWS Series A convertible debt remains uncertain." *See* **Exhibit 4**, at 22.

21. Thus, after investigating the Defendant's assets, it is the conclusion of this declarant that due to the Defendant's acts or omissions, directly forfeitable property other than funds forfeited from GSTF's CNB accounts cannot be located upon the exercise of due diligence; has been transferred or sold to, or deposited with, a third party; has been placed beyond the jurisdiction of the court; has been substantially diminished in value; or has been commingled with other property which cannot be divided without difficulty.

22. Furthermore, the Defendant has not fully satisfied his forfeiture money judgment in the amount of $12,330,000. Aside from the approximately $818,990.01 forfeited from CNB accounts, the Defendant has turned over to Government custody a check in the amount of $1,206.65 issued by Chubb Insurance and made payable to U.S. Department of Homeland

Security, representing insurance proceeds owed to the Defendant. *See attached* **Exhibit 5** (Defendant's Cover Letter & Copy of Chubbs Check). The Defendant has also turned over a check in the amount of $5,264.69 issued by Bank of America and made payable to the Defendant. *See attached* **Exhibit 6** (Defendant's Cover Letter & Copy of BoA Check). The Defendant, via defense counsel, has asked that these checks be maintained in Government custody pending sentencing.

Dated on September 24, 2020, in Miami, Florida.

_____
ALAN G. VEGA
Special Agent, Homeland Security Investigations