UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 18-CR-20685-WILLIAMS/TORRES

UNITED STATES OF AMERICA

v.

GUSTAVO ADOLFO HERNANDEZ FRIERI,

        Defendant,

And

OLYMPIA DE CASTRO,

        Third-Party Petitioner,

597 HIBISCUS LANE REVOCABLE TRUST,

        Third-Party Petitioner.

_____/

**OLYMPIA DE CASTRO'S AND 597 HIBISCUS LANE REVOCABLE TRUST'S NOTICE OF CLAIM AND VERIFIED PETITION AND REQUEST FOR HEARING TO ADJUDICATE THE VALIDITY OF THEIR INTEREST IN REAL PROPERTY**

The Government is attempting to take Third-Party Petitioner Olympia De Castro's and her three small children's home – a home where Ms. De Castro lives with her children, takes care of, pays taxes on, has complete dominion and control over, intends to leave to her children, and which she acquired years ago through a Trust without using any proceeds of a crime. The home was not named in the Indictment or Protective Order as property involved in the offense or an agreed upon substitute asset. Nor could it have been. Defendant Hernandez Frieri did not consent and could not consent to its forfeiture; he does not have a current interest in the home. Because Ms. De Castro and 597 Hibiscus Lane Revocable Trust ("Trust") hold all legal right, title, and present interest in the real property

MARKUS/MOSS PLLC
–1–

597 Hibiscus Lane, Miami, Florida 33137 ("597 Hibiscus Lane"), the property cannot be forfeited. Therefore, Ms. De Castro and the Trust, through sole Trustee Ms. De Castro, file this verified petition and respectfully request a hearing to adjudicate the validity of their interest in the property pursuant to 21 U.S.C. § 853(n) and Federal Rule of Criminal Procedure 32.2(c). Ms. De Castro's and her children's home should be excluded from any forfeiture order entered against Gustavo Hernandez-Frieri.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

1. Years before Gustavo Hernandez-Frieri ever met Abraham Ortega or had any involvement in or connection to a money laundering conspiracy, Olympia De Castro and her then-husband Hernandez-Frieri created the 597 Hibiscus Lane Revocable Trust in December 2013. *See* attached Exhibit 1. The Trust was established to acquire a home which the parents De Castro and Hernandez-Frieri would leave to their children. As such, it was organized as other commonly-conceived Trusts with the same intention - De Castro and Hernandez-Frieri served as the Co-Grantors, Co-Trustees, and Co-Beneficiaries, with their minor children as Contingent Beneficiaries. Although the Trust named them both Beneficiaries, the Trust did not entitle them to receive the Trust asset. Rather, upon the death of the Grantor (defined initially as both Olympia De Castro and Gustavo Hernandez Frieri, *see* Exhibit 1, at 1), the Trust asset passed to the Contingent Beneficiaries, their children. Exhibit 1, at 4-5.

2. A week after its creation, the Trust purchased 597 Hibiscus Lane in Miami, Florida. Both Ms. De Castro and Mr. Hernandez-Frieri signed the HUD-1 and contributed the funds toward the purchase, paying for the home in full. *See* attached Exhibit 2. A

Warranty Deed was recorded December 24, 2013 naming "Olympia De Castro and Gustavo Hernandez Frieri as co trustees of the 597 Hibiscus Lane Revocable Trust U/A/D December 10, 2013" as the Grantee. See attached Exhibit 3. The home is the only asset of the Trust. Exhibit 1, Schedule "A."

3. Nearly five years later, in the summer of 2018, Mr. Hernandez-Frieri was arrested and then indicted for the present case.

