GOVERNMENT
EXHIBIT
4
18-CR-20685

# SETTLEMENT AGREEMENT AND MUTUAL RELEASE

This Settlement Agreement (the "Settlement Agreement" or "Agreement"), entered into this ____ day _____ October, 2020, is by and between Olympia De Castro ("De Castro"); Daniel Holtz ("D. Holtz"), Walden Capital Corp. ("Walden"); and Toni Holtz ("T. Holtz"). De Castro, D. Holtz, Walden, and T. Holtz are together referred to as the "Parties." T. Holtz, D. Holtz, and Walden shall be referred to as "Defendants."

**WHEREAS,** De Castro filed suit against Walden, D. Holtz and T. Holtz in Olympia De Castro v. Daniel Holtz, Toni Holtz, and Walden Capital Corporation, Case No.: 2020-000080-CA-01 in the Circuit Court of the Eleventh Judicial Circuit, In and For Miami-Dade County, Florida (the "Lawsuit").

**WHEREAS,** T. Holtz and D. Holtz were married and are currently in the midst of a divorce proceeding in Toni Holtz v. Daniel Holtz, CASE NO: 2019-012818-FC-04 (07) in the Circuit Court in and for Miami-Dade County, Florida, family division (the "Divorce Proceedings").

**WHEREAS,** the Parties have negotiated a settlement of their dispute in the Lawsuit.

**WHEREAS,** a third party has signed a Letter of Intent ("LOI") to purchase a mobile home park located at 801 E. Dania Beach Blvd., Dania Beach, FL 33004 that is owned by Mile Marker 55, LLC ("Mobile Home Park"). A portion of Mile Marker 55, LLC is owned by D. Holtz and/or T. Holtz and constitutes a joint marital asset of D. Holtz and T. Holtz.

**WHEREAS,** in the Divorce Proceedings, on September 24, 2020, T. Holtz and D. Holtz entered into a *Second Agreed Order Modifying Temporary Injunction* requesting that the Court amend its *Amended Order Granting in Part Wife's Verified Ex-Parte Motion for Temporary Status Quo Injunction to Prevent Husband from Further Liquidation and Dissipation of Marital*

*Assets* so that from that sale of the Mobile Home Park De Castro shall be paid all sums agreed by the Parties in this Agreement. The Court granted the Order on September 24, 2020 (the "Order").

**WHEREAS**, It is understood and agreed by the Parties that this Agreement represents a compromise of disputed claims which remain untested; that the terms and conditions of this Agreement are in no way to be construed as an admission of liability by the Parties and that the Parties deny liability and intend merely to avoid further costs and expenses associated with the Lawsuit. T. Holtz denies liability and if the transaction that is contemplated by the Settlement Agreement does not occur, the Settlement Agreement will not be used against her.

**NOW, THEREFORE,** De Castro, D. Holtz, Walden, and T. Holtz, in consideration of the mutual covenants and obligations set forth in this Agreement, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, hereby **AGREE** as follows:

1. <u>Recitals.</u> The foregoing recitals are incorporated herein by reference.

2. <u>Settlement Amount.</u> T. Holtz and D. Holtz agree to pay De Castro $900,000 plus interest at 5% per year, accruing from January 1, 2017 until the date of Payment of Settlement Amount, minus interest payments made to date of $82,250 (the "Settlement Amount").

3. <u>Timing and Method of Payment of Settlement Amount.</u> The Settlement Amount shall be paid to the trust account of Devine Goodman & Rasco, LLP identified in Exhibit A. After the Closing takes place, the Sellers counsel shall receive the proceeds due the Sellers (Walden and its partner) and wire the funds due to Walden's partner and from the proceeds due to Walden, wire the Settlement amount due to De Castro. The Settlement Amount shall be paid three (3) business days from the closing (the "Closing") of the sale of the interest of D. Holtz and/or T. Holtz in the Mobile Home Park.

4. <u>Best Efforts and Cooperation</u>: The Parties anticipate that the Closing will take place on or about March 12, 2021 and that the proceeds of the sale of the Mobile Home Park will be in excess of and sufficient to cover payment of the full Settlement Amount. The Parties shall make reasonable efforts to avoid conduct that would hinder, delay or impede the sale of the Mobile Home Park. The Parties further agree to cooperate and to use their best efforts to ensure the success of the Closing on the anticipated Closing date on the same or similar terms as proposed in the LOI. The Parties Agree not to move to alter or change the Order entered in the Divorce Proceedings The Parties shall not further encumber the two mortgages presently encumbering the property and will not increase the amount secured by mortgage other than by interest that accrues on such mortgages. D. Holtz and T. Holtz shall advise De Castro in writing within (1) day of service of any order or ruling by the Court in the Divorce Proceedings that modifies or changes the effect of the Order in the Divorce Proceedings. D. Holtz and T. Holtz agree to keep De Castro informed as to the status of the sale of the Mobile Home Park. D. Holtz and T. Holtz agree not to mortgage, encumber, or pledge their interest in the Mobile Home Park or Mile Marker 55, LLC to anyone other than De Castro. The Parties agree that the Mobile Home Park will be actively marketed until sold.

5. <u>Lawsuit Pending Payment of Settlement Amount</u>. The Parties agree to refrain from prosecuting or defending the Lawsuit pending the full payment of the Settlement Amount or by July 31, 2021, whichever is sooner. This section shall not be construed to preclude De Castro from filing what she deems necessary in the Lawsuit to avoid a dismissal for lack of prosecution. In addition, the Defendants agree to join any motion to stay the Lawsuit that De Castro deems, in her sole discretion, necessary to avoid a dismissal for lack of prosecution.

