**DANOW, McMULLAN & PANOFF, PC**

# Memo

**To:** Gustavo Hernandez

**From:** Keven Danow

**CC:** Sergio Esposito, Ford Harrington

**Date:** February 21, 2014

**Re:** Proposed ownership and management structure of companies

Investors in Italian Wine Merchants, a New York retail off premise licensee have an opportunity to purchase an interest in Domaine Select, an importer and distributor of alcoholic beverages.

I understand that your preference is to consolidate all entities including retail, import and wholesale licenses, under one holding or parent company in order to share management resources. Such a consolidation is not possible. Under New York Alcohol Beverage (ABC) Law, and in most states, cross ownership of a retail license and an import/ wholesale license is illegal. This ban is usually referred to as Tied-House Laws. The penalties for these type of violations are serious, and may result in significant fines, suspension or cancellation of the licenses.

Based on the significant risk associated with such a consolidation, you must separate all investors in IWM from the ownership interest in any current and future Import/Wholesale company.

**The Use of Trusts to Separate Retail Interests from Interests In Import/Wholesale Entities.**

Under New York ABC law, a retail licensee cannot have any interest "direct or indirect" in another wholesaler, importer or manufacturer. However, under New York law, a trust is a separate entity owned by the trustee. Beneficiaries of the trust also have an interest in the trust. Once the Maker or Settlor of the trust creates an irrevocable trust with no right of reversion, he or she no longer has an interest in the trust property.

I met with Jacqueline Flug, Counsel to the New York State Liquor Authority. I explained the problem you face. Although Ms. Flug is critical of trusts established for the purposes of circumventing the Tied-House Laws, she recognizes that that the trustee of a trust is the licensee and that trusts can be used to separate ownership interests. Ms. Flug has acknowledged that IWM's New York retail license may be transferred to a trust under the following parameters:

(1) The trustee and the beneficiaries must not have any interest in a supplier or wholesaler. Your children may be the beneficiaries of the trust which holds an interest in a retail licensee, but may not also hold an interest or be the beneficiary of a trust which holds an interest in a supplier or wholesaler doing business anywhere in the world.

1

(2) The trustee must also be independent and have no interest in a supplier or a wholesaler.

(3) Ms. Flug said she would be more comfortable if at least one of the trustees of the trust was actively involved in the running of IWM. She would like the trustee to be a "true manager" of the retail store.

(3) The trust must be irrevocable and cannot terminate while interests on other tiers remain.

Ms. Flug has asked to review the trust before any assets are transferred. Her approval of the trust will be limited to Tied-House Law issues. It will take approximately 2-3 months to obtain SLA approval. It is critical that the trust create an actual divestment of the interest. The separation of ownership cannot be superficial.

Consequently, before you purchase Domaine Select, you must divest yourself of all retail licensees. You may do this by transferring all IWM retail license interests to one or more irrevocable trusts. At least one named trustee should be an individual who plays an active role in IWM New York. Retail entities can be transferred to the trust individually, or to a parent company, which then becomes a trust asset.

IWM has retail licenses in Florida and Colorado. You will have to transfer the ownership of these entities too. I do not anticipate an issue in Colorado; but Florida strictly enforces its laws regarding cross tier ownership and can impose criminal penalties against licensees attempting to circumvent those laws. However, the Florida Division of Alcohol Beverage has indicated that it would entertain arguments that trusts work as a method of divestment. Factors that the Florida Authority would consider in support of the trust include the fact that the trust is irrevocable and that the settlor has completely divested him or herself.

IWM Retailers must inform each state it is currently licensed in of the transfer and obtain permission for the transfer. Failure to disclose the transfer is a violation of law, in and of itself.

Once the trust is created and the retail assets have been transferred it is imperative that no distribution, import, wholesale or manufacturing interest be transferred to the trust or holding company. Ensuring that the trust remains compliant will require continuous oversight.

