

# Memo

**To:** Gustavo Hernandez
Sergio Esposito
Ford Harrington
George Mora
Alison Domeneghetti
Paolo Domeneghetti

**From:** Keven Danow

**Date:** 6/3/2014

**Re:** Tied-House Rules

---

**Confidential, Attorney Client Privileged.**

Laws which restrict ownership by the same persons in more than one tier of the beverage alcohol industry are called "tied-house" laws.

Section 101 of New York's Alcoholic Beverage Control Law ("ABC Law") provides in part:

> 1. It shall be unlawful for a manufacturer or wholesaler licensed under this chapter to
>
> (a) Be interested directly or indirectly in any premises where any alcoholic beverage is sold at retail; or in any business devoted wholly or partially to the sale of any alcoholic beverage at retail by stock ownership, interlocking directors, mortgage or lien or any personal or real property, or by any other means.

Section 105 of the ABC Law provides in part:

> 16. No retail licensee to sell liquors and/or wines for off-premises consumption shall be interested, directly or indirectly, in any premises where liquors, wines or beer are manufactured or sold at wholesale or any other premises where liquor or wine is sold at retail for off-premises consumption by stock ownership,

1

interlocking directors, mortgage or lien on any personal or real property or by any other means...

Section 102 of the ABC Law provides in part:

> 1. (a) Except as provided in section seventy-nine-c[1] of this chapter no alcoholic beverages shall be shipped into the state unless the same shall be consigned to a person duly licensed hereunder to traffic in alcoholic beverages. This prohibition shall apply to all shipments of alcoholic beverages into New York state and includes importation or distribution for commercial purposes, for personal use, or otherwise, and irrespective of whether such alcoholic beverages were purchased within or without the state, provided, however, this prohibition shall not apply to any shipment consigned to a New York resident who has personally purchased alcoholic beverages for his personal use while outside the United States for a minimum period of forty-eight consecutive hours and which he has shipped as consignor to himself as consignee. Purchases made outside the United States by persons other than the purchaser himself, regardless whether made as his agent, or by his authorization or on his behalf, are deemed not to have been personally purchased within the meaning of this paragraph.

Section 561.42 of the Florida Liquor Control Law provides in part:

> (1)   No manufacturer, distributor, importer, primary American source of supply, or brand owner or registrant of any of the beverages herein referred to, whether licensed or operating in this state or out-of-state, nor any broker, sales agent, or sales person thereof, shall have any financial interest, directly or indirectly, in the establishment or business of any vendor licensed under the Beverage Law; nor shall such manufacturer, distributor, importer, primary American source of supply, brand owner or brand registrant, or any broker, sales agent, or sales person thereof, assist any vendor by any gifts or loans of money or property of any description or by the giving of any rebates of any kind whatsoever.

---

[1] Direct shipments by winery holding an appropriate permit.

Section 12-47-308 of the Colorado Liquor Control Law provides in part:

> (1) (a) It is unlawful for any person licensed pursuant to this article or article 46 of this title as a manufacturer, limited winery licensee, wholesaler, or importer, or any person, partnership, association, organization, or corporation interested financially in or with any of said licensees, to furnish, supply, or loan, in any manner, directly or indirectly, to any person licensed to sell at retail pursuant to this article or article 46 or 48 of this title any financial assistance, including the extension of credit for more than thirty days, as specified in section 12-47-202 (2) (b) or in rules of the state licensing authority, or any equipment, fixtures, chattels, or furnishings used in the storing, handling, serving, or dispensing of food or alcohol beverages within the premises or for making any structural alterations or improvements in or on the building in which such premises are located. This section shall not apply to signs or displays within such premises.

Domaine Select Wine Estates LLC. ("Domaine") holds five licenses issued by the state of California. They are as follows:

A Beer and Wine Wholesaler License Type 17
A Beer and Wine Importers License
A Distilled Spirits Importers License
A Distilled Spirits Wholesale License
Off-Sale Beer and Wine License – Type 20

A Type 20 Off Sale Beer & Wine license is a Package Store license and authorizes the sale of beer and wine for consumption off the premise.

