*Executed Copy*

EXECUTION VERSION

## REDEMPTION AGREEMENT

THIS REDEMPTION AGREEMENT (this "***Agreement***") is made to be effective as of October 6, 2016 (the "***Effective Date***") by and between SALONDERA, LLC, a Delaware limited liability company ("***Salondera***") and IWM HOLDINGS LLC, a Delaware limited liability company (the "***Company***"). Salondera and the Company are sometimes referred to herein individually as a "***Party***", and collectively as the "***Parties***".

WHEREAS, Salondera owns a total of fifty-seven and one half percent (57.50%) of the total membership interests in the Company (the "***Salondera Interest***").

WHEREAS, the Company desires to acquire the Salondera Interest from Salondera, and Salondera desires to have the Salondera Interest redeemed by the Company, in each case, on the terms and subject to the conditions set forth herein.

NOW, THEREFORE, for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties, intending to be bound, agree as follows:

1.    **Definitions**.  Capitalized terms used but not otherwise defined in the body of this Agreement shall have the meaning given them in Appendix A.

2.    **Redemption**.  At the Closing, on the terms and subject to the conditions of this Agreement, Salondera shall sell, assign, transfer and convey the entire Salondera Interest to the Company, and the Company shall purchase and redeem from Salondera, free and clear of all encumbrances, the entire Salondera Interest.

3.    **Purchase Price**.  The total purchase price consideration to be paid by the Company for the redemption of the Salondera Interest shall be Two Million Seven Hundred Thousand Dollars ($2,700,000) (the "***Purchase Price***"), which shall be paid to Salondera by cash, bank check or wire transfer of immediately available funds, in accordance with wire transfer instructions to be provided by Salondera not less than three (3) Business Days prior to the Closing.

4.    **Expense Reimbursement**.  The Company agrees that it shall reimburse reasonable professional fees incurred by Salondera, the Guarantors, or their respective Affiliates (in this context, Affiliate shall exclude the Company) in connection with the negotiation, execution and consummation of this Agreement, up to a maximum amount of $75,000 in the aggregate.  Subject to Salondera's presentation of an invoice, the Company shall make an initial partial reimbursement of up to $37,500 via wire transfer (such wire instructions shall be provided by Salondera) within five (5) Business Days of the Effective Date, and the remaining balance (consistent with the aggregate limitation described in the preceding sentence) shall be reimbursable at the earlier of (a) Closing or (b) termination of this Agreement.

5.    **Escrow Agreement**. Simultaneous with, and effective as of, the signing of this Agreement, the Company, Salondera and Escrow Agent shall enter into an escrow agreement, in substantially the form of Exhibit A (or with such changes thereto as shall be reasonably satisfactory to the parties thereto) (the "***Escrow Agreement***"), and such Escrow Agreement shall include the following material terms:

(a)     Simultaneously with the signing of this Agreement, the Company shall deposit $300,000 (together with any interest thereon, the "*Escrow Funds*") with the Escrow Agent, who shall hold and administer such Escrow Funds in accordance with the Escrow Agreement and this Section.

(b)     The Escrow Funds shall either (i) be released and paid to Salondera at the direction of the Company on the Closing Date as partial payment of the Purchase Price, or (ii) be released back to the Company in the event this Agreement is subsequently terminated pursuant to Section 15. Notwithstanding anything to the contrary in this Agreement or in the Escrow Agreement, whether or not the Closing occurs, immediately upon the occurrence of any of the following, the Escrow Funds shall be released and paid to Salondera in accordance with the Escrow Agreement and this Section as liquidated damages:

(A)     The Company fails to file a complete SLA Application within the thirty (30) days following the Effective Date and submit a copy of the receipt issued by the SLA to Salondera within a reasonable time thereafter;

(B)     Following submission of the SLA Application, the Company fails to diligently respond to any request by the SLA within the deadlines set forth by the SLA or any extensions thereof;

(C)     The SLA Application is rejected due to a reason attributable to the Company;

(D)     The Company fails to actively and diligently pursue the SLA Application process for a period of at least six (6) months following the Effective Date, and Salondera thereafter exercises the termination right under Section 15(a)(ii); or

(E)     The SLA Application remains pending more than six (6) months from the Effective Date due to a reason attributable to the Company, and Salondera thereafter exercises the termination right under Section 15(a)(ii).

(c)     Salondera and the Company each represent that they have no actual knowledge, in the case of Company after due and appropriate inquiry (which did not require any inquiry to be made to the SLA), of any current investigation into the Company as of the Effective Date. Without limiting other causes of permissible delay or refusal, it is agreed that should the SLA delay or refuse to approve the SLA Application by reason of an investigation against the Company that was ongoing on March 18, 2016, and/or the methods of operations relative to a Party (or their respective Affiliates) as they exist on the Effective Date, said delay or refusal shall not be attributed to the Company for the purposes of this Section, nor shall it give rise to a claim by Salondera to liquidate the Escrow Funds as damages under this Section. Salondera shall promptly provide any reasonable cooperation or assistance requested by the Company in connection with the preparation and submission of the SLA Application, at the Company's sole expense; provided, that any professional fees incurred by Salondera in connection with the foregoing shall be subject to the overall limitation described in Section 4.

(d)     Any fees payable to the Escrow Agent in connection with the Escrow Agreement shall be prepaid by the Company.

53547147.3

6.    **Closing**.

(a)    <u>Location and Closing Date</u>.    The consummation of the transactions contemplated by this Agreement (the "***Closing***") shall take place at the offices of Danow, McMullan & Panoff, P.C. 275 Madison Ave, Suite 1711, New York, NY 10016, on or before the third Business Day after all the conditions set forth herein have been satisfied or waived, or at such other place or at such other time as shall be agreed upon by the Parties.  The Closing shall be deemed to have become effective as of 12:01 A.M., Eastern time, on the date on which the Closing is actually held, and such time and date are sometimes referred to herein as the "***Closing Date***."

(b)    <u>Deliverable and Payment on the Effective Date</u>.    On or prior to the Effective Date, the Parties shall mutually execute and deliver copies of this Agreement and the Escrow Agreement (countersigned by the Escrow Agent), and the Company shall deposit the Escrow Funds with the Escrow Agent pursuant to <u>Section 5</u>.

(c)    <u>Payment on the Closing Date</u>**.**    Subject to fulfillment or waiver of the conditions set forth herein, at Closing, the Company shall pay to Salondera an amount equal to the Purchase Price by cash, bank check or wire transfer of immediately available funds to the account of the Salondera specified herein.

(d)    <u>The Company's Additional Deliveries and Actions</u>.    Subject to fulfillment or waiver of the conditions set forth herein, at Closing, the Company shall deliver to Salondera (or do, as applicable), all of the following (duly executed where applicable):

(i)    Delivery of the Purchase Price, by cash, bank check or wire transfer of immediately available funds to the account of the Salondera specified herein;

(ii)    Delivery of written proof that the SLA Application has been approved by the SLA;

(iii)    Delivery of a certificate of good standing of the Company issued as of a recent date by the Secretary of State of the State of Delaware;

(iv)    Delivery of a certificate of the managing member of the Company, and dated the Closing Date, in form and substance reasonably satisfactory to Salondera, as to (A) the resolutions of the members of the Company authorizing the execution, delivery and performance of this Agreement, any other agreements to which the Company is a party and the transactions contemplated hereby and thereby; and (B) incumbency and signatures of the officers of the Company executing this Agreement;

(v)    Delivery of payoff letter from SVB, in form and substance reasonably acceptable to Salondera, confirming the amount required to fully pay off and discharge the SVB Loan at Closing;

(vi)    Delivery of written proof or confirmation, in form and substance reasonably acceptable to Salondera, that the SVB Loan has been indefeasibly paid off and discharged in full as of the Closing;

(vii)     Delivery of the Assignment of LLC Interest, duly executed by the Company;

(viii)    Payment of advisor or guaranty fees that have accrued but remain unpaid as of the Closing Date;

(ix)      Subject to the presentation of an invoice and the limitations described in Section 4, payment or reimbursement of the balance of Salondera's professional fees; and

(x)       Delivery of written proof or confirmation, in form and substance reasonably acceptable to Salondera, that each of the Guarantors has been released from any personal liability or guaranty relative to the Lease.

