**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

Case No. 18-20685-Cr-WILLIAMS/TORRES

UNITED STATES OF AMERICA,

        Plaintiff,

v.

GUSTAVO ADOLFO
HERNANDEZ FRIERI,

        Defendant,

v.

OLYMPIA DE CASTRO, and
597 HIBISCUS LANE REVOCABLE TRUST,

        Third-Party Petitioners.
_____/

**REPORT AND RECOMMENDATION**
**ON THE GOVERNMENT'S MOTION TO DISMISS**

This matter is before the Court on the United States of America's (the "Government") motion to dismiss Olympia De Castro's ("Ms. De Castro") and 597 Hibiscus Lane Revocable Trust's (the "Florida Trust") (collectively, the "Petitioners") joint petition.   [D.E. 264].   The Petitioners responded to the Government's motion on January 18, 2021 [D.E. 285] to which the Government replied on January 19, 2021.  [D.E. 286].  The parties also attended an evidentiary hearing before the undersigned on February 8 and February 18, 2021, where Ms. De Castro, Daniel Holtz, and Allison Domeneghetti testified on matters related to the pending motion.  Therefore, the Government's motion is now ripe for disposition.

1

After carful consideration of the motion, response, reply, relevant authorities, and for the reasons discussed below, the Government's motion to dismiss should be **GRANTED**. [1]

## I.    BACKGROUND

On August 16, 2018, a federal grand jury returned an indictment that charged Gustavo Adolfo Hernandez Frieri ("Defendant" or "Mr. Hernandez Frieri") and others with a conspiracy to commit money laundering in violation of 18 U.S.C. §§ 1956(h) and 1956(a)(1)(B), among other counts.   [D.E. 19].   The indictment included a request for the forfeiture of real property located at 597 Hibiscus Lane, Miami, Florida 33137 ("the Miami House").   On August 17, 2018, the Government recorded a notice of lis pendens on the Miami House.   [D.E. 36].   The Government renewed that notice on September 19, 2019 and again on September 18, 2020.   [D.E. 145, 238-12].   When the Court authorized the Defendant's release pending trial on bond, the Court ordered Defendant to not encumber any properties or investments, including the Miami House.   [D.E. 101].

On November 26, 2019, the Court accepted Defendant's guilty plea as to count one of the indictment [D.E. 162] and Defendant agreed "to liquidate assets, or complete any other tasks which will result in the immediate payment of the forfeiture money judgment in full, or full payment in the shortest amount of time, as requested by the [United States Attorney's] Office."   [D.E. 163 at ¶ 14]. Defendant also agreed that he would "not sell, hide, waste, encumber, destroy, or

---

[1]      On December 23, 2020, the Honorable Kathleen Williams referred all forfeiture-related motions to the undersigned Magistrate Judge for disposition. [D.E. 268].

otherwise devalue any asset without prior approval of this Office, until his forfeiture money judgment is paid in full." *Id.* at ¶ 15.

On February 4, 2020, the Court entered a preliminary forfeiture order against Defendant and imposed a monetary judgment in the amount of $12,330,000. [D.E. 175].  The Court entered a second preliminary forfeiture order on September 28, 2020 that forfeited, subject to third-party interests, the Miami House and the Defendant's interest as a settlor or grantor of the Florida Trust.  [D.E. 239 at 5-6].  The order credited Defendant's forfeiture money judgment of $12,330,000 with $818,990.01 that was finalized in the criminal case against Abraham Edgardo Ortega.[2]  *Id.*  On November 18, 2020, the Third-Party Petitioners filed a joint petition as to the Miami House to which the Government filed a motion to dismiss that is now ripe for disposition.  [D.E. 261-62].

## II.     APPLICABLE PRINCIPLES AND LAW

Title 21, United States Code, Section 853 is the federal statute on criminal forfeitures.  Under § 853, any person convicted of a drug-law violation punishable by more than one-year imprisonment shall forfeit to the United States, irrespective of any provision of state law, "any property constituting, or derived from, any proceeds the person obtained, directly or indirectly, as a result of [the] violation." *Id.* § 853(a)(1).  Section 853 also protects third parties who may have an interest in property subject to forfeiture by giving them a limited right to participate temporarily in a criminal case through a hearing called an ancillary

---

[2]     The forfeiture money judgment was imposed as a condition of Defendant's guilty plea that the Court entered on November 26, 2019.  [D.E. 163].

proceeding. *See United States v. Cone*, 627 F.3d 1356, 1358 (11th Cir. 2010). The purpose of an ancillary proceeding is to exempt the interest of qualifying third parties from criminal forfeiture. *See United States v. Ramunno*, 599 F.3d 1269, 1273 (11th Cir. 2010). Any third party asserting a legal interest in forfeited property "may, within thirty days of the final publication of notice or h[er] receipt of notice . . . whichever is earlier, petition the court for a hearing to adjudicate the validity of h[er] alleged interest in the property." 21 U.S.C. § 853(n)(2). This permits an orderly procedure by which third parties seeking to recover interests in forfeited property may obtain judicial resolution of their claims.[3]

Federal Rule of Criminal Procedure 32.2 includes a similar provision mandating that a district court conduct an ancillary proceeding when a third party files a petition asserting an interest in property forfeited as the proceeds of criminal activity. Fed. R. Crim. P. 32.2(c)(1). The specifications that a third-party claimant have a legal interest under § 853 and an interest under Rule 32.2 impose a statutory-standing requirement on claimants. Therefore, under both § 853 and

