UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 18-20685-cr-WILLIAMS/TORRES

UNITED STATES OF AMERICA,

    Plaintiff,

v.

GUSTAVO HERNANDEZ FRIERI, et al.,

    Defendants.

_____/

**DEFENDANT GUSTAVO HERNANDEZ FRIERI'S REPLY AND FACTUAL CLARIFICATIONS TO THE GOVERNMENT'S SUPPLEMENTAL SENTENCING MEMORANDUM (D.E. 364)**

Defendant Gustavo Hernandez Frieri ("Mr. Hernandez") submits the following Reply to the Government's Supplemental Sentencing Memorandum (D.E 364). This reply is necessary to correct and clarify various factual allegations which the Government is making regarding Mr. Hernandez and his financial disclosures. It happens that in the words of Shakespeare, the Government filing is "full of sound and fury signifying nothing."

1. Section A (pp. 2-4). The Government alleges misinformation regarding assets available for recovery. Undersigned has followed up with Government counsel and stands by priorreports regarding Mr. Ortega's investment available for recovery.

2. Section B (pp. 4-5). The Government paints a false and misleading portrait relating to so-called transfer of assets to family members and associates. There was no self-dealing. Investments in Alpha and in Domaine were made because Mr. Hernandez and the Fund believed in the value of the investments. That Mr. Hernandez had a minority interest in these companies means nothing. Mr. Hernandez did not profit from Mr. Ortega's investment in the GSTF Fund. Further, Mr. Ortega visited Domaine and wanted this investment, given Mr. Ortega's own interest in the business and a wine company Ortega told Mr. Hernandez Ortega had in Spain.

    (a) The GSTF Fund Class C/D investment in Domaine for $2 million was always carried on the books of the GSTF Fund, as prepared independently by Apex Fund

Services, the Fund Administrator. Investment contracts, emails relating to this investment, Financial Statements, amongst others, all confirm that the investment in Domaine always belonged to GSTF Fund Class C/D.

        (b)    The $90,000 loan to GSM in connection with Cesar Hernandez had nothing to do with the $2 million of GSTF Fund Class C/D invested through GSM. This entity which served as conduit for the GSTF Fund to make investments and comply with currency exchange, tax filing and regulatory requirements. None of the money stayed with GSM. Further, Mr. Hernandez was neither a partner nor director of GSM, and received no compensation from GSM. The Government's attempt to imply something untoward is unfounded.

        (c)    The $4,000 fee paid by the CS in connection with his urging Mr. Hernandez to assist in the transaction charged in Count 4 of the Indictment was paid to GSM and <u>not</u> to Mr. Hernandez. Mr. Hernandez never received any monies.

    3.    Section C (pp. 5-7). The Government insinuates that Mr. Hernandez has income which Mr. Hernandez does not have.

        (a)    The reference to "nearly $300,000" allegedly transferred from the GSTF Fund Class C/D accounts relates to the ordinary payment of GS management fees over a two year period, in line with all other over 50 investors, in all other share classes, since 2006. This was not and is not Mr. Hernandez's money.

        (b)    Mr. Hernandez retained use of an email account that originated with Global Securities Advisors GP. That company was dissolved in 2018, as the Government well knows. Mr. Hernandez is <u>not</u> still working on behalf of the Global entities and his use of an email does <u>not</u> "strongly suggest" otherwise. Using that email address is merely a convenience.

        (c)    In 2004, Mr. Hernandez enjoyed benefits from a family trust. In that time, Mr. Hernandez reported a net worth of $28 million, based on a valuation of his interests in GS entities. At the time of his arrest, these entities began to shut down. With the dissolution of those businesses, Mr. Hernandez's net worth has turned to a negative net worth. There is nothing mysterious or sinister about this: The indictment destroyed Mr. Hernandez's businesses.

        (d)    Family art that existed in 2004 has been long sold. Seventeen years later, the belongings of Mr. Hernandez have been listed in his disclosures.

    4.    Section D (pp. 7-9). The Government, without any proof, disputes that Mr.

Hernandez's work on behalf of Green Mountain College and Bhakta Farms was uncompensated. The Government uses the phrase "highly possible", implying maybe Mr. Hernandez has received payment. Undersigned reported to Government counsel that Mr. Hernandez provided services to Green Mountain College and Bhakta Farms on a pro bono basis. We stand by that representation. We have since confirmed this fact with counsel for the Bhakta companies and understand that said counsel is providing documents to the Government to verify these facts.

5. In footnote 3 of its sentencing memorandum, the government asserts that "Counsel for the defendant has also refused to provide the Government with information concerning how the defendant secured additional new counsel." In an April 16, 2021 email to counsel, AUSA Kurt Lunkenheimer inquired about the source of fees for the legal services of Srebnick and Perczek. He wrote: "Primarily, we would want to know if you are being paid in whole or in part by any of the following [fifteen] people or entities …" Ms. Perczek responded on April 20, 2021: "Good morning Kurt, I am advised that none of the entities or individuals listed in your email paid fees/expenses to Black Srebnick." In reply to Ms. Perczek's direct response, AUSA Lunkenheimer expanded his inquiry, asking whether counsel would be "willing to disclose the source of the fees or expenses." Counsel did not immediately respond, leading the government to complain in footnote 3 of its memorandum later that day that counsel "have declined to identify the specific source of that funding to date." At this juncture, counsel will await guidance from the Court on whether it deems relevant the government's further inquiry to identify the friends of Mr. Hernandez who advanced funds to pay for Black Srebnick's legal services.

6. The Government has in its pleading and in the past pointed to Mr. Hernandez's contact with City National Bank in 2018, after his arrest in Italy, and before his return to the United States, as something untoward. Back in 2018, we explained to AUSA Michael Nadler, who was taking the lead on the prosecution at that time, that the reason for the contact was not to access accounts, but merely to ensure that other fund shareholders were protected. Mr. Hernandez's business lawyer, Eric Koenig, took over this dialogue going forward. There was no improper purpose here.

## CONCLUSION

Mr. Hernandez was compelled to file this reply to correct misinformation in the Government finding. He will make his arguments regarding the appropriate sentence and the Government position relating thereto at the sentencing hearing on April 30, 2021.

Respectfully submitted,

*s/ Howard Srebnick*
Howard Srebnick (FBN 919063)
Email: hsrebnick@royblack.com
Black, Srebnick, Kornspan & Stumpf
201 South Biscayne Blvd., Suite 1300
Miami, Florida 33131
Tel: 305-371-6421
*Co-Counsel for Defendant, Gustavo Adolfo Hernandez Frieri.*

*s/ Michael S. Pasano*
Michael S. Pasano (FBN 0475947)
Email: mpasano@carltonfields.com
CARLTON FIELDS
2 MiamiCentral
700 N.W. 1st Avenue, Suite 1200
Miami, Florida 33136
Tel:   (305) 530-0050
Fax:   (305) 530-0055
*Counsel for Defendant, Gustavo Adolfo Hernandez Frieri.*

Dated: April 26, 2021

125849879.1