4. Following the charges in the case, the Government recorded a *lis pendens* on the home in August 2018. Although Ms. Castro disagreed with the Government's alleged claim to the property, as stated within the *lis pendens*, "Title 21, United States Code, Section 853(k) states that no party claiming an interest in property subject to forfeiture may commence an action at law or equity against the United States concerning the validity of their interest after the filing of an indictment." D.E. 36. Equally, the Renewal of *Lis Pendens* filed September 18, 2020 set forth that "the provisions of 21 U.S.C. § 853(k) prohibit any claimant to the described property from (1) intervening in the trial or appeal of the criminal case, or (2) commencing an action at law or equity against the United States concerning the validity of any interest in the property subsequent to the filing of an indictment … except as provided by the provisions of 21 U.S.C. 853(n) following the entry of any order of forfeiture." See attached Exhibit 4. Thus, even though Hernandez Frieri's case has had a severe negative impact on her life and on her career in the financial industry, Ms. De Castro could not voice her objection to previous Government actions and assert her interest in her home until now.

5. Since Hernandez-Frieri's arrest over two years ago, Ms. De Castro has been

the caretaker of the home; has maintained the home; paid all taxes, association fees, and upkeep; and continued living in the home with her three small children.

6. At the time of Hernandez-Frieri's bond hearing on May 17, 2019, Ms. De Castro refused to pledge her home, 597 Hibiscus Lane, as collateral for his $1,500,000 10% bond and refused to co-sign a $25 million personal surety bond. D.E. 101. Although the Magistrate Judge declined to question Ms. De Castro, it was represented to the Court that Ms. De Castro was filing for divorce from Hernandez-Frieri. *Id.* A Petition for divorce was, in fact, filed less than a week later on May 22, 2019.

7. On October 1, 2019, Hernandez-Frieri resigned as a Trustee of the 597 Hibiscus Lane Trust, leaving Olympia De Castro as the sole Trustee. *See* attached Exhibit 5. As part of the Marital Settlement Agreement of the couple's divorce, Hernandez-Frieri additionally agreed to resign as co-settlor of the Trust. *See* attached Exhibit 6. As the continuing sole Trustee of the Trust, Ms. De Castro alone holds title to the Trust asset, accepts the responsibility to manage the Trust asset and carry out all Trust directions, and assumes the fiduciary duty to carry out the Trust's intentions to her minor children as Contingent Beneficiaries. She has been meeting these obligations since before Hernandez-Frieri's Trustee resignation and continues to perform these duties.

8. Almost two months later, on November 26, 2019, Hernandez Frieri pleaded guilty and was convicted of Count 1 of the Indictment, conspiracy to commit money laundering. At the time of his plea and conviction, he did not have any current interest in 597 Hibiscus Lane.

9. As part of his change of plea in November 2019, Hernandez-Frieri signed a

Plea Agreement. In the agreement, Hernandez-Frieri agreed to forfeit all property involved in the charged money laundering or property that constitutes substitute assets. D.E. 163, at 7. He further agreed to the entry of orders of forfeiture of property specifically identified in the Indictment and Amended Protective Order. Hernandez-Frieri, however, did not consent to the forfeiture of 597 Hibiscus Lane. *Id.* This property was not named in the Indictment or Amended Protective Order as real property involved in the offense or an agreed upon substitute asset. Hernandez-Frieri did not consent - nor could he consent - because he does not have a present interest in the property.

10.   In his January 2020 Financial Disclosure Statement, which he was required to submit under oath pursuant to the Plea Agreement and upon which the Government has relied as truthful, Hernandez-Frieri states that he has "no interest in real estate anywhere in the world." *See* D.E. 238, Exhibit 4.

11.   On September 25, 2020, three months before Hernandez-Frieri's scheduled sentencing, the Government filed a motion for second preliminary order of forfeiture seeking the forfeiture of 597 Hibiscus Lane as substitute property. Within its motion, the Government cited and relied upon statements made by Hernandez-Frieri in his financial disclosure form regarding the fact that laundered proceeds and other directly forfeitable property were not in his possession or control. D.E. 238, at 5. The Government omitted from its motion, however, another statement in Hernandez-Frieri's financial statement - that he did not have an interest in 597 Hibiscus Lane. Likewise, an exhibit included with its motion - a Declaration by HSI Special Agent Alan G. Vega who performed a

tracing of laundered bribe payments and property involved in the money laundering conspiracy, and an analysis of Hernandez-Frieri's assets - did not include any information on the property 597 Hibiscus Lane or any analysis of whether Hernandez-Frieri has a present interest in the real property. D.E. 238, Exhibit 14, at 5-6.