6. <u>Dismissal of Lawsuit</u>. Within five (5) days of receiving the Settlement Amount in full, De Castro shall dismiss the lawsuit in its entirety with prejudice.

7. <u>Option to Prepay the Settlement Amount</u>. T. Holtz, D. Holtz or Walden may elect to prepay all or some of the Settlement Amount to De Castro from any other source at any time prior to the Closing.

8. <u>De Castro's Option to Rescind the Agreement</u>. If De Castro is not paid the full Settlement Amount by July 31, 2021 or at the Closing, whichever is earlier, then De Castro may, at her option, rescind this agreement in its entirety and proceed with prosecuting the Lawsuit.

9. <u>De Castro's Release of D. Holtz, T. Holtz and Walden</u>. Effective upon De Castro's receipt of the full Settlement Amount, De Castro on behalf of herself and her officers, directors, employees, shareholders, agents, attorneys, predecessors, successors and assigns, hereby releases and forever discharges Defendants and their officers, directors, employees, shareholders, agents, attorneys, predecessors, successors and assigns of any and all claims, causes of action, suits, debts, damages, losses, obligations, demands, attorneys' fees and liabilities whatsoever (collectively, "<u>Claims</u>"), whether known or unknown, billed or unbilled, whether sounding in tort, contract or otherwise, whether anticipated or unanticipated, whether past, present or future, both in law and in equity, including without limitation any Claims arising out of or related to the subject matter thereof (whether or not such Claims were actually asserted), and any other Claims De Castro had, has, or may have against Defendants from the beginning of the world to the date of this Agreement.

10. <u>Defendants' Release of De Castro</u>. Defendants, on behalf of themselves and their officers, directors, employees, shareholders, agents, attorneys, predecessors, successors and assigns, hereby releases and forever discharge De Castro and her officers, directors, employees,

shareholders, agents, attorneys, predecessors, successors and assigns of any and all Claims, whether known or unknown, billed or unbilled, whether sounding in tort, contract or otherwise, whether anticipated or unanticipated, whether past, present or future, both in law and in equity, including without limitation any Claims arising out of or related to the subject matter thereof (whether or not such Claims were actually asserted) and any other Claims Defendants had, have, or may have against De Castro from the beginning of the world to the date of this Agreement.

11. <u>Advice of Counsel</u>. Each party to this Agreement acknowledges that it has had full opportunity to participate in the drafting of this Agreement and was advised by competent legal counsel in deciding to enter into this Agreement. Accordingly, this Agreement shall be considered to be jointly drafted by the Parties and shall not be construed against any party.

12. <u>Governing Law: Jurisdiction</u>. This Agreement and any disputes arising out of or related thereto shall be governed by, and construed and enforced in accordance with the laws of the State of Florida without regard to the choice of law provisions thereof. The Parties hereby consent to the jurisdiction of the courts of the State of Florida as the exclusive jurisdiction for the purpose of any suit, action or other proceeding arising out of any of their obligations hereunder or with the transactions contemplated hereby, and expressly waive any and all objections they may have as to the venue of such courts. The Parties agree that the Court in the Lawsuit will retain jurisdiction to enforce the terms of this Agreement.

13. <u>Warranty of Capacity to Execute Agreement</u>. Each of the undersigned represents and warrants that he or she is a duly authorized representative of the party for which the signature is provided, and that such person signing is specifically authorized to sign this Agreement, and that said signature shall lawfully bind said party. Each party represents and warrants that: (a) no other person or entity has or has had any interest in the claims, demands, obligations, or causes

of action referred to in this Agreement, except as set forth herein; (b) it has not sold, assigned, transferred, conveyed or otherwise disposed of any of the claims, demands, obligations, or potential causes of action released or referred to in this Agreement; and (c) it is able to fulfill its financial obligations under this Agreement.

14. <u>Jury Waiver</u>. The Parties hereby waive trial by jury in any action brought on or arising out of or related to this Agreement.

15. <u>Entire Agreement.</u> This Agreement constitutes the entire agreement between the Parties as to the matters that are its subject. All prior or contemporaneous agreements, understandings, representations and statements relating to the subject matter hereof, whether oral or written, whether by the Parties, or each and every one of their respective attorneys and other agents, are integrated into this Agreement. No amendment to or modification of this Agreement shall be effective unless such amendment or modification is in writing and executed by each of the Parties hereto.

16. <u>Severability</u>. In case any provision contained in this Agreement is determined by a court to be invalid or unenforceable, the validity and enforceability of the remaining provisions shall not in any way be affected or impaired thereby.

17. <u>Counterparts.</u> This Agreement may be executed and delivered in one or more counterparts, including facsimile or electronic transmission in portable document format (.pdf), each of which shall be deemed to be an original and which, together, shall constitute one and the same instrument and shall be binding.

18. <u>Confidentiality.</u> The Parties agree that each will take reasonable steps to hold the terms of this settlement confidential. This provision does not prohibit the Parties from disclosing

the terms of the settlement to its attorneys, accountants or other business advisors so long as such advisors are bound to keep the terms confidential. Nothing in this agreement prohibits the Parties from making disclosures required by law.

19. <u>Attorneys' Fees Issues</u>. Each side is to bear its own attorneys' fees and costs. In the event any party seeks to enforce the terms of this Settlement Agreement, then such party, if successful, shall be awarded its reasonable attorneys' fees and costs.

By: _____
Name: <u>Daniel Holtz</u>
Date: 11-04-2020

By: _____
Name: <u>Olympia De Castro</u>
Date: 11/3/2020

By: _____
Name: <u>Toni Holtz</u>
Date: 11-25-20

**Walden Capital Corp.**

By: _____
Print Name: Daniel Holtz
Title: Managing Principal
Date: 11-04-2020