The transfer of the retail entities must occur before any import or wholesale company is acquired.

Option (a): Individual transfer of retail entities to trust.



Option (b): Transfer to parent company, which then becomes a trust asset.



2

### Consolidate import/wholesale licenses under one holding company.

It is likely that you will be able to consolidate management of any wholesalers and importers. These companies can share management resources. Currently, there are no restrictions preventing individuals or companies with import interests from also holding an interest in a wholesale license. However, many states including Florida will prevent these types of entities from holding an interest in a supplier/ manufacturing company.



### Sergio Esposito should divest himself of any retail interest, but can remain influential to IWM retail companies as either a Wine Critic or working through the Wholesaler.

Mr. Esposito cannot have an interest in or work for retail entities and wholesale/ import entities. However, he can remain influential over IWM's inventory by writing and publishing advice related to wine. For example, Mr. Esposito can create a blog or website that advises or lists wines that retailers should be offering to its customers.

If Mr. Esposito's advice is available to all retail licensees, he can maintain his interest in importer or wholesale tiers. It is vital that Mr. Esposito's advice is available to all retailers, not a select few, as that would be an illegal gift or service.

### Implement centralized management for entities

There is no legal way to implement centralized management for all entities. As explained above, it is imperative that all retail entities are separate from wholesale and import entities. There can be no cross over in ownership, finances or management.

You may adopt centralized management for all wholesale and import entities. These companies can be run by a single parent company. They can share management, finances and Human Resources.

With regard to the retail entities, you cannot implement the same centralized management, charged with managing the wholesale companies. In my opinion you can use the same accountants provided the accounting firm is not created just to service the companies you own but has a broad range of clients.

### Rare Wine Club, Bordeaux Index and other Internet Companies

You have asked how certain internet retailers in the industry operate.

The Rare Wine Club (WRC), Bordeaux Index (BI) and other internet companies operate on retail and wholesale tiers. The RWC holds three licenses in California, off sale retail, wholesale and import. California law permits a wine supplier or wholesaler to have an internet retail license.

In the past, California licensees have relied on off-sale retail and wine wholesale licenses to sell wine over the internet, referred to as a 17/20 license. Recently, California codified the 17/20 license by creating the Type 85 license, allowing companies to sell wine over the internet. BI holds a Type 85 license. Type 85 licensees may sell wine directly to California consumer via the Internet, mail or telephone but cannot sell from a premises open to the public. They may not have a brick and mortar store.

These companies are not permitted to sell to New York residents. In order to circumvent this restriction, RWC and BI represent that all sales are made in California and title to the goods pass to the consumer in California. They make no representation to the legal rights of anyone to ship or import wines into any state outside of California. RWC and BI offer to arrange for delivery of the goods to the consumer outside the state as an agent of the purchaser. In my opinion, the entire enterprise is based upon a fiction. The claim is that the sale is made in California and then the New York resident, acting through an agent, ships the goods to New York. Even if this were true, it would violate New York law, which only allows a resident to ship into the state if they purchase the goods while out of the state and the shipment accompanies them when they return. (Because of recent Federal restrictions that do not allow liquids to be carried aboard an airplane by a passenger, the Federal law allows goods to be shipped, provided the purchaser was outside the country and made the purchase him or herself.)

In my opinion, RWC and BI have no legal right to sell or ship wine directly to a consumer in the State of New York. Only a limited number of states allow an out of state retail licensee to ship into their state. Each company must have a retail license in the consumer's state to make the sale. Moreover, Type 85 licensees are outside the purview of Direct Shipping laws, which only allow producers of wine to directly ship its product to consumers outside its licensed state.

### Purchase of Domaine with a Trust

In order to speed up the process, you may also wish to consider the use of a trust to purchase Domaine Selects' shares. The problem is that the trust must be irrevocable. Once the item is placed in the trust, it can only be removed by the sale of the trust asset to another entity. This is a taxable event.