California Business and Professions Code Section 23393.5 took effect on January 1, 2012, authorizing the state's new limited off-sale wine license. The new "Type 85" license allows licensees to make direct sales of wine to consumers over the internet and via direct mail and telephone, without requiring the licensee to maintain a brick and mortar retail location or to hold a beer and wine wholesaler license. Prior to the introduction of a Type 85 license, businesses looking to focus on internet wine sales in California were required to obtain both an off-sale beer and wine retail license and a beer and wine wholesaler license, commonly referred to as a 17/20 license combination. Domaine holds such a 17/20 combination and is therefore authorized

to sell wine over the internet, but also must meet the requirements of a wholesaler licensee, including selling wine to other retailers.[2]

I will not opine on whether simply holding the type 20 license in California is a breach of New York law. I understand that Domaine does not use the type 20 license to ship wine directly to consumers in New York. In my opinion, any attempt to do so would be a violation of Section 102 of the ABC Law. Moreover, in my opinion, were the New York State Liquor Authority to discover that Domaine was shipping directly to consumers in New York under its Type 20 license, it would bring charges against Domaine for a violation of section 101 of the ABC law as well as charges for aiding and abetting violations of section 102.

It is further my opinion that an attempt to claim that the sale took place in California, and that the shipment was made into New York by the company as an agent of the New York resident would not dissuade the Authority from bringing these charges. Section 102 provides, "[T]his prohibition shall not apply to any shipment consigned to a New York resident who has personally purchased alcoholic beverages for his personal use while <u>outside the United States for a minimum period of forty-eight consecutive hours</u> and which he has shipped as consignor to himself as consignee. Although I believe a valid Constitutional argument can be made that purchases in other states must also come under this exception, the statute makes it clear, "Purchases made outside the United States by persons other than the purchaser himself, regardless whether made as his agent, or by his authorization or on his behalf, are deemed not to have been personally purchased within the meaning of this paragraph."

While persons not licensed in New York can attempt to circumvent the statute and shift the violation from the California retailer to the New York resident purchaser, the New York State Liquor Authority is highly likely to take the position that any New York Licensee which attempts to circumvent the law in this manner is either in violation of the law or unfit to hold a license.

A similar problem exists in the State of Florida which does not allow a distributor or importer, whether licensed or operating in this state or out-of-state, to have any financial interest, direct or indirect, in the establishment or business of any vendor licensed under the Beverage Law.

In addition, New York State may take the position that your interest in wine funds constitutes an interest in a "premises where liquors, wines or beer are manufactured

---

[2] The California ABC recently posted an Industry Advisory on the new off-sale wine license. The advisory makes clear that Type 85 license holders may not maintain a brick and mortar store that is open to the public, and all sales must be made via direct mail, telephone or the internet. Additionally, the ABC confirmed that the new license alleviates the need for a beer and wine wholesaler license for retailers focused on selling wine via the internet, but the ABC will continue to process applications for 17/20 license combinations.

or sold at wholesale." To avoid this potential violation, I recommend that you transfer the interests in Italian Wine Merchants to a trust.

In my opinion, it is legal for an independent company to provide management advice and ancillary services to members of the supplier, wholesaler and retailer tiers. For instance, a certified public accountant would not be forbidden to provide services to an retailer because it had wholesale clients. However, if such a company were set up solely to provide services to companies owned by members of the same "corporate family," the practice would be considered a violation of the tied house laws. Consequently, if trusts were used to separate the interests between the Italian Wine Merchants and Domaine, but the same management team operated both, the New York State Liquor Authority would consider it a violation. In recent months, the Authority levied a $50,000.00 fine on a restaurant because one of its owners was the manager of a company which owned an interest in a winery in Europe. Similar fines were imposed upon licensed restaurants and package stores whose owners were on the Board of Directors of a winery in Europe.

If you wish to discuss these issues further, please contact me.