(e)      Salondera's Additional Deliveries and Actions.   Subject to fulfillment or waiver of the conditions set forth herein, at Closing, Salondera shall deliver to the Company (or do, as applicable), all of the following (duly executed where applicable):

(i)       Delivery of a receipt for the Purchase Price payment;

(ii)      Delivery of a certificate of good standing for Salondera issued as of a recent date by the Secretary of State of Delaware;

(iii)     Delivery of a certificate of the managing member of Salondera, and dated the Closing Date, in form and substance reasonably satisfactory to the Company, as to (A) the resolutions of the members of Salondera authorizing the execution, delivery and performance of this Agreement, any other agreements to which Salondera is a party and the transactions contemplated hereby and thereby; and (B) incumbency and signatures of the officers of Salondera executing this Agreement;

(iv)     Delivery of the Assignment of LLC Interest, duly executed by Salondera; and

(v)      Delivery of resignations of Salondera (or its nominees) from any officer, director, advisory board or other positions with the Company, effective as of the Closing.

7.       **Representations and Warranties of Salondera**.  As an inducement to the Company to enter into this Agreement and to consummate the transactions contemplated hereby, Salondera represents and warrants to the Company as follows

(a)      Organization.  Salondera is duly organized, validly existing and in good standing under the laws of the State of Delaware.

(b)      Subsidiaries.  Salondera owns no subsidiaries.

(c)      No Conflicts.  Neither the execution and delivery of this Agreement, the consummation of any of the transactions contemplated hereby or thereby, nor compliance with or fulfillment of the terms, conditions and provisions hereof or thereof, materially conflicts or will

4

materially conflict with or results or will result in a material violation or breach of any of the terms, conditions or provisions of the Organizational Documents of Salondera or any other agreement to which Salondera is a party or otherwise bound.

        (d)    <u>Bankruptcy</u>.  Salondera has not filed or consented (by answer or otherwise) to the filing against it of a petition for relief, reorganization or arrangement or any other petition under bankruptcy or insolvency laws of any jurisdiction.

        (e)    <u>Authority; Validity; Enforceability</u>.

        (i)    Salondera has all necessary capacity, power, authority and legal right to enter into, execute and deliver this Agreement and all other agreements, instruments and documents contemplated hereby or thereby to which Salondera is a party and to perform its obligations hereunder and thereunder and to consummate the transactions contemplated hereby and thereby.  The execution, delivery and performance by Salondera of this Agreement, and all other agreements, instruments and documents contemplated hereby or thereby to which Salondera is a party and the consummation of the transactions contemplated hereby and thereby have been duly and validly authorized by all necessary action and no other action on the part of Salondera is necessary to authorize the execution, delivery and performance of this Agreement, or any other agreement, instrument or document contemplated hereby or thereby and the consummation by Salondera of the transactions contemplated hereby and thereby.

        (ii)    This Agreement has been duly and validly executed and delivered by Salondera, and this Agreement constitutes, and all other agreements, instruments and documents contemplated hereby or thereby to which Salondera is a party (when so executed and delivered) will constitute, legal, valid and binding obligations of Salondera, enforceable against Salondera in accordance with their respective terms, except to the extent that enforceability thereof may be limited by bankruptcy, insolvency, reorganization, moratorium or other similar laws relating to or limiting creditors' rights generally and by general principles of equity.

        (f)    <u>Consents</u>.  No Approval, exemption or authorization is required to be obtained from, no notice is required to be given to and no filing is required to be made with, any Governmental Body except the SLA in order to authorize or permit the consummation of the transactions contemplated by this Agreement, or except for such Approvals, exemptions, authorizations, notices or filings with Persons other than Governmental Authorities, the failure to obtain or give, as appropriate, would not reasonably be expected to have an adverse effect on the consummation of the transactions contemplated hereby.

        (g)    <u>Representations to Third Parties</u>. Salondera has not represented to third parties that it has the power to bind or represent the Company and Salondera has no ability under the Company's Organizational Documents to bind or represent the Company and Salondera has not made any attempt to commit the Company to any agreement with an employee vendor, consultant, representative or other third party.

        (h)    <u>Litigation</u>. Salondera has no knowledge of any claims, actions, suits, proceedings, arbitrations or governmental investigations currently pending or threatened in writing, against the Company.

53547147.3

(i)     Membership Interests. Salondera owns the Salondera Interest free and clear of all liens or other encumbrances. To Salondera's knowledge, there are no options, warrants, subscriptions, purchase agreements or similar rights to acquire outstanding relative to the Salondera Interest, or any portion thereof. Neither Salondera, the Guarantors, nor their respective Affiliates holds any interests in the Company other than the Salondera Interest.

8.     **Representations and Warranties of the Company**. As an inducement to Salondera to enter into this Agreement and to consummate the transactions contemplated hereby, the Company represents and warrants to Salondera as follows:

(a)     Organization. The Company is duly organized, validly existing and in good standing under the laws of the State of Delaware.

(b)     Subsidiaries. The Company owns no subsidiaries.

(c)     No Conflicts. Neither the execution and delivery of this Agreement, the consummation of any of the transactions contemplated hereby or thereby, nor compliance with or fulfillment of the terms, conditions and provisions hereof or thereof, materially conflicts or will materially conflict with or results or will result in a material violation or breach of any of the terms, conditions or provisions of the Organizational Documents of the Company or any other agreement to which the Company is a party or otherwise bound.

(d)     Bankruptcy. The Company has not filed or consented (by answer or otherwise) to the filing against it of a petition for relief, reorganization or arrangement or any other petition under bankruptcy or insolvency laws of any jurisdiction.

(e)     Authority; Validity; Enforceability.

(i)     The Company has all necessary capacity, power, authority and legal right to enter into, execute and deliver this Agreement and all other agreements, instruments and documents contemplated hereby or thereby to which the Company is a party and to perform its obligations hereunder and thereunder and to consummate the transactions contemplated hereby and thereby. The execution, delivery and performance by the Company of this Agreement, and all other agreements, instruments and documents contemplated hereby or thereby to which the Company is a party and the consummation of the transactions contemplated hereby and thereby have been duly and validly authorized by all necessary action and no other action on the part of the Company is necessary to authorize the execution, delivery and performance of this Agreement, or any other agreement, instrument or document contemplated hereby or thereby and the consummation by the Company of the transactions contemplated hereby and thereby.

(ii)     This Agreement has been duly and validly executed and delivered by the Company, and this Agreement constitutes, and all other agreements, instruments and documents contemplated hereby or thereby to which the Company is a party (when so executed and delivered) will constitute, legal, valid and binding obligations of the Company, enforceable against the Company in accordance with their respective terms, except to the extent that enforceability thereof may be limited by bankruptcy, insolvency, reorganization,

53547147.3

moratorium or other similar laws relating to or limiting creditors' rights generally and by general principles of equity.