---

[3]    Although unmentioned in the parties' briefs, any Florida homestead protections would not apply because "[i]n describing the substitute property that may be forfeited, Congress spoke broadly in commanding that 'the court shall order the forfeiture of any other property of the defendant.'" *United States v. Fleet*, 498 F.3d 1225, 1229 (11th Cir. 2007) (quoting 21 U.S.C. § 853(p)(2)). The Eleventh Circuit has found that the statutory language "does not convey discretion," and that the word "any" is "not susceptible to fudging either." *Id.* at 1229. Hence, there is well-established precedent in our circuit that there is no stated exception for homestead property or entireties property from the substitute property provision of the federal criminal forfeiture statute, 21 U.S.C. § 853(p). *Id.* at 1232 ("[W]e hold that where the forfeiture of substitute property is concerned, 21 U.S.C. § 853(p) preempts Florida's homestead exemption and tenancy by the entireties laws."); *see also United States v. One Parcel of Real Estate at 3262 S.W. 141 Ave., Miami, Dade County, Fla.*, 33 F.3d 1299, 1301 n.6 (11th Cir. 1994) ("We have held that federal forfeiture law preempts the Florida homestead exemption from forfeiture.").

4

Rule 32.2, "a party seeking to challenge the government's forfeiture of money or property used in violation of federal law must first demonstrate [a legal] interest in the seized item sufficient to satisfy the court of its standing to contest the forfeiture." *United States v. Three Hundred Sixty Four Thousand Nine Hundred Sixty Dollars ($364,960.00) in U.S. Currency,* 661 F.2d 319, 326 (5th Cir. 1981).

Rule 32.2 also provides that in "an ancillary proceeding, the court may, on motion, dismiss the petition for lack of standing, failure to state a claim, or for any other lawful reason." Fed. R. Crim. Proc. 32.2(c)(1)(A).  A motion to dismiss a third party's claim is treated like a 12(b) motion in a civil case, meaning all facts in a petition are assumed to be true.  *See United States v. Grossman*, 501 F.3d 846, 848 (7th Cir. 2007) (concluding under Rule 32.2(c)(1)(A) that the Government may move to dismiss a third party claim on any ground to which a 12(b) motion would apply in a civil case); *Pacheco v. Serendensky*, 393 F.3d 348, 352 (2d Cir. 2004) (finding a motion to dismiss a third party claim in an ancillary proceeding is treated like a 12(b) motion in a civil case).  If, taking all facts alleged in the petition as true, it fails to set forth ground upon which the claim would prevail, the claim must be dismissed.  *See United States v. Salti*, 579 F.3d 656, 669–70 (6th Cir. 2009) (finding a third party claim may be dismissed on the pleadings if, assuming all facts alleged in the claim to be true, claimant has not asserted a legal interest in the forfeited property).  Ultimately, the burden is on the petitioner to show, by a preponderance of the evidence, that he or she meets the substantive requirements to recover the forfeited property.

While there is no need for a petition to prove its allegations at this stage of the proceedings, it must do more than simply assert it has an interest in the property. *See, e.g., United States v. Pegg*, 1998 WL 34309460, at *3 (M.D. Ga. Nov. 25, 1998) (petition which merely recited language from § 853(n) and alleged general conclusions, without providing allegations of fact as required by § 853(n)(3), insufficient and petition dismissed). The showing may not be a heavy burden, but it is a burden nonetheless. *See United States v. $244,320.00 in U.S. Currency*, 295 F. Supp. 2d 1050, 1062 (S.D. Iowa 2003); *see also United States v. $290, 000.00 in United States Currency,* 2006 WL 2475331, *4 (D. Kan. Aug. 25, 2006) ("The courts have consistently held that *unexplained* naked possession does not constitute a sufficient possessory interest to confer standing on a claimant to contest a forfeiture.") (emphasis added).

To overcome a motion to dismiss, a third party petitioner must establish that he is entitled to relief and that his "legal right, title, or interest in the forfeited property meets the circumstances set forth in either Section 853(n)(6)(A) or Section 853(n)(6)(B), and, he must allege facts sufficient to state a claim under one of the two provisions." *Preston*, 123 F. Supp. 3d at 115; *see also United States v. Hailey*, 924 F. Supp. 2d 648, 658 (D. Md. 2013) ("The availability of a motion to dismiss indicates that to state a claim, one of the § 853(n)(6) bases must be pled."); *see also United States v. Reckmeyer*, 836 F.2d 200, 203 (4th Cir. 1987) ("Subsection (n) provides the only means for third parties to establish their interest in forfeited property."). That means a petitioner must establish by a preponderance of the

evidence superior ownership at the time of the offense under § 853(n)(6)(A), or that

he subsequently acquired the property as a bona fide purchaser for value under §

853(n)(6)(B):

> (A) the petitioner has a legal right, title, or interest in the property,
> and such right, title, or interest renders the order of forfeiture invalid
> in whole or in part because the right, title, or interest was vested in the
> petitioner rather than the defendant or was superior to any right, title,
> or interest of the defendant at the time of the commission of the acts
> which gave rise to the forfeiture of the property under this section; *or*
>
> (B) the petitioner is a bona fide purchaser for value of the right, title,
> or interest in the property and was at the time of purchase reasonably
> without cause to believe that the property was subject to forfeiture
> under this section;
>
> [T]he court shall amend the order of forfeiture in accordance with its
> determination.

21 U.S.C. § 853(n)(6) (emphasis added); *see also Reckmeyer*, 836 F.2d at 204

("[S]ubsection (n)(6) protects only two classes of petitioners, those whose legal

interest in the property were superior to the defendant[] at the time the interest of

the United States vested through the commission of an act giving rise to the

forfeiture and 'bona fide purchasers for value' without knowledge of the

forfeitability of the defendant's assets."); *see also United States v. Jimerson*, 5 F.3d

1453, 1455 (11th Cir. 1993) (same).