12. The Court issued a Second Preliminary Order of Forfeiture on September 28, 2020 stating that "[t]he Defendant maintains a present interest in 597 Hibiscus Lane and remains the Grantor, or co-settlor, of the 597 Lane Revocable Trust U/A/D December 10, 2013." D.E. 239, at 4. The Court preliminarily forfeited 597 Hibiscus Lane. *Id.*

13. In response to the Court's Order, Hernandez-Frieri filed a motion for clarification asserting again, as he had in his sworn financial disclosure, that "he has no present forfeitable interest in [597 Hibiscus Lane]." D.E. 243, at 1. The Government filed a Response in opposition on October 13, 2020. D.E. 247. The Court referred the matter to Magistrate Judge Torres. D.E. 244. There has been no ruling yet on the motion for clarification.

## II. ARGUMENT

### A. Because Olympia De Castro has full legal right, title, and interest in 597 Hibiscus Lane, the property cannot be forfeited.

The property at 597 Hibiscus Lane is Olympia De Castro's home. It is not an investment property, vacation residence, charitable contribution, or place to hide money; it is a family home. It is where she has lived for the last seven years, raised two small children, and welcomed the birth of her third child. It is where Ms. De Castro has celebrated birthdays, observed holidays, protected her loved ones, welcomed family and friends, worked at her home office, and endured a pandemic. It is the home for which she

created a trust in order to leave to her children upon her death. Not only is it her home, but additionally Olympia De Castro and 597 Hibiscus Lane Revocable Trust have legal right, title, interest, custody and control of the home. As such, Olympia De Castro and 597 Hibiscus Lane Revocable Trust object to the Second Preliminary Order of Forfeiture and request that the Court release their interests and amend the Order accordingly.

Unlike civil forfeiture, which is an *in rem* proceeding against property, criminal forfeiture is an *in personam* action designed to punish the defendant. *United States v. Fleet*, 498 F.3d 1225, 1231 (11th Cir. 2007); *United States v. Gilbert*, 244 F.3d 888, 919 (11th Cir. 2001); *United States v. Kennedy,* 201 F.3d 1324, 1329 (11th Cir. 2000). Because the foundation of criminal forfeiture is based on punishing the guilty defendant, only property belonging to the defendant is subject to forfeiture. 21 U.S.C. § 853(a) and (p). Further, because of the *in personam* nature of the proceeding, the property itself is not forfeited, but only the defendant's interest in property may be forfeited. *Gilbert*, 244 F.3d at 919; *Kennedy*, 201 F.3d at 1329 (if criminal forfeiture reached beyond the defendant's interest in property, such forfeiture would be *in rem*, not *in personam*). Criminal forfeiture seeks to separate only the defendant from his criminal gains "while leaving undisturbed the interests of innocent third parties who are beyond the court's jurisdiction." *Gilbert*, 244 F.3d at 920.

The Government agrees that the real property 597 Hibiscus Lane cannot be forfeited pursuant to section 853(a) because it is not tainted property - it was not acquired from proceeds of the offense or used to commit or facilitate the commission of the offense. *See* D.E. 238; *see also* 21 U.S.C. § 853(a)(1) & (2). Ms. De Castro and her former husband

Hernandez-Frieri formed a trust to purchase the home long before Hernandez-Frieri committed any crimes. The proceeds used to buy the property were clean, untainted, and came from both individuals.