(f)      Consents. No Approval, exemption or authorization is required to be obtained from, no notice is required to be given to and no filing is required to be made with, any Governmental Body except the SLA in order to authorize or permit the consummation of the transactions contemplated by this Agreement, or except for such Approvals, exemptions, authorizations, notices or filings with Persons other than Governmental Authorities, the failure to obtain or give, as appropriate, would not reasonably be expected to have an adverse effect on the consummation of the transactions contemplated hereby.

(g)      Litigation. After due and appropriate inquiry, there are no claims, actions, suits, proceedings, arbitrations or governmental investigations pending or threatened in writing, against the Company. There are no judgments, orders, injunctions, decrees, stipulations or awards (whether rendered by a court, administrative agency or other Governmental Body, by agreement, arbitration or otherwise) against the Company.

(h)      Investigations.  After due inquiry, but without making specific inquiry to the SLA, the Company has no knowledge of any on-going or pending investigation related to the Company by any Governmental Body.

9.      **Pre-Closing Covenants**.  The respective Parties covenant and agree to take the following actions between the Effective Date and the Closing Date:

(a)      Preserve Accuracy of Representations and Warranties; Notification of Certain Matters.

(i)      Each Party shall refrain from taking any action, which would render any representation or warranty contained in this Agreement inaccurate as of the Closing Date.

(ii)      Each Party shall promptly provide written notification to the others of any action, suit or proceeding that shall be instituted or threatened against such Party to restrain, prohibit or otherwise challenge the legality of any transaction contemplated by this Agreement.

(b)      Governmental Approvals.  During the period prior to the Closing Date, the Parties shall act diligently and reasonably, and shall cooperate with each other, in attempting to permit the consummation of the transactions contemplated by this Agreement, or to otherwise satisfy the conditions set forth herein.  Without limiting the generality of the foregoing, the Company shall diligently prosecute the SLA Application, and Salondera shall promptly provide any reasonable cooperation or assistance requested by the Company in connection with the preparation, submission and prosecution of the SLA Application.  Any professional fees incurred by Salondera in connection with the foregoing cooperation shall be subject to the overall limitation described in Section 4.

(c)      Commercially Reasonable Efforts.  Subject to the terms and conditions of this Agreement, each of the Parties shall use its commercially reasonable efforts in good faith to take or cause to be taken as promptly as practicable all reasonable actions that are within its control to fulfill,

53547147.3

satisfy or discharge each of the agreements, covenants and other obligations that it has undertaken pursuant to this Agreement or any other transaction document.

   (d) <u>Fees and Other Obligations Prior to the Closing</u>.  The Parties agree that during the period between the Effective Date and the Closing, the only fees that will continue to accrue to Salondera, the Guarantors or their Affiliates shall be advisory and guaranty fees, which shall accrue consistent with past practice in effect as of the Effective Date. Any advisory and guaranty fees that accrue following the Effective Date in accordance with the preceding sentence, together with any advisory and guaranty fees that are outstanding as of the Effective Date, shall both continue to accrue during the period between the Effective Date and the Closing, with no installments due or payable during such time, and all such amounts due in full at Closing pursuant to Section 6(d)(viii).  Salondera represents, warrants, covenants and agrees that during pre-Closing period Salondera, Guarantors and their respective Affiliates shall not charge (or attempt to charge) the Company or its Affiliates any new fees of any kind, nor enter into, authorize or undertake (or attempt to enter into, authorize or undertake) any employment, consulting or other service arrangement of any Person, any loan or other business transaction, or any other obligation of any kind on behalf of the Company or its Affiliates.

10. **Covenants Upon and Following Closing**.

   (a) <u>Tax</u>.

     (i) The Parties agree that income of the Company for the year 2015 shall be allocated based upon ownership through end of 2015.  The income for 2016 up through the Closing Date will be zero, and all income for 2016 will be allocated to the period after the Closing, provided, that in the event of an IRS audit which results in a reallocation of 2016 income to Salondera, Salondera will be responsible for any associated income tax obligation and there shall be no adjustment, repayment or indemnification by the Company.  To the extent payments have been made to Salondera or its Affiliates for fees, the amount will be reported to the IRS in accordance with generally accepted accounting practices and applicable Laws, and the recipient thereof shall be responsible for the taxes associated with such income.  The Parties agree to cause the LLC Agreement to be promptly amended to reflect the requirements of this <u>Section 10(a)(i)</u> provided, that notwithstanding anything else to the contrary in the LLC Agreement, this Agreement or elsewhere, Salondera shall not be entitled to any distributions of cash from the Company (including any tax distributions) for 2015 or 2016.

     (ii) The Company shall, at the Company's expense, reasonably cooperate with Salondera to provide such information as may be reasonably required in order for Salondera to determine its amounts realized governed by Internal Revenue Code Section 751 and the regulations promulgated thereunder, and such other information as may be reasonably requested by Salondera in order for Salondera to meet its other tax reporting and payment obligations.

     (iii) The Company shall not file or amend any income tax return for any tax year of the Company ended prior to 2016 if it could affect allocations of taxable income and loss to Salondera, without the prior written consent of Salondera, not to be unreasonably withheld.

53547147.3

(b)      **SVB Loan**.  The Company shall not renew, extend, redraw or otherwise incur any new indebtedness or obligation under the SVB Loan after the date of the Effective Date without each of the Guarantors' written consent.

(c)      **Termination of Management Agreements and Fees**.  The Parties agree that effective as of Closing, any written or unwritten agreement or understanding between or among the Company, Salondera, the Guarantors, and/or their respective Affiliates (or any of them) pursuant to which Salondera, or any Guarantor (or their respective Affiliates) provides any services to the Company or serves the Company in any capacity, including, without limitation, any service as a director, advisor, officer, employee, consultant, contractor or other relationship of any kind, including any service relationship or arrangement that results in the accrual or obligation to pay any advisor, director, monitoring, management, guaranty or similar fee, shall automatically terminate.

11.      **Additional Agreements**.

(a)      **Compliance with Agreements**.  Each of the Parties agrees to take all reasonable actions necessary for such Party to comply with its obligations under this Agreement, and all other agreements, instruments and documents contemplated hereby or thereby to which such Person is a party.

(b)      **Fair Dealings**. All Parties shall act in good faith from and after the Effective Date, and will not carry out any acts which may reasonably be expected to have a negative effect on the Company's business.

12.      **Conditions Precedent to Obligations of the Company**.  The obligations of the Company under this Agreement are subject to the satisfaction, at or prior to the Closing, of each of the following conditions (any of which may be waived by the Company, in whole or in part):

(a)      **No Misrepresentation or Breach of Covenants and Warranties**.  There shall have been no material breach by Salondera in the performance of any of its covenants and agreements herein; each of the representations and warranties of Salondera, contained or referred to herein shall be true and correct on the Closing Date in all material respects as though made on the Closing Date, except for changes therein specifically permitted by this Agreement and reasonably acceptable to the Company, or resulting from any transaction expressly consented to in writing by the Company; and there shall have been delivered to the Company a certificate to such effect, dated the Closing Date, signed on behalf of Salondera as to the representations and warranties made.

(b)      **Corporate Approvals**.  All corporate Approvals of Salondera shall have been obtained and be in full force and effect for the consummation of the transaction, including the approvals required by Salondera's Organizational Documents, and such approvals not have been revoked, modified, terminated or suspended.

(c)      **No Restraint or Litigation**.  No action, suit, investigation or proceeding shall have been instituted or threatened to restrain or prohibit or otherwise challenge the legality or validity of the transactions contemplated hereby or the benefit intended to be provided to the Company hereby.

53547147.3

(d)     <u>Necessary Governmental Approvals</u>.  The Parties shall have received all Approvals and actions of or by all Governmental Bodies which are necessary to consummate the transactions contemplated hereby, including the approval of the SLA Application by the SLA.