### III.   ANALYSIS

Petitioners allege that they have a superior legal interest in the Miami House

pursuant to 21 U.S.C. § 853(n)(6)(A) because the "597 Hibiscus Lane Revocable

Trust purchased the property [on or about December 18, 2013]," and  "the Trustee

Olympia De Castro holds legal to title to the Trust asset, 597 Hibiscus Lane."  [D.E.

261-62 at 8-9 (citations omitted)].  While the Petitioners acknowledge that Ms. De Castro and Defendant were both co-trustees back in 2013, they say that Mr. Hernandez Frieri resigned as co-trustee on October 1, 2019 [D.E. 262-5] and that "De Castro's interest in the entire property vested well before the Government's could have." *Id.* at 9.  Petitioners arrive at that conclusion because "the Government attempts to forfeit the [Miami House] as a substitute asset," and "the Court must look to the [D]efendant's interest in the property at the time of forfeiture[.]" *Id.* at 8.  That is, unlike other forfeited property, Petitioners claim that substitute property under 21 U.S.C. § 853(p) is not subject to the relation back doctrine.[4]  So, Petitioners reason that the Miami House vested in Ms. De Castro *prior* to the time of forfeiture thereby negating the Government's viable claim to the property.

The Government takes issue with the joint petition because it mischaracterizes several provisions of the Florida Trust Code and fails to show how Ms. De Castro, as the sole trustee of the Florida Trust, has a superior interest in the Miami House.  The Government claims, contrary to Petitioners' proposition that a trustee holds legal title to trust property, a trustee only holds nominal title for the benefit of others, which makes a material difference in a forfeiture proceeding.  The Government also argues that the petition selectively references the Florida Trust

---

[4]     Under the relation-back doctrine, title to the forfeited property vests in the United States at the time of a defendant's criminal act.  However, "a third-party who had a legal interest in the forfeited property before the underlying crime was committed can prevail in the ancillary proceeding on the ground that he had an interest in the property before the government's interest vested." *United States v. Timley*, 507 F.3d 1125, 1130 (8th Cir. 2007) (citing *United States v. Nava,* 404 F.3d 1119, 1129 (9th Cir. 2005)).

Code in some areas yet omits other material sections that provide "[w]hen a trust is revocable, the duties of the trustee are owed exclusively to the settlor." Fla. Stat. § 736.0603(1). And while Petitioners assert that Ms. De Castro is the individual who has custody and control of the Miami House, the Government says that this is immaterial because, if anything, that is consistent with the duties of a trustee.

Alternatively, the Government argues that the joint petition should fail because – although admittedly Defendant resigned as a co-settlor of the Florida Trust pursuant to a marital settlement agreement on January 24, 2020 – a settlor's role is only terminated, under Florida law, by a revocation or withdrawal of the trust property. [D.E. 262-6 at 10 (marital agreement stating that "[t]he Husband commits to resign as co-settlor" of the Florida Trust.")]. The Government also references the terms of the Florida Trust agreement, where it states that Ms. De Castro and Mr. Hernandez Frieri are the "grantor," or co-settlors and that trust property is not community property. [D.E. 239-8]. The Government reasons that, consistent with this language, any revocation or amendment would have triggered the return of each co-settlor's respective contributions:

> Revocation or amendment of revocable trust-- .
> (2) If a revocable trust is created or funded by more than one settlor:
> . . .
> (b) To the extent the trust consists of property other than community property, each settlor may revoke or amend the trust with regard to the portion of the trust attributable to that settlor's contribution.

*See* Fla. Stat. § 736.0602(2)(b). But, the Government says that there is no allegation or evidence that either took place, making it unclear how Defendant could have "resigned" as co-settlor of the Miami House.

Assuming that Defendant could have resigned and left Ms. De Castro as the sole settlor, the Government claims that the joint petition should still be dismissed because any transfer of interest would have been fraudulent and thereby violated Defendant's bond conditions. The Government says that, during Defendant's bond proceedings, he explicitly agreed not to encumber the Miami House. And on May 21, 2019, the Court issued a bond, stating that there be "no attempt to encumber properties or investments." [D.E. 103]. The Government views those proceedings as leaving no doubt that Defendant pledged his interest in the Miami House as part of his bond and that the United States intended to forfeit it as substitute property.

Petitioners push back with the claim that Defendant transferred his entire interest to Ms. De Castro after May 2019, either through his resignation as a co-trustee on October 1, 2019, or through his resignation as co-settlor in his marital settlement agreement on January 24, 2020. The Government challenges those conclusions in part because there was no consideration for either of those resignations and, further, that the alleged transfer would have left Defendant insolvent given his assertion that he had no other significant assets to post bond. The Government therefore concludes that transfer of Defendant's interest in the Miami House would have been fraudulent, leaving the Government with a superior interest and entitled to an "[a]voidance of the transfer or obligation to the extent necessary to satisfy [its] claim." Fla. Stat. § 726.108. Before proceeding to the merits, we consider the principles of revocable trusts under Florida law to inform the analysis that follows.

### A.   *Revocable Trusts Generally*

The Florida Supreme Court has recognized that "[a] revocable trust is a unique type of transfer . . .   [and] [s]ince [the settlor] is the sole beneficiary of the trust during [the settlor's] lifetime, [the settlor] has the absolute right to call the trust to an end and distribute the trust property in any way [the settlor] wishes."  *Fla. Nat'l Bank of Palm Beach Cnty. v. Genova,* 460 So. 2d 895, 897 (Fla. 1985); *Siegel v. Novak,* 920 So. 2d 89, 95 (Fla. 4th DCA 2006) (holding that "[t]he central characteristic of a revocable trust is that the settlor has the right to recall or end the trust at any time, and thereby regain absolute ownership of the trust property") (citation and quotation marks omitted).   "It is this retention of control over the property which distinguishes a revocable trust from other types of conveyances."   *Bernal v. Marin*, 196 So. 3d 432, 435 (Fla. 3d DCA 2016) (citing *Genova,* 460 So. 2d at 897).   Based on the uniqueness of revocable trusts – including a settlor's retention of control over the property and the settlor's absolute right to revoke his or her trust – even the principle of undue influence cannot defeat a settlor's revocation of a revocable trust.  *See Genova*, 460 So. 2d at 898.