Instead, the Government claims that the home is forfeitable as substitute property pursuant to section 853(p). See D.E. 238. Because the Government attempts to forfeit the home as a substitute asset, the Court must look to the defendant's interest in the property <u>at the time of forfeiture</u>, once a finding has been made that any of the conditions of section 853(p)(1) have been satisfied.[1] Here, that would be upon the entry of the Second Preliminary Order of Forfeiture on September 28, 2020. Hernandez-Frieri, however, has not had a present interest in the home since October 1, 2019. Thus, the home is not "property of the defendant" and is not a substitute asset. 21 U.S.C. § 853(p)(2). And because the property is not the Defendant's and he has no present interest in the property, the order of forfeiture is invalid.

Rather, since 597 Hibiscus Lane Revocable Trust purchased the property, the

---

[1] If this was property subject to forfeiture pursuant to 21 U.S.C. § 853(a) as tainted property, the title to property of the defendant would relate back and vest with the Government at the time of the offense. See 21 U.S.C. § 853(c) ("All right, title, and interest in property described in subsection (a) vests in the United States upon the commission of the act giving rise to forfeiture under this section."). Substitute property under section 853(p), however, is <u>not</u> subject to the Relation Back Doctrine. See Honeycutt v. United States, 137 S. Ct. 1626, 1633 (2017) ("Consistent with its text, the Court has previously acknowledged that **§ 853(c) applies to tainted property only**.) (emphasis added). See also Luis v. United States, 136 S. Ct. 1083, 1090 (2016). Accord United States v. Saccoccia, 354 F.3d 9, 13 (1st Cir. 2003) (the plain language of the substitute property provision of the statute does not allow the government to reach a third party's untainted assets as a substitute for tainted assets and for which the third party had already transferred prior to the date of forfeiture).

Trustee Olympia De Castro holds legal title to the Trust asset, 597 Hibiscus Lane. *See O'Brien v. McMahon*, 44 So. 3d 1273, 1280 (Fla. 1st DCA 2010) (a trustee holds legal title to the trust property); *Hansen v. Bothe*, 10 So. 3d 213. 216 (Fla. 2d DCA 2009) (legal title in trust assets is held by the trustee); *Buerki v. Lochner*, 570 So. 2d 1061, 1063 (Fla. 2d DCA 1990) (trustee, the legal title holder to the trust property, is the real party in interest to a lawsuit); *see also* F.S. § 736.0815(1)(b)1 (a trustee may exercise "[a]ll powers over the trust property that an unmarried competent owner has over individually owned property."); RESTATEMENT (THIRD) OF TRUSTS § 5 cmt. c (2003). While Ms. De Castro and her former husband were co-trustees in 2013, Hernandez-Frieri resigned as co-trustee (as he was permitted to do by the Trust) over a year ago. Since that time, only Ms. De Castro is the Trustee and she alone holds legal title to and a present interest in 597 Hibiscus Lane.[2] The Government cannot usurp this interest because Ms. De Castro's interest in the entire property vested well before the Government's could have.

In addition, she is the individual who has custody and control of the home. After Hernandez-Frieri's arrest in Italy in July 2018, Ms. De Castro and her three children lived alone in the home for the 10 months that he was held in Italy, extradited to the United States, and then held in Miami. She continues to live in the home with her children, takes care of the house, makes decisions about the property, pays the property taxes, and handles other necessary maintenance. Hernandez-Frieri exercises no control over the

---

[2] Although the Preliminary Order of Forfeiture states that "[t]he Defendant maintains a present interest in 597 Hibiscus Lane," it does not provide how or in what capacity. D.E. 239, at 4. Notably, the Order does not make a finding that Hernandez-Frieri remains a Trustee in the 597 Hibiscus Lane Revocable Trust.

home any longer and pays no expenses for the home.³ In fact, according to the Marital Settlement Agreement, he cannot "enter the home … without express prior permission" and "if given express prior permission to enter, … will leave … immediately upon request." *See* Exhibit 6, at 3. Because Hernandez-Frieri rightfully admits (in his financial disclosure form and Motion for Clarification) that he has no present interest in the home, the property cannot be forfeited to the United States.