(e)     <u>Salondera's Deliverables.</u> The Company shall have received from Salondera the deliverables listed in <u>Section 6(e)</u>.

(f)     <u>Financing</u>.  The Company shall have obtained disbursement of a loan or credit facility, on terms acceptable to the Company, with sufficient cash proceeds to satisfy the Purchase Price and fully discharge the SVB Loan.

13.     **Conditions Precedent to Obligations of Salondera**.  The obligations of Salondera under this Agreement are subject to the satisfaction, at or prior to the Closing, of each of the following conditions (any of which may be waived by Salondera, in whole or in part):

(a)     <u>No Misrepresentation or Breach of Covenants and Warranties</u>.  There shall have been no material breach by the Company in the performance of any of its covenants and agreements herein; each of the representations and warranties of the Company, contained or referred to herein shall be true and correct on the Closing Date in all material respects as though made on the Closing Date, except for changes therein specifically permitted by this Agreement and reasonably acceptable to Salondera, or resulting from any transaction expressly consented to in writing by Salondera; and there shall have been delivered to Salondera a certificate to such effect, dated the Closing Date, signed on behalf of the Company as to the representations and warranties made.

(b)     <u>Corporate Approvals</u>.  All corporate Approvals of the Company shall have been obtained and be in full force and effect for the consummation of the transaction, including the approvals required by the Company Organizational Documents, and such approvals not have been revoked, modified, terminated or suspended.

(c)     <u>No Restraint or Litigation</u>.  No action, suit, investigation or proceeding shall have been instituted or threatened to restrain or prohibit or otherwise challenge the legality or validity of the transactions contemplated hereby or the benefit intended to be provided to Salondera hereby.

(d)     <u>Necessary Governmental Approvals</u>.  The Parties shall have received all Approvals and actions of or by all Governmental Bodies which are necessary to consummate the transactions contemplated hereby, including the approval of the SLA Application by the SLA.

(e)     <u>The Company's Deliverables.</u> Salondera shall have received from the Company the deliverables listed in <u>Section 6(d)</u>.

14.     **Indemnification**.

(a)     <u>Indemnification by Salondera</u>.

(i)     Salondera agrees to indemnify and hold harmless the Company from and against any and all Losses incurred by the Company in connection with or arising from:

53547147.3

(A)     any breach of any warranty or the inaccuracy of any representation of Salondera contained in this Agreement or any certificate delivered by or on behalf of Salondera pursuant hereto or in any other agreements, instruments and documents contemplated hereby;

(B)     any breach by Salondera of any of the covenants or agreements made by Salondera, or any failure of Salondera to perform any of its obligations, in this Agreement or in any other agreements, instruments and documents contemplated hereby; or

(C)     Failure of Salondera to deliver good title to the Salondera Interest, free of all liens and encumbrances.

(ii)     The indemnification provided for herein shall terminate two (2) years after the Closing Date (and no claims shall be made by the Company thereafter pursuant to this indemnity clause).

(b)     Indemnification by the Company.

(i)     The Company agrees to indemnify and hold harmless Salondera from and against any and all Losses incurred by Salondera in connection with or arising from:

(A)     any breach of any warranty or the inaccuracy of any representation of the Company contained in this Agreement or any certificate delivered by or on behalf of the Company pursuant hereto or in any other agreements, instruments and documents contemplated hereby; or

(B)     any breach by the Company of any of the covenants or agreements made by the Company, or any failure of the Company to perform any of its obligations, in this Agreement or in any other agreements, instruments and documents contemplated hereby.

(ii)     The indemnification provided for herein shall terminate two (2) years after the Closing Date (and no claims shall be made by Salondera thereafter pursuant to this indemnity clause).

(c)     Claims for Indemnification; Defense of Indemnified Claims.

(i)     If a Party (an "***Indemnified Party***") makes a claim for indemnification, such Indemnified Party shall notify the person entitled to receive notice, on behalf of the indemnifying party or parties (such indemnifying party or parties, the "***Indemnifying Party***") in writing promptly after the Indemnified Party receives any written notice of any claim or commencement of any action, suit or proceeding against it, or the Indemnified Party becomes aware (which for the purposes of this Section shall mean that an executive officer or member has been so informed in writing) of any matter for which indemnification will be sought hereunder (a "***Claim***"). Failure to give any such notice shall not constitute a waiver of any right to indemnification, or reduce in any way the indemnity available hereunder, except to the extent such failure to notify directly increased the amount to be indemnified hereunder.

(ii)     The Indemnifying Party shall assume and control the defense of any Claim, and shall have counsel reasonably acceptable to the Indemnified Party(s) represent the Indemnified Party(s) in connection with such Claim; provided, that any Indemnified Party shall have the right (without releasing the Indemnifying Party from any of its obligations under this Agreement) to employ its own counsel and either to direct its own defense or to participate in the Indemnifying Party's defense, as the case may be, but the fees and expenses of such counsel shall be at the expense of such Indemnified Party (except that such fees and expenses shall be at the expense of the Indemnifying Party if (A) the employment of such counsel shall have been authorized in writing by an Indemnifying Party (which authorization shall not be unreasonably withheld) in connection with such defense or (B) the Indemnifying Party shall not have provided counsel reasonably acceptable to such Indemnified Party(s) to take charge of such defense or (C) if the Indemnifying Party shall assume the defense of a Claim and fail to diligently and vigorously prosecute such defense in a timely manner or (D) such Indemnified Party(s) shall have reasonably concluded that there may be defenses available to it which are different from or additional to those available to an Indemnifying Party and such different or additional defenses cannot be asserted by the Indemnifying Party's counsel because of a conflict of interest or otherwise).  If any Indemnified Party exercises its right to direct its own defense or participate in the Indemnifying Party's defense against any such Claim as provided above, the Indemnifying Party, on the one hand, and such Indemnified Party, on the other hand, shall cooperate with each other in such defense and make available to each other any pertinent records, materials and information in such Person's possession or under such Person's control relating thereto as is reasonably required by such other Party.  If the Indemnifying Party is conducting the defense against any such Claim, the Indemnified Party(s) shall cooperate in such defense and make available to the Persons conducting such defense all such records, materials and information in its possession or under its control relating thereto as is reasonably required by such Person, all at the Indemnifying Party's expense. No such Claim may be settled by either the Indemnified Party(s) or the Indemnifying Party without the written consent of the other, which consent shall not be unreasonably withheld; provided, that the Indemnifying Party may settle any claim without the written consent of any Indemnified Parties if such settlement results in no Losses being suffered or incurred by any Indemnified Parties as a result of or in connection with such settlement and the Indemnified Parties receive a full release with respect to such Claim and if such settlement results in no material adverse impact on the business or condition of the Company. For the avoidance of doubt, reasonable bases for the withholding of consent by the Indemnified Party(s) include that (1) a settlement does not contain a complete release of the Indemnified Party(s), (2) a settlement imposes any injunctive or any other non-monetary obligation on the Indemnified Party(s) or (3) a settlement would require the payment of any money damages by the Indemnified Party(s) for which it would not be entitled hereunder to receive an indemnity from the Indemnifying Party. Notwithstanding the foregoing, the Indemnified Party(s) shall have the right to pay, settle or compromise any such claim, action or suit; provided, that in such event the Indemnified Party(s) shall waive any right to indemnity hereunder unless the Indemnifying Party shall have consented in writing or the Indemnified Party(s) shall have sought the consent of the Indemnifying Party to such payment, settlement or compromise and such consent was unreasonably withheld, in which events no claim for indemnity hereunder shall be waived.