### B.   *Whether Ms. De Castro Has a Superior Legal Interest*

With these fundamental principles in mind, the question presented is whether Ms. De Castro's rights were superior to Defendant at the time of the commission of the acts that gave rise to the forfeiture of the Miami House.   The trust documents show that Ms. De Castro and Mr. Hernandez Frieri created the Florida Trust on December 10, 2013.   [D.E. 262-1].   The former couple then

purchased the Miami House on December 18, 2013, where the prior owner conveyed the property to Ms. De Castro and Mr. Hernandez Frieri as co-trustees.  [D.E. 262-3] (naming "Olympia De Castro and Gustavo Hernandez Frieri as co trustees of the 597 Hibiscus Lane Revocable Trust U/ A/D December 10, 2013").  That made both Ms. De Castro and Mr. Hernandez Frieri co-settlors and co-trustees of the Miami House.  *See* Fla. Stat. § 736.0103(18) ("'Settlor' means a person, including a testator, who creates or contributes property to a trust.  If more than one person creates or contributes property to a trust, each person is a settlor of the portion of the trust property attributable to that person's contribution except to the extent another person has the power to revoke or withdraw that portion.").

Petitioners argue that the Miami House should not be subject to forfeiture because – when Mr. Hernandez Frieri resigned as co-trustee on October 1, 2019 [D.E. 262-5] and as co-settlor on January 24, 2020.  [D.E. 262-6] – Ms. De Castro became the only individual with any remaining legal interest to the Florida Trust. [D.E. 262 at 4 ("As the continuing sole Trustee of the Trust, Ms. De Castro alone holds title to the Trust asset, accepts the responsibility to manage the Trust asset and carry out all Trust directions, and assumes the fiduciary duty to carry out the Trust's intentions to her minor children as Contingent Beneficiaries.")].  The issue, of course, is not whether Ms. De Castro has some interest in the Miami House but whether she had a superior interest at the time of the commission of the acts that gave rise to the forfeiture of the Miami House.

The most obvious shortfall with the joint petition is that it never asserts what

relief it seeks under Section 853(n). That only becomes clearer in reading the response to the Government's motion to dismiss, where the assertion is first made that Petitioners seek relief under 21 U.S.C. § 853(n)(6)(A). [D.E. 285 at 13 ("As the only person with a legal interest in the home, her interest is by reason superior to the Defendant's."); *id.* at 16 ("At a minimum, Ms. De Castro has a vested one-half interest in the home which is not the defendant's interest.")]. But, "[i]f a third party fails to allege in its petition all elements necessary for recovery . . . the court may dismiss the petition without providing a hearing." *United States v. Richards*, 2009 WL 10690320, at *2 (N.D. Ga. Dec. 3, 2009) (quoting *United States v. BCCI Holdings (Lux.), SA.*, 919 F. Supp. 31, 36 (D.D.C. 1996)).

In clarifying the relief sought in an opposition brief, the Petitioners are, for all practical purposes, trying to amend their joint petition in response to a motion to dismiss. But, considering that the joint petition should be treated like a 12(b) motion in a civil case, a court would not have allowed Petitioners to amend a complaint in response to a motion to dismiss. *See, e.g., Lacroix v. Lejeune Auto Wholesale, Inc.*, 2020 WL 6059765, at *4 (S.D. Fla. Oct. 14, 2020) ("Plaintiff is instead attempting to amend his complaint in response to a motion to dismiss – a tactic courts have repeatedly refused to allow.") (citing *Brahim v. Holder*, 2014 WL 2918598, at *4 (S.D. Fla. June 26, 2014) ("It is axiomatic that a plaintiff may not amend his Complaint in a response to a motion to dismiss."); *Long v. Satz,* 181 F.3d 1275, 1278–79 (11th Cir. 1999)); *see also Bruhl v. Price WaterhouseCoopers Int'l,* 2007 WL 997362, at *4 (S.D. Fla. Mar. 27, 2007) (noting that a plaintiff may not

supplant allegations made in their complaint with new allegations raised in a response to a motion to dismiss); *accord Walker v. City of Orlando,* 2007 WL 1839431, at *5 (M.D. Fla. Jun. 26, 2007) (limiting consideration to the allegations contained in the complaint, even when new allegations were raised in response to a motion to dismiss).  It is therefore unclear why Petitioners should be afforded the same relief here when it would not have otherwise been allowed in a civil action.

Putting aside that problem, the joint petition relies heavily on Ms. De Castro's position as the sole remaining trustee of the Florida Trust as the reason for her holding all legal right, title, and present interest in the Miami House.  That is, Ms. De Castro's position as the sole trustee and settlor of the Florida Trust purportedly makes her the only individual with a legal interest when the Court entered the Second Preliminary Order of Forfeiture on September 28, 2020 because, by that time, Defendant had already resigned both of his positions.  And after those resignations took effect, Ms. De Castro reasons that the Miami House fails to qualify as the "property of the defendant" and cannot be subject to forfeiture as a substitute asset.  21 U.S.C. § 853(p)(2).