Hernandez-Frieri has also resigned as a settlor of the Trust pursuant to the final divorce agreement (*see* Exhibit 6, at 10) and, therefore, no longer has power to revoke or amend the Trust. According to the Trust, no formal document or notice is necessary for this resignation and Hernandez-Frieri's acceptance and intent is sufficient. Thus, contrary to the statement in the Second Preliminary Order of Forfeiture (D.E. 239, at 4), Olympia De Castro is presently the sole settlor (or grantor), as well as sole Trustee.

To the extent the Court finds that Hernandez-Frieri remains a Settlor/Grantor of the Trust or could consent to forfeit a future interest in the property, he still has no current interest in the property. *See Aronson v. Aronson*, 930 So. 2d 766, 767 (Fla. 3d DCA 2006) (since settlor does not own property in his individual capacity, he does not have the power to presently convey the property). Any right Hernandez-Frieri may have is a *potential future* interest in the Trust asset. Although a settlor or grantor has the power to revoke the trust, this is a *future possible* interest that may never materialize. Under Florida law, a settlor **may** revoke or amend a trust, but no circumstance ever requires that they do so.

---

3   While Ms. De Castro has allowed Hernandez Frieri to reside at her home until his sentencing for the sake of their children, the parents are no longer a couple and Hernandez Frieri has no right or dominion over her home.

*See* F.S. § 736.0603(2)(b).

More importantly, following the plain language of the document, the Trust cannot be revoked unless Ms. De Castro agreed. Pursuant to Article 4, the 597 Hibiscus Lane Revocable Trust can only be revoked by the Grantor – defined as Hernandez-Frieri <u>and</u> Olympia De Castro. *See* Exhibit 1, at 1 and 4. Hernandez Frieri could never on his own force the revocation of the trust. Both Hernandez Frieri and Ms. De Castro as Co-Settlors/Co-Grantors would need to act together to take any action which would alter the Trust document or disposition of the Trust asset.[4] Hernandez-Frieri could not make any decisions about the Trust or the property alone. And Ms. Castro would never agree to a revocation or amendment which would potentially subject her home to being taken away by the Government. Therefore, even a finding that Hernandez Frieri remains a Co-Grantor or Co-Settlor still does not permit the Government to forfeit the home.

The home belongs to Olympia De Castro, pure and simple. While the Court may rightfully punish the guilty defendant and seek to separate him from any assets in which he has an interest, it should leave undisturbed the rights and interests of innocent third party Ms. De Castro and exclude her "innocent" home from a future forfeiture order. *Gilbert*, 244 F.3d at 920.

* * *

---

[4] Even if he could singularly exercise his right to revoke in the future, the Settlor (or Grantor) – defined as Hernandez-Frieri <u>and</u> Olympia De Castro pursuant to the Trust – would direct the trustee how the property would be disposed. *See* F.S. § 736.0602(4).

## VERIFICATION

In accord with 21 U.S.C. § 853(n)(6), pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my personal knowledge and belief.

By: _____   Dated: 11/16/2020
Olympia De Castro

By: _____   Dated: 11/16/2020
Olympia De Castro as Trustee
of 597 Hibiscus Lane Revocable Trust

Dated: November 16, 2020

WHEREFORE, Olympia De Castro and the 597 Hibiscus Lane Revocable Trust respectfully moves this Court for a hearing to adjudicate the validity of their interest in the property and later to amend the forfeiture order and exclude her home from any future forfeiture order.

Respectfully submitted,
MARKUS/MOSS PLLC
40 N.W. Third Street
Penthouse One
Miami, Florida   33128
Tel: (305) 379-6667
Fax: (305) 379-6668
markuslaw.com

By:   /s/ A. Margot Moss
A. Margot Moss
Florida Bar Number 091870
mmoss@markuslaw.com