(d)     **Indemnification Payments**.  Any amounts due to an Indemnified Party under the aforesaid indemnities shall be due and payable by the Indemnifying Party within fifteen (15)

calendar days after written demand therefor.  Any such amount shall bear interest from the date such claim is made until it is paid at the Agreed Rate.

15.     **Termination**.

(a)     Termination.     Anything contained in this Agreement to the contrary notwithstanding, this Agreement may be terminated at any time prior to the Closing Date:

(i)      by the mutual consent of the Parties;

(ii)     by either Party if the Closing shall not have occurred on or before the date that is six (6) months after the Effective Date (or such later date as may be mutually agreed to by the Parties, and provided that the delay is not attributable to any act or omission of the terminating Party);

(iii)    by the Company in the event of any material breach by Salondera of any of Salondera's agreements, representations or warranties contained herein and the failure of Salondera to cure such breach within twenty (15) Business Days after receipt of notice from the Company requesting such breach to be cured;

(iv)     by Salondera in the event of any material breach by the Company of any of its respective agreements, representations or warranties, respectively, contained herein and the failure of the Company to cure such breach within twenty (15) Business Days after receipt of notice from Salondera requesting such breach to be cured.

No Party shall be entitled to exercise any unilateral right of termination pursuant to this Section if such Party shall not have performed diligently and in good faith the obligations required to be performed by such Party hereunder prior to the date termination is sought.

(b)     Notice of Termination.  Any Party desiring to terminate this Agreement shall give notice of such termination to the other Party.

(c)     Remedies.

(i)      The Parties agree that irreparable damage will result in the event that this Agreement is not specifically enforced, and that any damages available at law for a breach of this Agreement would not be an adequate remedy.  Therefore, the provisions hereof and the obligations of any Party shall be enforceable in a court of equity, or other tribunal with jurisdiction, by a decree of specific performance, and appropriate injunctive relief may be applied for and granted in connection therewith.  Such remedies and all other remedies provided for in this Agreement shall, however, be cumulative and not exclusive and shall be in addition to any other remedies which a Party may have under this Agreement or otherwise.

(ii)     In the event the Company or Salondera terminate this Agreement for breach pursuant to Section 15(a)(iii) or (iv), respectively, such Party shall have the right to collect from the breaching Party all reasonable out-of-pocket costs and expenses theretofore suffered and sustained by the non-breaching Party.

13

(d)     Effective of Termination.

(i)     Any termination of this Agreement in accordance with this Section shall have the effect of causing this Agreement thereupon to become void and of no further force or effect whatsoever, and thereupon none of the Parties will have any rights, duties, liabilities or obligations of any kind or nature whatsoever against any other Party based upon either this Agreement or the transactions contemplated hereby, except for Sections 15(d)(ii) and 16(b) hereof.

(ii)     A termination shall not relieve any Party from liability for any breach of, or for any misrepresentation under, this Agreement or any agreement, instrument or document delivered pursuant hereto, or be deemed to constitute a waiver of any available remedy (including specific performance, if available) for any such breach or misrepresentation.

16.     **General Provisions**.

(a)     Survival of Obligations.    All representations, warranties, covenants and obligations contained in this Agreement shall survive the Closing Date; provided, however, that, except as otherwise provided herein, the representations and warranties contained herein shall terminate on the second (2nd) anniversary of the Closing Date.

(b)     Confidential Nature of Information.   Each Party agrees that it will treat in confidence all documents, materials and other information which it shall have obtained regarding the other Party during the course of the negotiations leading to the consummation of the transactions contemplated hereby (whether obtained before or after the date of this Agreement), the investigation provided for herein and the negotiation and preparation of this Agreement and other related documents and, if the transactions contemplated hereby are not consummated, each Party will return to the other Party all copies of nonpublic documents and materials which have been furnished in connection therewith.  Such documents, materials and information shall not be communicated to any third Person (other than their respective counsel, accountants or financial advisors), and no Party shall use any confidential information in any manner whatsoever except solely for the purpose of evaluating the Acquisition.  The obligation of each Party to treat such documents, materials and other information in confidence shall not apply to any information which (i) is or becomes available to the public other than as a result of disclosure by such Party or its Affiliates, (ii) is required to be disclosed by such Party or its Affiliates by applicable Law or Governmental Body, but in such case, such Party shall give each other Party advance notice of such disclosure and an opportunity to object thereto), or (iii) such Party reasonably deems necessary to disclose to obtain any of the consents or Approvals contemplated hereby (but in such case, such Party shall give each other Party advance notice of such disclosure and an opportunity to object thereto).

(c)     No Public Announcement.   Neither Party shall, without prior written approval of the other, make any press release or other public announcement concerning the transactions contemplated by this Agreement, except as and to the extent that any such Party shall be so obligated by law, in which case the other Party shall be advised and the Parties shall use their best efforts to cause a mutually agreeable release or announcement to be issued; provided, that the foregoing shall not preclude communications or disclosures necessary to implement the provisions of this Agreement or to comply with accounting and securities regulatory disclosure obligations.

53547147.3

(d)     Notices.   All notices or other communications required or permitted hereunder shall be in writing and shall be deemed given or delivered when delivered personally or when sent by registered or certified mail or by overnight courier service addressed as follows:

If to the Company, to:

IWM Holdings LLC
Attn:  Sergio Esposito
108 East 16th Street
New York, NY 10003
E-mail: sergioespo@aol.com

with a copy to:

Keven Danow, Esquire
275 Madison Av., Suite 1711
New York, NY 10016
e-mail: kdanow@dmppc.com

with an additional copy to:

Michael Gillette
Polsinelli PC
1 East Washington St., Ste. 1200
Phoenix, AZ  85004
mgillette@polsinelli.com

If to Salondera:

Javier Mora
4801 San Amaro Dr.
Coral Gables, FL 33146
Tel:  305-778-1935

or to such other address as such Party may indicate by a notice delivered to the other Party hereto.

(e)     Successors and Assigns; No Third Party Beneficiaries.

(i)     The rights of any Party under this Agreement shall not be assignable without the prior written consent of the other Party.

(ii)     This Agreement shall be binding upon and inure to the benefit of the Parties and their successors and permitted assigns.  The successors and permitted assigns hereunder shall include, in the case of the Company, any permitted assignee as well as the successors in interest to such permitted assignee (whether by merger, liquidation (including successive

53547147.3

mergers or liquidations) or otherwise). Nothing in this Agreement, expressed or implied, is intended or shall be construed to confer upon any Person other than the Parties and successors and assigns permitted by this Section 16(e) any right, remedy or claim under or by reason of this Agreement.

(f)     Entire Agreement.  This Agreement, together with the Exhibits hereto (Exhibits are deemed a part of this Agreement), any written amendments to this Agreement satisfying the requirements of Section 16(g) hereof, and any further agreements entered into by the Parties at the Closing: (i) contains the entire agreement and understanding of the Parties with respect to the subject matter hereof and is the complete and exclusive statement of the terms of the Parties' agreement concerning the subject matter hereof and (ii) supersedes any and all prior and contemporaneous negotiations, discussions, correspondence, communications, representations, understandings, drafts and agreements, written or oral, among the Parties or any of them with respect to the subject matter hereof (including, without limitation that certain Term Sheet by and among Sergio Esposito, Salondera and the Company, as amended or supplemented), all of which are merged into this Agreement and (iii) excludes the use of any course of dealing, usage of trade or course of performance to interpret, explain, qualify or supplement the meaning of any provision of this Agreement. No prior drafts of this Agreement and no words or phrases from any such prior drafts shall be admissible into evidence in any action or proceeding involving this Agreement.