### 1. *Whether Defendant "Resigned" as Co-Settlor*

Defendant's resignation as a co-settlor is a significant question because – if that never took effect – the Government may be right that the interests between him and Ms. De Castro are equal.  That means, even if Ms. De Castro serves as the sole trustee for the Miami House, her interests might not be superior to Mr. Hernandez Frieri if the latter failed to effectively resign as a co-settlor.  The reason

14

for that is because when "a trust is revocable, the duties of the trustee are owed exclusively to the settlor." Fla. Stat. § 736.0603(1); *see also In re Wells*, 259 B.R. 776, 779 (Bankr. M.D. Fla. 2001) ("Trust law provides that upon the establishment of a trust, the legal title is held by the trustee whereas the equitable title rests with the beneficiary.") (citing *In re Grieves,* 250 B.R. 405, 406 (Bankr. M.D. Fla. 2000)). And the Government posits that a settlor always retains an ownership interest, absent a revocation or an amendment, in a revocable trust. *See* Fla. Stat. § 736.0602 ("Unless the terms of a trust expressly provide that the trust is irrevocable, the settlor may revoke or amend the trust.").

So the critical issue is whether Defendant's resignation was effective to terminate him as a co-settlor and, if so, when that occurred vis-à-vis the acts that gave rise to the forfeiture of the Miami House. Petitioners say that the "Court does need to consider how a settlor's role is terminated, [or] what would happen if the revocable trust had been revoked," because that constitutes "smoke and mirrors." [D.E. 285 at 14]. But, considering whether Mr. Hernandez Frieri's resignation was *legally* effectuated is a question that *must* be answered if we are to determine whether the joint petition has presented plausible allegations of Ms. De Castro's superior legal interests because her interests are compared against the Defendant's. *See* 21 U.S.C. § 853(n)(6)(A) ("[T]he petitioner has a legal right, title, or interest in the property, and such right, title, or interest renders the order of forfeiture invalid in whole or in part because the right, title, or interest was vested *in the petitioner rather than the defendant* or was superior to any right, title, or *interest of the*

*defendant* at the time of the commission of the acts which gave rise to the forfeiture of the property under this section"). A determination of one settlor's interest cannot be determined without consideration of the other co-settlor. Indeed, it would be incongruous to find that there are plausible allegations of Ms. De Castro having superior legal interests without assessing Mr. Hernandez Frieri's interests at the time.

The joint petition states that "Olympia De Castro is presently the sole settlor (or grantor), as well as sole Trustee," and that Mr. Hernandez-Frieri resigned as co-settlor on January 24, 2020. [D.E. 262 at 10]. In looking at the underlying trust agreement, it provides that Ms. De Castro and Defendant serve as co-grantors, co-trustees, and that "[t]he property transferred into this Trust by the Grantor shall not be subject to the community property laws or forced share laws of any country's jurisdiction whatsoever." [D.E. 262-1 at 7]. The last provision is significant because, under Florida law, if more than one settlor creates a revocable trust and the trust consists of property other than community property then each settlor may (1) revoke or (2) amend the trust to recover that settlor's contribution:

> (2) If a revocable trust is created or funded by more than one settlor:
> . . .
> (b) To the extent the trust consists of property other than community property, each settlor may revoke or amend the trust with regard to the portion of the trust property attributable to that settlor's contribution.

Fla. Stat. § 736.0602(2)(b).

Here, the marital settlement agreement, dated January 24, 2020, states that Defendant "commits to resign as co-settlor." [D.E. 262-6 at 10]. If Mr. Hernandez-

Frieri revoked his interests in the Florida Trust as a co-settlor with a "resignation," then Ms. De Castro – as the only remaining trustee[5] – would have been required to "deliver the trust property as the settlor directs," and the trust would have terminated without its only asset.[6]   Fla. Stat. § 736.0602(4); [D.E. 262-1 at 6 ("This Trust shall terminate at the earliest of the following dates: (a) the date of the distribution of the entire Trust Estate; or, (b) thirty five (35) years after the death of the Grantor.")].

Yet, there is no claim, allegation or evidence that Ms. De Castro ever "delivered" anything to Mr. Hernandez-Frieri subsequent to his "resignation."   All that Mr. De Castro can point to is her ex-husband's financial disclosure statement where he excluded any ownership of the Miami House, [D.E. 238-4], the warranty deed that the couple received back on December 18, 2013 for the purchase of the home, *id*. at 238-7, the Florida Trust agreement signed on December 10, 2013, *id*. at 238-8, and the marital settlement agreement signed on January 24, 2020, *id*. at 238-11.   These documents are inconsequential because, given the statutory text in

---

[5]     Ms. De Castro is the only remaining trustee because, as stated earlier, Defendant resigned as co-trustee on October 1, 2019.   [D.E. 262-5].   Neither party takes issue with that resignation.

[6]     The complete termination of the Florida Trust assumes that the entire estate would be distributed given the evidence showing that Defendant paid for the Miami House with his own funds.   Petitioners dispute that point with an allegation that "[b]oth Ms. De Castro and Mr. Hernandez-Frieri signed the HUD-1 and contributed the funds toward the purchase, paying for the home in full."   [D.E. 262 at 2].   But, there is some support that this allegation might be inaccurate.   [D.E. 238-9 (letter addressed to Defendant confirming receipt of "a wire on *your behalf* for cash to close in the amount of $2,469,970.00") (emphasis added)].   Either way, it does not change the fact that Petitioners have failed to explain how Defendant revoked or amended the Florida Trust.

Fla. Stat. § 736.0602, Petitioners have failed to explain how a settlor can "resign"[7] as a co-settlor to a revocable trust when the only two options available is revocation or amendment – not a resignation.  *See Nelson v. Nelson*, 206 So. 3d 818, 819 (Fla. 2d 2016) (stating "that a settlor may 'revoke or amend' a trust unless 'the terms of [the] trust expressly provide that the trust is irrevocable.'") (quoting Fla. Stat. § 736.0602).