(g)     Amendments.  This Agreement shall not be amended, modified or supplemented except by a written instrument signed by the Parties.

(h)     Severability.  Any provision hereof which is prohibited or unenforceable in any jurisdiction shall, as to such jurisdiction, be ineffective to the extent of such prohibition or unenforceability without invalidating the remaining provisions hereof, and any such prohibition or unenforceability in any jurisdiction shall not invalidate or render unenforceable such provision in any other jurisdiction. To the fullest extent permitted by applicable law, the Parties hereby waive any provision of law which may render any provision hereof prohibited or unenforceable in any respect.

(i)     Waivers.  The terms of this Agreement may be waived only by a written instrument executed by the Party waiving compliance. The waiver by any Party of any provision of his Agreement shall not operate or be construed as a waiver of any other provision hereof, whether or not similar, and no such waiver shall operate or be construed as a continuing waiver unless so provided. No delay on the part of any Party in exercising any right, power or privilege hereunder shall operate as a waiver thereof, and no single or partial exercise of any right, power or privilege hereunder shall preclude any other or further exercise thereof or the exercise of any other right, power or privilege hereunder.

(j)     Execution in Counterparts.  This Agreement may be executed in one or more counterparts, each of which shall be considered an original instrument, but all of which shall be considered one and the same agreement, and shall become binding when one or more counterparts have been mutually executed and delivered by the Parties. Delivery of an executed counterpart of a signature page to this Agreement shall be as effective as delivery of a manually executed counterpart of this Agreement. A facsimile or other electronic transmission of an executed counterpart of a signature page shall be deemed an original.

(k)     Enforcement of Agreement.  In the event of an action at law or in equity between the Parties to enforce any of the provisions hereof, the unsuccessful Party to such litigation

or proceeding shall pay to the successful Party all costs and expenses, including actual and reasonable attorneys' fees, incurred therein by such successful Party on trial and appeal as adjudged by the court, and if such successful Party or Parties shall recover judgment in any such action or proceeding, such costs, expenses and attorneys' fees may be included as part of such judgment.

(l)     Further Assurances.  From time to time following the Closing, Salondera shall execute and deliver, or cause to be executed and delivered (and shall cause the Guarantors to execute and deliver), to The Company such other instruments of conveyance and transfer as the Company may reasonably request.

(m)     Governing Law.  THIS AGREEMENT SHALL BE GOVERNED BY, AND CONSTRUED AND ENFORCED IN ACCORDANCE WITH, THE LAWS OF THE STATE OF NEW YORK OTHER THAN CONFLICT OF LAWS PRINCIPLES THEREOF DIRECTING THE APPLICATION OF ANY LAW OTHER THAN THAT OF NEW YORK.  COURTS WITHIN THE STATE OF NEW YORK (LOCATED WITHIN NEW YORK COUNTY) WILL HAVE JURISDICTION OVER ALL DISPUTES BETWEEN THE PARTIES HERETO ARISING OUT OF OR RELATING TO THIS AGREEMENT AND THE AGREEMENTS, INSTRUMENTS AND DOCUMENTS CONTEMPLATED HEREBY.  THE PARTIES HEREBY CONSENT TO AND AGREE TO SUBMIT TO THE JURISDICTION OF SUCH COURTS.  EACH OF THE PARTIES HERETO WAIVES, AND AGREES NOT TO ASSERT IN ANY SUCH DISPUTE, TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, ANY CLAIM THAT (I) SUCH PARTY IS NOT PERSONALLY SUBJECT TO THE JURISDICTION OF SUCH COURTS, (II) SUCH PARTY AND SUCH PARTY'S PROPERTY IS IMMUNE FROM ANY LEGAL PROCESS ISSUED BY SUCH COURTS OR (III) ANY LITIGATION COMMENCED IN SUCH COURTS IS BROUGHT IN AN INCONVENIENT FORUM.

(n)     Waiver of Jury Trial.  EACH PARTY HERETO HEREBY IRREVOCABLY WAIVES ALL RIGHT TO TRIAL BY JURY IN ANY PROCEEDING (WHETHER BASED IN CONTRACT, TORT OR OTHERWISE) ARISING OUT OF OR RELATING TO THIS AGREEMENT OR ANY TRANSACTION OR AGREEMENT CONTEMPLATED HEREBY OR THE ACTIONS OF ANY PARTY HERETO IN THE NEGOTIATION, ADMINISTRATION, PERFORMANCE OR ENFORCEMENT HEREOF.

(o)     Mutual Release.  The Parties hereby mutually release, acquit and forever discharge each other (and their respective owners, guarantors, advisors, directors, officers, members, managers, employees, agents, attorneys, representatives, subsidiaries, heirs, affiliates, successors and assigns) of, from and against any and all past, present and future claims, actions, causes of action, debts, demands, obligations, liabilities, damages, costs, expenses, attorneys' fees, indemnities and compensation of any nature whatsoever, whether known or unknown, unsuspected or unanticipated, whether accrued or not, and whether based on contract, tort, indemnity, statute or any other legal or equitable theory of recovery relating to, concerning or arising out of, or which might in the future arise out of (i) the formation, ownership, management, business and/or affairs of the Company; and (ii) the Salondera Interest and the redemption thereof, provided, that such mutual releases shall not extend to any rights or obligations of the Parties under this Agreement.

*[Remainder of Page Intentionally Left Blank]*

IN WITNESS WHEREOF, the parties have caused this Redemption Agreement to be executed effective the date first set forth above.

THE COMPANY:

IWM HOLDINGS LLC, a
Delaware limited liability company


By: _____
Name: _Sergio Esposito_____
Title: _Manager_____



SALONDERA:

SALONDERA, LLC, a
Delaware limited liability company


By: _____
Name:_____
Title: _____

IN WITNESS WHEREOF, the parties have caused this Redemption Agreement to be executed effective the date first set forth above.

THE COMPANY:

IWM HOLDINGS LLC, a
Delaware limited liability company

By: _____
Name: _____
Title: _____

SALONDERA:

SALONDERA, LLC, a
Delaware limited liability company

By: _____
Name: _Fabier G. Flora_____
Title: _Manager / Member_____

53547147.3                              18

APPENDIX A

DEFINITIONS

"**Affiliate**" means, with respect to any Person, any other Person which, at the time of determination, directly or indirectly through one or more intermediaries Controls, is Controlled by or is under Common Control with such Person.

"**Agreed Rate**" means an interest rate that shall be the lesser of (i) the maximum allowed under New York law, and (ii) 16%.

"**Approval**" means any approval, authorization, consent, action, qualification or registration, or any waiver of the foregoing, required to be obtained from, or any notice, statement or other communication required to be filed with or delivered to, any Governmental Body or any other Person.

"**Assignment of Interest**" means that certain Assignment of LLC Interest in the form attached hereto at Exhibit B.

"**Business Day**" means any day other than a Saturday, Sunday or a day that is a legal holiday under the laws of the State of New York or on which banking institutions located in such State are authorized or required by law to remain closed.

"**Control**" means, as to any Person, the power to direct or cause the direction of the management and policies of such Person, whether through the ownership of voting securities, by contract or otherwise. The terms "Controlled by," "under Common Control with" and "Controlling" shall have correlative meanings.

"**Escrow Agent**" means that certain Person mutually selected by the Company and Salondera to serve as the escrow agent and administer the Escrow Funds pursuant to the Escrow Agreement.

"**Governmental Body**" means any United States federal, state or local, or any supra-national or non-U.S., government, political subdivision, governmental, regulatory or administrative authority, instrumentality, agency body or commission, self-regulatory organization, court, tribunal or judicial or arbitral body, including the SLA.