Petitioners have also failed to reference a single case – and the Court has independently found none – that has allowed a settlor to revoke or amend a revocable trust with a simple resignation.  And nothing in the trust agreement allows for that option either.  The only provision that comes close is Article 4, but that merely clarifies that the Florida Trust is revocable and that the Grantor has the power to alter, amend, revoke, or terminate any provision or interest.  Nothing references one settlor's resignation:

> This Trust is revocable and the Grantor has the power to alter, amend, revoke, or terminate any Trust provision or interest, whether under this Trust or under any statute or other rule of law.

[D.E. 238-8 at 4].  And even if the trust agreement allowed for that possibility, Petitioners have failed to explain why that should be allowed if that is not recognized as an available option under Florida law.  Therefore, given this record, we cannot conclude that Defendant revoked his interest in the Florida Trust as a co-

---

[7]   One question that neither side considered was whether the language included in the marital settlement agreement would even suffice as a "resignation."  It states that Defendant "commits to resign as co-settlor."  [D.E. 262-6 at 10].  But, it never says when that would take place or whether that commitment would actually come to fruition.  All it provides is a commitment to resign – not an actual resignation.  So, even if a resignation was allowed under Florida law, it is unclear how a commitment to resign undoes Defendant's status as a co-settlor.

settlor with a one sentence "resignation" in a marital settlement agreement.  The purported resignation is legally ineffective under Florida law.  And as we discuss further below, that matters in this case.

## 2. *Whether a Settlor with Trustee Duties has a Superior Legal Interest to a Co-Settlor without Trustee Duties*

Foreseeing that possibility, Petitioners say that, even if Defendant remains a co-settlor, that fails to change the analysis because he is not the one with any legal interest in the property.  [D.E. 285 at 14 ("[W]hether or not Hernandez-Frieri is a settlor or resigned as settlor, it is not the settlor who has a legal interest in the property.")].  That interest purportedly belongs to Ms. De Castro because she is a co-settlor who serves as the sole trustee to the Miami House.  As support, Petitioners rely on the Third District's decision in *Aronson v. Aronson*, 930 So. 2d 766, 767 (Fla. 3d DCA 2006), because "[t]his case makes clear that a settlor does not have a present ownership and legal interest in trust property."  [D.E. 285 at 9].  That conclusion draws too much from this case.

In *Aronson*, a settlor created a revocable trust, named himself the trustee and life beneficiary, and conveyed the property to himself as trustee.  The settlor subsequently conveyed the same property, in his individual capacity, to his wife. The settlor's children later filed a complaint seeking a declaratory judgment to invalidate the conveyance to the wife on the ground that the property had already been conveyed to the trust many years earlier.  The trial court ultimately held that the conveyance to the wife was valid.

The settlor's children argued on appeal that – once the settlor executed a

warranty deed transferring his interest in the property to the trust – legal title vested in the trustee and the settlor no longer held the property in his individual capacity. That is, the children claimed that the settlor no longer possessed a legal interest in the property that he could convey to his wife. The Third District agreed with the children, reversed the trial court, and held that, when the settlor executed a deed conveying the property to himself as trustee, the settlor "became the legal title holder of the trust property." *Id.* at 767 (citing *Buerki v. Lochner*, 570 So. 2d 1061, 1063 (Fla. 2d DCA 1990)). That means that "[o]nce the Settlor held the property as trustee, for the benefit of the beneficiaries of the trust, he no longer possessed the power to convey the property in his individual capacity." *Id.* In other words, when the settlor tried to convey real property in his individual capacity after he had already conveyed the same property to a trust, the appellate court found that this was untenable because the settlor "did not legally own [the property] in that capacity." *Id.* at 768.

Petitioners say that the same reasoning applies here because, even if Mr. Hernandez Frieri remains as a co-settlor of the Florida Trust, he only has a *future* contingent interest that may never materialize. [D.E. 262 at 10 ("Any right Hernandez-Frieri may have is a potential future interest in the Trust asset. Although a settlor or grantor has the power to revoke the trust, this is a future possible interest that may never materialize.")]. The duties of a trustee are apparently what transform a co-settlor's future interest into a present legal

interest.[8]  [D.E. 285 at 11 ("Only the trustee of the Trust has present ownership and legal title of the trust asset.")].   And while it might be true that a trustee administers the trust for the benefit of others, Petitioners claim that this does not negate the fact that a trustee – not a co-settlor – is the legal titleholder and maintains a present interest in real property under Florida law.  *See, e.g., O'Brien v. McMahon*, 44 So. 3d 1273, 1280 (Fla. 1st DCA 2010) ("Trustees hold legal title to trust property while guardians do not hold legal title to wards' property.") (citation omitted).

Along those same lines, Petitioners also argue that a present legal interest is essential because – to file a petition and request an ancillary hearing – the criminal forfeiture statute requires a third-party to assert a legal interest in property.  *See* 21 U.S.C. § 853(n)(2) ("Any person, other than the defendant, asserting a legal interest in property which has been ordered forfeited to the United States pursuant to this section may, within thirty days of the final publication of notice or his receipt of notice under paragraph (1), whichever is earlier, petition the court for a hearing to adjudicate the validity of his alleged interest in the property.").  Petitioners say that this is why Ms. De Castro's children did not file a petition and why their interests, similar to Mr. Hernandez Frieri's, only constitute a *future* equitable interest.   And given that "[t]he term 'legal interest' encompasses only legally protected rights, not equitable rights," Petitioners conclude that Ms. De Castro's

---

[8]     Neither party raises an issue with whether Defendant's resignation as a trustee of the Florida Trust was effective.  The reason for that agreement might be due to the language in the Florida Trust documents, where they provide that "[a]ny Trustee may resign at any time by giving thirty (30) days' written notice to that effect to the Grantors."  [D.E. 238-8 at 3].

interests are superior to both her children and her ex-husband. *Timley*, 507 F.3d at 1129.