"**Guarantor**" or "**Guarantors**" means, individually and collectively, Daniel Holtz, Gustavo Hernandez and Jorge Mora.

"**Law**" means any laws, orders, judgments, rules, codes, statutes, regulations, requirements, variances, decrees, writs, injunctions, awards, rulings or ordinances of any Governmental Body.

"**Lease Agreement**" means that certain lease agreement between the Company and Rashid Realty Corp dated September 1, 2011.

53547147.3

"**Liquor License**" means the liquor store license issued in the Company's name by the SLA.

"**LLC Agreement**" means the Company's Limited Liability Company Agreement dated as of December 1, 2008, as amended.

"**Losses**" means any and all damages, fines, fees, penalties, deficiencies, diminution in value of investment, losses and expenses, including interest, reasonable expenses of investigation, court filing fees, court costs, arbitration fees or costs, witness fees, reasonable fees, expenses and disbursements of attorneys, accountants, investigators, expert witnesses, consultants and other professionals and experts or other expenses of litigation or other proceedings or of any claim, default or assessment (such fees and expenses to include all fees and expenses, including fees and expenses of attorneys, incurred in connection with (i) the investigation or defense of any Claim or (ii) asserting or disputing any rights under this Agreement against any Party or otherwise).

"**Organizational Documents**" means for a limited liability company, the operating agreement, any certificate or articles of organization or formation certified as of a recent date by the applicable Secretary of State, and any other instrument or agreement relating to the rights between the members, pertaining to the manager, or pursuant to which such limited liability company is formed.

"**Person**" means any individual, corporation, partnership, joint venture, limited liability company, association, joint-stock company, trust, unincorporated organization or Governmental Body or any other entity or association.

 "**SLA**" means the New York State Liquor Authority.

"**SLA Application**" means an application to the SLA seeking consent to the redemption of the Salondera Interest and the other transactions contemplated by this Agreement, such that the Liquor License will remain in effect subsequent to the Closing without any material change.

"**SVB**" means the Silicon Valley Bank.

"**SVB Loan**" means the indebtedness represented by that certain Loan and Security Agreement by and between the Company and SVB dated November 28, 2008, as amended.

EXHIBIT A

ESCROW AGREEMENT

53547147.3

EXHIBIT B

ASSIGNMENT OF INTEREST

53547147.3

### ASSIGNMENT AND ASSUMPTION OF LLC INTEREST

FOR VALUE RECEIVED, Salondera, LLC, a Delaware limited liability company ("Salondera"), does hereby sells, assigns and transfers unto IWM Holdings LLC, a Delaware limited liability company (the "Company") a 57.5% membership interest (the "Salondera Interest") in the Company, and the Company hereby receives and redeems the Salondera Interest.

This Assignment of LLC Interest is executed and delivered in connection with consummation of the transactions contemplated by that certain Redemption Agreement dated October 6, 2016, by and between Salondera and the Company (the "Redemption Agreement").

The undersigned acknowledge and agree that the membership interests of the Company are uncertificated as of immediately prior to the Closing (as defined in the Redemption Agreement), and that this Assignment of LLC Interest shall serve as conclusive proof that the Salondera Interest has been transferred to and redeemed by the Company in its entirety.

IN WITNESS WHEREOF, Salondera has caused this Assignment of LLC Interest to be executed and delivered as of _____, 2016.

Salondera:

SALONDERA, LLC, a
Delaware limited liability company

By:_____
Name:_____
Title: _____

*Acknowledged and Accepted:*

Company:

IWM HOLDINGS LLC, a
Delaware limited liability company

By_____
Name:_____
Title: _____

53547147.4



ESCROW AGREEMENT

This escrow agreement ("Agreement"), dated October 6, 2016 between Salondera, LLC, a Delaware limited liability Company ("Seller"), IWM Holdings LLC, a Delaware limited liability company, with offices at 108 East 16th Street, New York, NY 10003 ("Purchaser"), and Danow, McMullan & Panoff, P.C., a professional corporation with offices at 275 Madison Ave. Suite 1711, New York, NY 10016 ("Escrow Agent").

Recitals

Purchaser and Seller executed a certain redemption agreement of even date herewith for the purchase and sale of Seller's interest in a Limited Liability Company located in New York County, New York, and commonly known as Italian Wine Merchants (the "Redemption Agreement").

Pursuant to the Redemption Agreement, Purchaser has deposited the sum of three hundred thousand dollars ($300,000.00) (the "Escrow Funds") with the Escrow Agent to be held and applied by Escrow Agent in accordance with the Redemption Agreement and this Agreement.

In consideration of the agreements set forth in the Redemption Agreement and the mutual covenants set forth in this Agreement, the parties, intending to be legally bound, agree as follows:

1. Seller and Purchaser direct Escrow Agent to hold the Escrow Funds according to the terms of this Agreement.

2. Escrow Agent shall hold the Escrow Funds in escrow in a New York depository, and shall administer, and disburse the Escrow Funds in accordance with the terms of this section. The Escrow Agent shall deposit the Escrow Funds in an interest-bearing account with a federal savings and loan association, national banking association, or other federally insured banking institution with which Escrow Agent has established a banking relationship. All interest which accrues on the Escrow Funds shall be held for the benefit of the party entitled to receive the Escrow Funds. The Seller shall provide Escrow Agent with that party's Federal Taxpayer Identification Number or Social Security Number for the reporting of such interest.

3. The Escrow Agent shall be entitled to compensation for services rendered as stated in the fee schedule attached to this Agreement as Annex A, which compensation shall be paid by the Purchaser. The fee agreed upon for the services rendered under this Agreement is intended as full compensation for the Escrow Agent's services as contemplated by this Agreement; provided, however, that in the event that the conditions for the disbursement of funds under this Agreement are not fulfilled, or the Escrow Agent renders any material service not contemplated in this Agreement or there is any assignment of interest in the subject matter of this Agreement, or any material modification of this Agreement, then the Escrow Agent shall be reasonably compensated for such extraordinary services and reimbursed for all costs and expenses related to the same.

4. In the event that the purchase and sale shall be consummated pursuant to the terms of said Redemption Agreement, Escrow Agent shall, at such closing, deliver to Seller the Escrow Funds, Purchaser shall be given credit toward the purchase price for the payment of the Escrow Funds, and, if applicable, Escrow Agent shall deliver all income earned on the Escrow Funds to Seller.

If for any reason the purchase and sale shall not be consummated, and either the Seller or Purchaser gives written notice to the Escrow Agent of certain facts or conditions which entitle that party to payment of the Escrow Funds, the Escrow Agent shall give prompt notice to the other party of such demand. If Escrow

53547147.3

Agent fails to receive written notice of objection to the proposed payment of Escrow Funds from such other party within five (5) business days after Escrow Agent gives such notice, Escrow Agent is authorized to disburse the Escrow Funds payment to the party giving the notice to the Escrow Agent.

In the event the Escrow Agent does receive such written notice of objection from the other party, then the Escrow Agent may continue to hold the funds as set forth herein or may tender the Escrow Funds into the custody of any court of competent jurisdiction in New York County, New York, together with any legal pleadings it deems appropriate, and then obtain a discharge from all liability under this Agreement. Seller and Purchaser consent to the jurisdiction and venue of the court indicated above in all matters relating to the Escrow Funds or this Agreement. The Escrow agent's fee shall be increased to include a fee for the time spent in preparing any court documents. The Escrow agent shall be reimbursed for all filing fees.