There are several problems with these arguments. Petitioners posit that, as a co-settlor, Mr. Hernandez Frieri has an inferior "legal interest" to Ms. De Castro. *See* 21 U.S.C. § 853(n)(2). But, the section that Petitioners rely upon for that argument only refers to the statutory standing of a petitioner – not to the ultimate property interests of a defendant. *Id.* ("Any person, *other than the defendant*, asserting a legal interest in property . . . may within thirty days . . . petition the court for a hearing to adjudicate the validity of his alleged interest in the property.") (emphasis added). Petitioners have, in other words, relied on the wrong statutory provision. The reason why that requirement is included under § 853(n)(2) is because any person, *other than a defendant*, who seeks to petition a court and request a hearing must have statutory standing to do so. *See Timley*, 507 F.3d at 1129 ("Regarding statutory standing, a plaintiff must have a legal interest."). So for these purposes that statutory provision is immaterial.

In any event, Petitioners have also not explained how § 853(n)(2) applies to Mr. Hernandez Frieri's interests when it specifically excludes a defendant from this requirement. That is, using the "legal interest" requirement under Section 853(n)(2) to compare Ms. De Castro's children to Mr. Hernandez Frieri is not an accurate comparison because – while the former is required to show statutory standing to petition a court for an ancillary hearing – the latter is not. The reason that difference exists is because it is a defendant's property that is subject to

forfeiture, not a third party's.  It is therefore uncertain why Petitioners rely on this
section of the criminal forfeiture statute, when by it terms, it does not apply.[9]

Next, focusing on Petitioners' reliance on *Aronson*, Petitioners posit that a co-
settlor – who also acts as a trustee – has a superior legal interest to a co-settlor who
does not act as a trustee.  Petitioners claim that the Government has not referenced
any case to show otherwise and that the Third District's decision in *Aronson* is
controlling.  However, *Aronson* is not what Petitioners make it out to be.  That case
only stands for the principle that a settlor cannot convey legal title, as a trustee, to
a revocable trust, and then turn around and convey the same title, in an individual
capacity, to a third party.  The Fourth District made that point clear in a recent
decision, where the court distinguished *Aronson* based on specific facts presented in
that case:

> The trial court cited to *Aronson v. Aronson*, 930 So. 2d 766 (Fla. 3d
> DCA 2006) to hold that Sadie could not transfer title to herself in her
> individual capacity, but *Aronson* is distinguishable.  In *Aronson*, the
> settlor of a trust was both a life beneficiary and a trustee of the
> revocable trust he created.  He conveyed property to himself as trustee.
> Later in the year, the settlor conveyed that property in his individual
> capacity as "a married man" to his second wife by quit claim deed.  The
> deed was not executed by him as trustee.  The court determined that
> "[o]nce the settlor held the property as trustee, for the benefit of the
> beneficiaries of the trust, he no longer possessed the power to convey
> the property in his individual capacity." *Id.* at 767.  The difference, of
> course, between *Aronson* and this case, is that Sadie conveyed the
> condo both individually and as trustee, and both trustees executed the
> conveyance.  The 2005 deed removed the property from the trust,
> because it was properly executed by both trustees.  The deed conveyed
> the property from Sadie to herself, with a life estate, and then with the

---

[9]     The relevant provision is instead found in § 853(n)(6), where a petitioner
must show that he or she has a legal right, title, or interest in property that is
superior to any right, title, or interest of a defendant at the time of the acts that
give rise to the forfeiture of property.

remainder to her daughter, because it was properly executed in her individual capacity.

That the 2005 deed consolidated the two transfers is no reason to invalidate the settlor's right to control her property, consistent with the terms of her revocable trust. The 2005 deed complied with all the requirements to convey legal title.

*Schlossberg v. Estate of Kaporovsky*, 303 So. 3d 982, 987 (Fla. 4th DCA 2020).

Our case should follow the principle recognized in *Schlossberg*, while Plaintiff's reliance on *Aronson* is misplaced. The question presented in our context is materially different from the one addressed in *Aronson* that involved a single settlor and an initial conveyance to a trust in the capacity of a trustee, plus a second conveyance to a third party in a settlor's individual capacity. This case could not be more distinguishable because here we have two co-settlors, from which Ms. De Castro derives a purportedly superior legal interest to her fellow co-settlor based on the sole premise that she performs additional duties as a trustee. Nothing in *Aronson* even considers that question.

Instead, the only way to determine if a co-settlor with trustee duties has a superior legal interest to a co-settlor without trustee duties is to look to Florida case law and Florida's Trust Code. Fla. Stat. § 736.0603 is the first helpful place to look because it provides that "[w]hile a trust is revocable, the duties of the trustee are owed exclusively to the settlor." Fla. Stat. § 736.0603(1). This shows that, although a trustee performs certain obligations to a property, those duties are owed to a settlor because the latter is the person "who creates or contributes property to a trust." Fla. Stat. § 736.0103(18) ("'Settlor' means a person, including a testator, who creates or contributes property to a trust."). The second place to look is Fla.

Stat. § 736.0505 because that shows that "[t]he property of a revocable trust is subject to the claims of the settlor's creditors during the settlor's lifetime to the extent the property would not otherwise be exempt by law if owned directly by the settlor." Fla. Stat. § 736.0505(1)(a). This yields only one conclusion, contrary to the joint petition, that a settlor has a *present* legal interest because otherwise creditors would not be able to reach the settlor's property. If a settlor merely had a future contingent interest as the joint petition demands, that would raise a question as to how any creditors could ever reach a settlor's property when the property may never belong to him in the first place. The two do not go hand in hand.