5. Purchaser and Seller agree to indemnify and hold Escrow Agent harmless against any and all losses, claims, damages, liabilities, and expenses, including, without limitation, costs of investigation and legal counsel fees incurred in connection with the performance of Escrow Agent's duties under this Agreement, including, without limitation any litigation arising from this Agreement or involving the subject matter of this Agreement.

Purchaser and Seller further agree that Escrow Agent shall not be liable for any loss or damage caused by the failure, suspension, bankruptcy, or dissolution of the financial institution in which the Escrow Funds was invested or deposited. And, in no event, shall Escrow Agent be liable for any loss or damage which arises after the Escrow Funds has been disbursed in accordance with the terms of this Agreement.

6. Escrow Agent acknowledges the receipt of the Escrow Funds, and Escrow Agent agrees to hold and deliver the Escrow Funds in accordance with the terms and conditions of this Agreement. Escrow Agent will be liable only to hold the Escrow Funds and to deliver the same to the parties named in this Agreement in accordance with the provisions of this Agreement or to the Court, it being expressly understood that by acceptance of this Agreement, the parties agree that, in exercising the investment powers and depository powers or duties under this Agreement, the Escrow Agent shall not be liable or responsible to anyone for any damages, losses, or expenses caused by actions taken by any party other than the Escrow Agent, and shall be liable only for actions taken in gross negligence or the willful disregard of this Agreement. Actions taken or forborne in good faith by the Escrow Agent shall not subject the Escrow Agent to liability.

In the event of any disagreement among any of the parties to this Agreement, or among them, or any of them and any other person, resulting in adverse claims and demands being made in connection with or for any property involved in or affected by this Agreement, Escrow Agent will be entitled to refuse to comply with any claims or demands as long as the disagreement continues, and in so refusing, will make no delivery or other disposition of any property then held by it under this Agreement, and in so doing, Escrow Agent will not become liable in any way for refusal, and Escrow Agent will be entitled to continue to refrain from acting until (a) the right of adverse claimants has been finally settled by binding arbitration or finally adjudicated in a court assuming and having jurisdiction of the property involved in this Agreement or affected by this Agreement, or (b) all differences have been adjusted by agreement and Escrow Agent has been notified in writing of an agreement signed by the other parties to this Agreement. Further, the Escrow Agent will have the right, at any time after a dispute between Seller and Purchaser has arisen, to pay the Escrow Funds into any court of competent jurisdiction for payment to the appropriate party, at which point Escrow Agent's obligation under this Agreement will terminate.

In the event the Escrow Funds shall be attached, garnished or levied upon by any court order, or the delivery of such property shall be stayed or enjoined by an order of a court, or any order, judgment or decree shall be made or entered by any court order affecting the money deposited under this Agreement,

53547147.3

the Escrow Agent is authorized, in its sole discretion, to obey and comply with all writs, orders or decrees so entered or issued, which it is advised by legal counsel of its own choosing is binding upon it, whether with or without jurisdiction, and if the Escrow Agent obeys or complies with any such writ, order or decree it shall not be liable to any of the parties to this Agreement or to any other person, entity, firm or corporation, by reason of such compliance notwithstanding such writ, order or decree be subsequently reversed, modified, annulled, set aside or vacated.

7. The Purchaser and the Seller shall provide to the Escrow Agent all instruments and documents within their respective powers that are necessary for the Escrow Agent to perform its duties and responsibilities under this Agreement.  In no event, shall Escrow Agent be liable for the sufficiency or correctness of the form, manner of execution or validity of any instrument associated with the escrow, nor as to the identity, authority or rights of any person executing the same, nor for failure to comply with provisions of any agreement, contract, or other instrument filed herein.

8. Wherever any notice is required or permitted under this Agreement, the notice will be in writing and will be deemed effective and given and received on personal delivery or on receipt by the United States mail, registered or certified mail, return receipt requested, postage prepaid, or upon delivery by a recognized overnight carrier such as Federal Express to the addresses set out below or at other addresses as are specified by written notice delivered in accordance with this Agreement:

Seller:

Salondera
Javier Mora
4801 San Amaro Dr.
Coral Gables, FL 33146
Tel:  305-778-1935

Purchaser:

 Mr. Sergio Esposito
108 East 16th Street
New York, NY 10003
E-mail: sergioespo@aol.com
With a copy to Escrow Agent:

And to

Michael C. Gillette
c/o Polsinelli
One East Washington St., Suite 1200
Phoenix, AZ 85004-2568


To Escrow Agent:

Danow, McMullan & Panoff, P.C.
Attention: Keven Danow,
275 Madison Ave. Suite 1711
New York, NY 10016

53547147.3

With copies to all parties.

9. This Agreement will bind and inure to the benefit of the parties and their respective heirs, executors, administrators, personal representatives, successors and assigns.

10.    THE PARTIES ACKNOWLEDGE THAT THE ESCROW AGENT IS ACTING AS AN ACCOMMODATION TO BOTH THE SELLER AND THE PURCHASER. FURTHER THE PARTIES ACKNOWLEDGE THAT THE ESCROW AGENT REPRESENTS THE PURCHASER AND SERGIO ESPOSITO IN CONNECTION WITH THE PURCHASE AND REDEMPTION AGREEMENT AND HAS AND CONTINUES TO REPRESENT ITALIAN WINE MERCHANTS IN CONNECTION WITH CERTAIN MATTERS. THE PARTIES HAVE CONSULTED WITH THEIR SEPARATE ATTORNEYS AND HAVE DISCUSSED THE CONFLICTS OF INTEREST WHICH MAY ARISE AS A RESULT OF THE ESCROW AGENT'S REPRESENTATION OF SERGIO ESPOSITO, THE PURCHASER AND/OR THE COMPANY AND HAVE AGREED TO WAIVE ANY CONFLICT OF INTEREST. THEY FURTHER AGREE THAT IN THE EVENT OF A DISPUTE ARISING FROM THE AGREEMENT, THE ESCROW AGENT MAY CONTINUE TO REPRESENT SERGIO ESPOSITO AND PURCHASER AND THAT SUCH REPRESENTATION MAY CONTINUE THROUGHOUT THE DISPUTE WITHOUT GIVING RISE TO A CLAIM AGAINST THE ESCROW AGENT, UNLESS THE ESCROW AGENT IS GUILTY OF GROSS NEGLIGENCE OR THE WILLFUL DISREGARD OF THIS AGREEMENT.

[Intentionally Blank]

53547147.3

In witness, the parties have executed this Escrow Agreement under seal on the date and year first written above.

IWM Holdings, LLC

By: _____
Name: _Sergio Esposito_
Title: _Manager_

Salondera, LLC

By: _____
Name: _____
Title: _____

Danow, McMullan & Panoff, P.C.

By: _____
Name: _____
Title: _____

In witness, the parties have executed this Escrow Agreement under seal on the date and year first written above.

IWM Holdings, LLC

By: _____
Name: _____
Title: _____

Salondera, LLC

By: _____
Name: _____
Title: _____

Danow, McMullan & Panoff, P.C.

By: _____
Name: _____
Title: _____

53547147.3

26

In witness, the parties have executed this Escrow Agreement under seal on the date and year first written above.

IWM Holdings, LLC

By: _____
Name: _____
Title: _____


Salondera, LLC

By: _____
Name: _____
Title: _____



Danow, McMullan & Panoff, P.C.

By: _____*(signature)*_____
Name: _____*Keven Dcson*_____
Title: _____*Member of Firm*_____

53547147.3

ANNEX A

ESCROW AGENT FEES

MEMBERS OF THE FIRM SHALL RECEIVE $550 PER HOUR.

ASSOCIATES, OF COUNSEL AND PARALEGALS SHALL BE BILLED AT THEIR USUAL RATES.

53547147.3