The Petitioners simplistically argue to the contrary on this premise: "[a] settlor, who does not have ownership and a legal interest in property, cannot convey that property, fraudulently or otherwise." [D.E. 285 at 14]. But, as we have already shown, and based on the joint petition's own allegations and the exhibits attached thereto, Mr. Hernandez Frieri remains a co-settlor of the trust because his "resignation" was never properly effectuated. Petitioners' theory is also undermined by the absence of any case law showing that the interests of a co-settlor who also performs administrative duties as a trustee is endowed with a superior legal interest to another co-settlor. Instead, the more persuasive explanation of a co-settlor's role to a revocable trust is the Florida's Supreme Court case in *Genova*, where the court explained that a settlor always reserves to himself the income from the trust property for life and maintains the power to revoke a trust at any time:

25

> A revocable trust is a unique type of transfer. According to E. Carr, *Revocable Trusts,* 5–6 (1980), "[i]t is created when a person, called the settlor, subjects property owned by him to a trust for the benefit of at least one other person, reserving to himself as settlor-beneficiary the income from the trust property for life and the power to revoke the trust in whole or in part at any time. The other person or persons' enjoyment of the trust is postponed until the settlor's death." By definition, then, when a settlor sets up a revocable trust, he or she has the right to recall or end the trust at any time, and thereby regain absolute ownership of the trust property. This retention of control over property distinguishes a revocable trust from the other types of conveyances in which the principle of undue influence is applied, i.e., gifts, deeds, wills, contracts, etc.

*Genova*, 460 So. 2d at 897. If co-settlers did not have a present legal interest in the trust property, it is unclear how they would be entitled to a property's income and maintain the absolute power to revoke a trust. Florida law, in short, does not support Petitioners' theory; it, rather, points in the Government's favor.

Petitioners imagine that *Genova* undercuts the Government's argument because – when the Florida Supreme Court stated that a settlor could recall or end a trust – it noted that a settlor could "regain absolute ownership of the trust property." *Id.* But, Petitioners are conflating "absolute ownership" with a present legal interest. Simply because a settlor allows others to enjoy his property does not mean that he lacks a present legal interest. In fact, the opposite is true. A settlor's present legal interests are so strong that he can revoke a trust, eliminate all of a trustee's obligations, and leave a property solely for his own personal enjoyment. All that the Petitioners have shown is that a trustee holds nominal title for the

benefit of others while performing his or her duties[10] whereas a settlor can terminate those trustee duties (and nominal legal title) at his or her discretion.

To salvage their argument, Petitioners try to mine the Florida Trust Code where it states that a trustee may exercise "[a]ll powers over the trust property that an unmarried competent owner has over individually owned property." Fla. Stat. § 736.0815(1). But, that provision is taken out of context because it assumes that a trust agreement does not otherwise limit the powers of a trustee. The full sentence paragraph reads as follows:

> (b) Except as limited by the terms of the trust:
> 1. All powers over the trust property that an unmarried competent owner has over individually owned property.

*Id*. Petitioners' reliance on this provision fails.

Moreover, Petitioners have omitted a later section under the same statutory provision that states that "[t]he exercise of a [trustee's] power is subject to the fiduciary duties prescribed by this code." Fla. Stat. § 736.0815(2). So, while Petitioners spend page after page describing how Ms. De Castro manages the property and acts as the sole trustee, they rely on nothing to show that any of that matters or why Florida law deems her to have a superior legal interest to her ex-husband based on her managerial skills. As far as Florida trust law is concerned, Mr. Hernandez-Frieri is a co-settlor of a revocable trust and Ms. De Castro is a co-settlor serving in an additional role as a trustee. Neither has a superior legal interest over the other. And both had a present legal interest in the corpus of the

---

[10] *See, e.g.*, *Hansen v. Bothe*, 10 So. 3d 213, 216 (Fla. 2d DCA 2009) ("Upon the establishment of a trust, the legal title is held by the trustee, but equitable title rests with the beneficiary.") (citing *In re Wells*, 259 B.R. at 779).

revocable trust at the time of Mr. Hernandez-Frieri's criminal conduct. That trust property is subject to forfeiture in this proceeding.

In sum, the joint petition has failed to show a superior legal interest under Florida law, or that any right, title, or interest vested in the Petitioners as opposed to Mr. Hernandez-Frieri. *See* 21 U.S.C. § 853(n)(6)(A). The record shows instead that Defendant remains a co-settlor of the Florida Trust and that the interests between him and his ex-wife are, in material respects, equal. And the allegations in the joint petition, the attached exhibits, the Florida Trust Code, and Florida case law all point to the same conclusion. Accordingly, the Government's motion to dismiss the joint petition should be **GRANTED** because, without superior ownership under 21 U.S.C. § 853(n)(6)(A) and no argument in support of a bona fide purchaser for value under 21 U.S.C.A. § 853(n)(6)(B), there is no protection for Petitioners under the federal criminal forfeiture statute.

## IV.   CONCLUSION

For the foregoing reasons, the Court **RECOMMENDS** that the Government's motion to dismiss be **GRANTED**.

Pursuant to Local Magistrate Rule 4(b) and Fed. R. Civ. P. 73, the Court finds good cause to expedite any objections to this Report and Recommendation. The parties have until **March 12, 2021,** to file written objections, if any, with the District Judge. Failure to timely file objections by such date shall bar the parties from *de novo* determination by the District Judge of any factual or legal issue covered in the Report *and* shall bar the parties from challenging on appeal the

District Judge's Order based on any unobjected-to factual or legal conclusions included in the Report.  28 U.S.C. § 636(b)(1); 11th Cir. Rule 3-1; *see, e.g., Patton v. Rowell,* 2017 WL 443634 (11th Cir. Feb. 2, 2017); *Cooley v. Commissioner of Social Security,* 2016 WL 7321208 (11th Cir. Dec. 16, 2016).

**DONE AND SUBMITTED** in Chambers at Miami, Florida, this 7th day of March, 2021

/s/ *Edwin G. Torres*
EDWIN G. TORRES
United States Magistrate Judge