EXHIBIT K

# DC 2019 IRREVOCABLE TRUST

Trenam, Kemker, Scharf, Barkin, Frye, O'Neill & Mullis, P.A.
Post Office Box 1102
Tampa, Florida 33601
(813) 223-7474

# IRREVOCABLE TRUST AGREEMENT

THIS IRREVOCABLE TRUST AGREEMENT (the "Trust Agreement") is made and entered into this 1 day of February, 2019, by and between OLYMPIA DE CASTRO (the "Grantor") and ALLISON DOMENEGHETTI (the "Trustee").

At the time of execution of this Trust Agreement, the Grantor has three (3) children,



, ages 5, 3 and 7 respectively.

## ARTICLE I

### Name of Trust

The trust created hereunder shall be known as the "DC 2019 IRREVOCABLE TRUST."

## ARTICLE II

### Irrevocability and Limitation on Rights of Grantor

This Trust Agreement and the trusts created hereunder are irrevocable. The Grantor shall have no right or power, either alone or in conjunction with others, in any capacity, to alter, amend or revoke this Trust Agreement, in whole or in part, to terminate any trust created hereunder, or to designate those persons who shall possess or enjoy the trust property or the income therefrom.

## ARTICLE III

### Trust Property

The Grantor has simultaneously with the execution of this Trust Agreement transferred and delivered to the Trustee the property described in Schedule A attached hereto, which the Trustee agrees to hold in trust subject to the terms, purposes and conditions set forth in this Trust Agreement.

The Grantor or any other person with the consent of the Trustee shall have the right from time to time to add property to the DC 2019 IRREVOCABLE TRUST or to any separate trust or share created hereunder by transferring, assigning, conveying, devising or bequeathing such property to the Trustee of such trust or share or by designating the Trustee of such trust or share as a beneficiary of death benefits of any kind. Such property and/or death benefits shall be held by the Trustee of such trust or share under the provisions of this Trust Agreement governing such trust or share.

## ARTICLE IV

### Dispositive Provisions

The Trustee shall hold, manage, invest and reinvest the trust property, shall collect the income therefrom, and, after the payment of other expenditures due from the trust and the expenses of administration, shall apply the income and the principal of the trust property as follows:

Commencing with the date of this Trust Agreement and continuing until the Division Date, the Trustee may distribute to or for the benefit of any descendant of the Grantor as much of the income or principal, or both, of the DC 2019 IRREVOCABLE TRUST in such amounts, at such times, in such manner and in such proportions (without any necessity to maintain equality of distribution) as the Trustee shall in the Trustee's discretion deem advisable for the health, education (including college and professional education), maintenance and support of the Grantor's descendants; provided, however, it is the Grantor's wish and desire that in exercising its discretion under this paragraph the Trustee give preference first to the Grantor's children and then to the descendants of the Grantor's children. In making such determinations, the Trustee may, but shall not be required to, take into consideration all other resources available to the Grantor's descendants. Any income of the trust not distributed currently shall be accumulated by adding and incorporating it into the principal of the trust, to be administered, invested, reinvested and dealt with in the same manner as any other principal of the trust.

Upon the Division Date, the Trustee shall divide the principal of the DC 2019 IRREVOCABLE TRUST as then constituted into separate shares for the Grantor's then living descendants, per stirpes. Each such share shall be held by the Trustee as a separate trust and each such separate trust shall be designated by the name of the descendant for whom the trust was created. Separate books and records shall be kept for each separate trust created by this paragraph, but it shall not be necessary that a physical division of the assets be made as to each separate trust created by this paragraph. The descendant for whom a trust is created by this paragraph shall be referred to herein as the "Primary Beneficiary" of such trust. Each separate trust created by this paragraph for a Primary Beneficiary shall be held, administered and distributed as follows:

> (1)     The principal of a trust created for a Primary Beneficiary who has reached the age of 35 years on the date of the creation of the trust shall be forthwith distributed to the Primary Beneficiary, outright and free of trust.

> (2)     The principal of a trust created for a Primary Beneficiary who has not reached the age of 35 years on the date of the creation of the trust shall be held, administered and distributed as follows:

>> (A)     Except as provided in sections (B), (C) and (D) of this subparagraph, a trust created for a Primary Beneficiary shall continue to be held in trust by the Trustee, who may devote to that Primary Beneficiary's health, education (including college and professional education), maintenance and support as much of the income or principal, or both, as the Trustee deems advisable for such purposes while the Primary Beneficiary is under the age of 35 years. In making such determinations, the Trustee may but shall not be required to take into consideration all other resources available to the Primary Beneficiary. Any income of the trust that is not distributed currently shall be added and incorporated into the principal

2

of the trust, to be administered, invested, reinvested and dealt with in the same manner as any other principal of the trust.

(B)　　When the Primary Beneficiary reaches the age of 35 years, the Trustee shall distribute to the Primary Beneficiary the balance of the principal and income of his or her trust then held hereunder, outright and free of trust.

(C)　　Subject to the provisions of section (D) of this subparagraph, upon the death of the Primary Beneficiary prior to complete distribution of his or her trust, such trust, or the remainder thereof, shall be transferred, conveyed and paid over as the Primary Beneficiary shall by his or her Last Will and Testament appoint; provided, however, that no provision in any Last Will and Testament of the Primary Beneficiary shall constitute an appointment of any such trust property unless such provision shall be an express reference to the limited power of appointment given to him or her by the terms and provisions of this section. The limited power of appointment granted to the Primary Beneficiary in the immediately preceding sentence shall be exercisable by the Primary Beneficiary alone and in all events and shall be exercisable only in favor of any one or more of the Grantor's descendants, in trust or otherwise; provided, however, in no event shall such limited power of appointment be exercisable in favor of the Primary Beneficiary, his or her estate, his or her creditors, or the creditors of his or her estate. In determining the proper disposition of the principal of the trust pursuant to the provisions of this section, the Trustee shall be protected in relying upon any instrument admitted to probate in any jurisdiction as the Last Will and Testament of the Primary Beneficiary or in acting upon the assumption that the Primary Beneficiary died intestate in case the Trustee has no notice of the existence of a will of the Primary Beneficiary within ninety (90) days after the Primary Beneficiary's death. If the limited power of appointment granted to the Primary Beneficiary under the provisions of this section for any reason is not validly exercised in whole or in part by the Primary Beneficiary, then, upon the Primary Beneficiary's death, such portion of the principal as shall not have been validly appointed by the Primary Beneficiary shall be divided into separate shares for the then living descendants, per stirpes, of the deceased Primary Beneficiary, if any, and if none, then shall be divided into separate shares for the then living descendants, per stirpes, of the Primary Beneficiary's nearest ancestor who is a descendant of the Grantor and who has descendants who are then living, if any, and if none, then shall be divided into separate shares for the then living descendants, per stirpes, of the Grantor. A separate share created by this section for an individual for whose primary benefit a separate trust created by this Trust Agreement is then in existence shall be added to the principal of such separate trust, to be held, administered and distributed in accordance with the provisions of this Trust Agreement applicable to such separate trust. A separate share created by this section for an individual for whose primary benefit a separate trust created by this Trust Agreement is not then in existence shall be held by the Trustee as a separate trust for the benefit of such individual, which trust shall be designated by the name of the individual for whom such share was created and shall be held, administered and distributed in accordance with the

3

provisions of subparagraph (1) or (2) of this paragraph, as the case may be; provided that such individual shall be referred to in such applicable subparagraph as the "Primary Beneficiary" of such trust. Separate books and records shall be kept for each separate trust created by this section, but it shall not be necessary that a physical division of the assets be made as to each such separate trust.

(D)     If all or any portion of the Primary Beneficiary's trust would be subject to generation-skipping transfer tax as a result of the Primary Beneficiary's death, then in lieu of the provisions set forth in section (C) of this subparagraph, the portion of the Primary Beneficiary's trust that would be subject to generation-skipping transfer tax shall be transferred, conveyed and paid over as such Primary Beneficiary shall by his or her Last Will and Testament appoint; however, no provision in any Last Will and Testament of such Primary Beneficiary shall constitute an appointment of any such trust property unless such provision shall be an express reference to the power of appointment given to such Primary Beneficiary by the terms and provisions of this section. The power of appointment granted to the Primary Beneficiary in the immediately preceding sentence shall be exercisable only in favor of any one or more of the Grantor's descendants, in trust or otherwise, and/or the creditors of the Primary Beneficiary's estate, and shall be exercisable by the Primary Beneficiary alone and in all events. In determining the proper disposition of the principal of the trust pursuant to the provisions of this section, the Trustee shall be protected in relying upon any instrument admitted to probate in any jurisdiction as the Last Will and Testament of such Primary Beneficiary or in acting upon the assumption that the Primary Beneficiary died intestate in case the Trustee has no notice of the existence of a will of the Primary Beneficiary within ninety (90) days after the Primary Beneficiary's death. If the power of appointment granted to the Primary Beneficiary under the terms of this section for any reason is not validly exercised in whole or in part by the Primary Beneficiary, then upon the Primary Beneficiary's death, such portion of the principal as shall not have been validly appointed by the Primary Beneficiary shall be held, administered and distributed as provided in section (C) of this subparagraph, as if the Primary Beneficiary had not been granted a power of appointment under this section.

The following provisions shall apply with respect to any trust created under this Article:

(3)     If at any time (such time to be referred to in this subparagraph as the "Distribution Date") there is no person in being qualified to receive the principal of the trust, or any portion thereof, then upon the Distribution Date, such trust principal, or the portion thereof with respect to which a total failure of qualified recipients has occurred, shall be distributed to the person(s) designated by the Trust Protector.

(4)     In case the income or principal from the trust becomes payable or distributable to a minor or any other Incapacitated Person, then such amounts may be used by the Trustee directly for the benefit of the Incapacitated Person, or may be paid out by the Trustee in such of the following ways as the Trustee deems advisable:

4

(A)     directly to the Incapacitated Person;

(B)     to a custodian for the minor under the Florida Uniform Transfers to Minors Act, or any other statute of similar import in any other jurisdiction; and/or

(C)     to the legally appointed guardian or conservator of the Incapacitated Person;

provided, however, that in no event shall the Trustee make any distributions of income or principal of the trust to the Grantor or any serving Trustee who has a legal obligation to support the Incapacitated Person, including distributions to any such person in the capacity as custodian, guardian or conservator of an Incapacitated Person.

(5)     Notwithstanding anything in this Trust Agreement to the contrary:

(A)     The Grantor intends to completely fulfill, from the Grantor's own resources and not from the trust, any legal obligation the Grantor may have to support any beneficiary of the trust.  The Grantor does not intend that any distributions hereunder be used to discharge the Grantor's and/or any serving Trustee's legal obligations to support any beneficiary of the trust.

(B)     The Trustee shall not make any distributions of income or principal of the trust that would discharge any legal obligation of the Grantor and/or any serving Trustee to support any beneficiary of the trust.  Thus, with respect to distributions that are permitted by this Trust Agreement, the Trustee shall only make a distribution of income or principal from the trust beyond that which is required to discharge the Grantor's and/or any serving Trustee's legal obligations to support such beneficiary.

(6)     Any income accrued or undistributed at the termination of any interest under the trust shall be paid by the Trustee as income to the persons entitled to receive the next successive interest in the proportions in which they take such interest.

(7)     For convenience of administration and investment, the Trustee is authorized to hold any two or more separate trusts created under this Article as a common fund, dividing the income proportionately among them, to assign undivided interests to the several trusts, and to make joint investments of the funds belonging to them.

Notwithstanding any other provision of this Trust Agreement, each trust created hereunder shall terminate, if not previously terminated in accordance with its terms, upon the day before the 360th anniversary of this Trust Agreement.  Thereupon, the Trustee shall distribute the principal, outright and free of trust, to the then income beneficiary or beneficiaries of the trust, in accordance with their respective income interests, or if their respective income interests are subject to the discretion of the Trustee, in equal shares.

ARTICLE V

5

## S Corporation Shares

Effective as of the date on which any "S Corporation Shares" (as defined in paragraph (d) of this Article) would otherwise pass to or be treated as held by an "Ineligible Trust" (as defined in paragraph (d) of this Article), and notwithstanding those provisions found in Article IV of this Trust Agreement, the Trustee may hold such S Corporation Shares in one or more separate trusts or trust shares on the terms set forth in this Article. The Trustee may hold such S Corporation Shares under paragraph (a) ("Qualified Subchapter S Trusts") or paragraph (b) ("Electing Small Business Trusts"), as the Trustee shall deem advisable, considering the changes that such provisions would require from the terms and conditions under which such shares would otherwise be held under this Trust Agreement. In addition, the Trustee shall have the discretion to convert such separate trusts from Qualified Subchapter S Trusts to Electing Small Business Trusts, and/or from Electing Small Business Trusts to Qualified Subchapter S Trusts, as the case may be, from time to time as permitted by the Code and the Regulations thereunder.

(a) Any S Corporation Shares held under this paragraph shall be held on the following terms:

(1) Each trust held under this paragraph shall be a separate trust or substantially separate and independent share, as defined in Section 1361(d)(3) of the Code, for the benefit of the "Current Beneficiary" (as defined in paragraph (d) of this Article).

(2) The Trustee shall annually distribute all of the "Income" (as defined in paragraph (d) of this Article) of each trust held under this paragraph to the Current Beneficiary of the trust, together with so much of the trust's principal as is appropriate under the provisions of Article IV applicable to the trust in which such S Corporation Shares would otherwise have been held. The Trustee shall not distribute income or principal of any trust held under this paragraph to anyone other than the Current Beneficiary of the trust during the life of the Current Beneficiary.

(3) The Income interest of a Current Beneficiary in the trust shall terminate on the earlier of the Current Beneficiary's death or the termination of the trust in accordance with the provisions of Article IV applicable to the trust in which such S Corporation Shares would otherwise have been held.

(4) Upon the termination of the trust, the Trustee shall distribute the remaining trust assets to the Current Beneficiary, if the Current Beneficiary is then living, or if the Current Beneficiary is not then living, the remaining trust assets shall be held, administered and distributed in accordance with the applicable provisions of Article IV and of this paragraph.

(5) The Trustee shall make certain that an election is made under Section 1361(d)(2) of the Code to treat each trust held under this paragraph as a Qualified Subchapter S Trust for federal income tax purposes.

(6)     The Trustee shall administer any trust under this paragraph as a Qualified Subchapter S Trust, as defined under Section 1361(d)(3) of the Code.

(7)     The Trustee shall allocate any S Corporation Shares that will be held under this paragraph between or among one or more separate trusts, based on each beneficiary's interest in the income of the Ineligible Trust that would otherwise have held those shares. If no beneficiary was entitled to the income of such Ineligible Trust at that time, the Trustee may allocate any S Corporation Shares among the trusts under this paragraph for the beneficiaries of such Ineligible Trust, in such manner as the Trustee shall deem advisable.

(b)     Any S Corporation Shares held under this paragraph shall be held on the following terms:

(1)     The Trustee shall apportion to the trusts under this paragraph a reasonable share of the unallocated expenses of all trusts under this Trust Agreement in a manner consistent with the Code and the Treasury Regulations.

(2)     The Trustee shall make that election required by Section 1361(e)(3) of the Code in order to qualify the trust under this paragraph as an Electing Small Business Trust as defined under Section 1361(e) of the Code.

(3)     The Trustee shall administer each trust under this paragraph as an Electing Small Business Trust as defined under Section 1361(e) of the Code.

(c)     The Trustee shall manifest its selection of the form in which the Trustee shall hold any S Corporation Shares by written notice to all persons who would be eligible or entitled at the time of such writing to receive income from the Ineligible Trust that would otherwise hold such S Corporation Shares.

(d)     The following definitions shall apply for purposes of this Article:

(1)     "Current Beneficiary" means, at any particular time, the sole beneficiary of a trust created under paragraph (a) of this Article who is entitled to receive distributions of the Income of the trust at that particular time under subparagraph (2) of paragraph (a) of this Article.

(2)     "Ineligible Trust" means a trust whose ownership of any S Corporation Shares would cause the termination of that corporation's election to be taxed under Subchapter S of the Code.

(3)     "Income" means income as defined in Section 643(b) of the Code.

(4)     "S Corporation Shares" means shares of any stock of a corporation (or ownership interests in a limited liability company, partnership, or other entity) that then operates or that the Trustee shall deem likely to operate in the future under an election to have its earnings taxed directly to its stockholders (or other owners) under Subchapter S of the Code.

## ARTICLE VI

### Rights of Withdrawal

Each time that property is contributed to the principal of the trust so as to constitute a gift by a living person (including the initial contribution of the property described in Schedule A), each Withdrawal Beneficiary who is living on the date of the contribution and has not been excluded from exercising a Withdrawal Right shall have the right to withdraw and appoint to herself or himself, unqualifiedly and free and clear of this trust, a pecuniary amount (as determined under this Article) of the property so contributed.

The amount of each Withdrawal Right shall be determined as follows:

(1)     The amount of each Withdrawal Right shall be equal to the lesser of:

(A)     the value of the contribution, divided by the number of the Withdrawal Beneficiaries who have Withdrawal Rights with respect to such contribution, or

(B)     if the person making the contribution is not married on the date of the contribution, the annual exclusion allowable in computing taxable gifts by Section 2503(b) of the Code; and if the person making the contribution is married on the date of the contribution (without regard to whether the donor's spouse joins in the gift of the contribution pursuant to Section 2513 of the Code), twice such annual exclusion.

(2)     A Withdrawal Beneficiary shall have no Withdrawal Right with respect to any contribution made or treated for federal gift tax purposes as having been made to the principal of the trust by that Withdrawal Beneficiary.

(3)     Notwithstanding the foregoing:

(A)     In no event shall the aggregate withdrawals by any Withdrawal Beneficiary with respect to contributions made by any one person during any single calendar year exceed the amount described in subparagraph (1) of this paragraph.

(B)     Any person making a contribution may exclude any Withdrawal Beneficiary from having a Withdrawal Right, or reduce the amount of such Withdrawal Right, with respect to such contribution by giving written notice to the Trustee of such exclusion or reduction prior to or at the time of such contribution. No such written notice shall limit any rights resulting from contributions made prior to such written notice.

8

(4)     The determination by the Trustee of the amount subject to any Withdrawal Right shall be final and conclusive. The Trustee shall not incur any liability to any Withdrawal Beneficiary as a result of such determination.

The Trustee is hereby instructed and directed to give each Withdrawal Beneficiary having a Withdrawal Right prompt written notice of his or her Withdrawal Right with respect to contributions to the principal of the trust. Any failure by the Trustee to give any notice required under this paragraph shall not in any way affect the existence and exercise of the Withdrawal Right granted to a Withdrawal Beneficiary under this Article.

(5)     The Trustee shall not be relieved of the obligation to give the notice even if the Grantor or another person notifies the Withdrawal Beneficiary of his or her Withdrawal Rights and any contribution to the trust.

(6)     If a Withdrawal Beneficiary is under a legal disability, the notice shall be given to, and the Withdrawal Beneficiary's Withdrawal Right may be exercised on his or her behalf by, the Withdrawal Beneficiary's natural guardian or the Withdrawal Beneficiary's court-appointed legal guardian of his or her property, if any, or if none, to such other individual whom the Trustee shall deem appropriate. Notwithstanding the preceding sentence, in no event shall the Grantor or any serving Trustee who has a legal obligation to support a beneficiary have any right to exercise a Withdrawal Right under this Article.

A Withdrawal Beneficiary having a Withdrawal Right may exercise his or her Withdrawal Right by giving written notice of such exercise to the Trustee; provided, that to the extent any such Withdrawal Beneficiary does not exercise the Withdrawal Right within thirty (30) days after the contribution giving rise to such Withdrawal Right, such Withdrawal Right shall lapse, but only to the extent of the greater of the amounts specified in sections 2514(e)(1) and (2) of the Code (currently $5,000 or five percent (5%) of the total value of the trust property at the time of such lapse), reduced by the amount of any lapses of that Withdrawal Beneficiary's Withdrawal Rights that occurred previously in the same calendar year. To the extent that a Withdrawal Right does not lapse pursuant to the immediately preceding sentence, it shall continue in existence unless and until it lapses in accordance with the immediately following sentence. On January 1 of each year, the unlapsed Withdrawal Rights of each Withdrawal Beneficiary shall be aggregated, and such aggregated unlapsed Withdrawal Rights shall lapse on such date, but only to the extent of the greater of the amounts specified in sections 2514(e)(1) and (2) of the Code. The calculations of the lapsed amounts for any calendar year shall take into account all Withdrawal Rights of such Withdrawal Beneficiary for such year that are required to be aggregated for these purposes under the Code. The Trustee shall not be responsible for calculating any lapsed amounts.

The Trustee shall, within ten (10) days after receipt of any such notice of withdrawal given by a Withdrawal Beneficiary, distribute to that Withdrawal Beneficiary the amount withdrawn. The distribution shall be made from the assets contributed to the extent they are available; otherwise, the distribution may be made from other assets of the trust, in the Trustee's discretion.

9

No adjustment shall be made in the interests of a Withdrawal Beneficiary as a result of the exercise by any Withdrawal Beneficiary of the Withdrawal Rights provided under this Article.

## ARTICLE VII

### Grantor Trust Provisions

It is the Grantor's intent that this trust be treated as a wholly-owned Grantor trust with respect to the Grantor for federal income tax purposes. In this regard, the Grantor hereby reserves the right from time to time to reacquire the principal of the trust by substituting other property of an equivalent value, which right shall be exercisable by the Grantor solely in a non-fiduciary capacity within the meaning of Section 675(4)(C) of the Code and without the approval or consent of the Trustee or any other person in a fiduciary capacity; provided, however, that the Grantor's right reserved under this paragraph shall be subject to the following restrictions and conditions:

      (1)    the Trustee shall satisfy itself that the properties reacquired by the Grantor and the properties substituted therefor by the Grantor are in fact of equivalent value; and

      (2)    the Trustee shall reinvest the trust principal in accordance with its duty of impartiality to the beneficiaries in such a manner as to insure that the exercise of this right by the Grantor shall not result in shifting the benefits of the trust among the beneficiaries.

If the fair market value of the property to be reacquired or substituted by the Grantor cannot be determined by agreement between the Grantor and the Trustee, then such fair market value shall be determined by a qualified, independent appraiser mutually selected by the Grantor and the Trustee. The Grantor's right reserved under this paragraph may be released by the Grantor, in whole or in part, by an instrument in writing signed by the Grantor and delivered to the Trustee.

Notwithstanding any applicable law to the contrary, the Trustee, in the Trustee's sole discretion, may from time to time reimburse the Grantor or the Grantor's estate for the payment of any income taxes imposed on the Grantor under Section 671 of the Code that are attributable to the income or principal of the trust, such payment or reimbursement to be made from the income or principal of the trust as the Trustee, in the Trustee's sole discretion, deems advisable.

## ARTICLE VIII

### Resignation and Successor Trustee

Any Trustee shall have the right to resign at any time upon the giving of at least thirty (30) days written notice to the Qualified Beneficiaries and all Co-Trustees or, if there are no Co-Trustees, to the next successor Trustee designated pursuant to the provisions of this Article. The written notice of resignation shall set forth the effective time and date of such resignation.

If ALLISON DOMENEGHETTI should die, resign, become unable to carry out the duties of the Trustee, or fail or cease to act as Trustee for any reason whatsoever, then, in that event, the

Grantor's sister in law, MARIA LUCIA HERNANDEZ, shall serve as successor Co-Trustee or as sole Trustee, as the case may be, of all trusts held under this Trust Agreement.

Except as provided in paragraphs (b), (e) and (f) of this Article, if a Trustee is serving as the sole Trustee of all trusts held under this Trust Agreement (or any successor to such sole Trustee appointed as provided in this paragraph, with such Trustee or any successor to such Trustee appointed as provided in this paragraph being hereinafter referred to as the "Resigning Trustee") and such Trustee should die, resign, become unable to carry out the duties of the Trustee, or fail or cease to act as Trustee for any reason whatsoever, then, in that event, the Resigning Trustee shall have a power to appoint a successor Trustee to serve hereunder in the Resigning Trustee's place and stead by delivering a written instrument to such successor Trustee, if the Resigning Trustee is then living, or, if the Resigning Trustee is not then living, by the Resigning Trustee's last will and testament or codicil thereto making express reference to this power; provided, however, that the Resigning Trustee, during his or her lifetime or by the Resigning Trustee's last will and testament or codicil thereto, shall not have the power to appoint a successor Trustee who is the Grantor, a descendant of the Grantor or the Grantor's husband. Except as provided in paragraphs (b), (e) and (f) of this Article, if the Resigning Trustee should die, resign, become unable to carry out the duties of the Trustee, or fail or cease to act as Trustee for any reason whatsoever, and if the Resigning Trustee has not appointed a successor Trustee in the manner described in this paragraph, then a Trustee selected by a majority vote of the Current Income Beneficiaries shall serve as successor Trustee; provided that such appointed Trustee shall not be a beneficiary of any trust held hereunder and shall not be a person who is a "related or subordinate party" (as defined in Section 672(c) of the Code) as to any beneficiary of any trust held hereunder; provided further that the natural or legal guardian of a Current Income Beneficiary who is not *sui juris* may vote on such beneficiary's behalf.

If the remaining Co-Trustee(s), if any, or if none, the next successor Trustee or Co-Trustees designated in this Article receive a court order that they deem to be jurisdictionally proper and still currently applicable and that either (i) adjudicates an Individual Trustee incapacitated or incompetent, (ii) appoints a guardian, committee, or conservator of the person or property to act for an Individual Trustee, or (iii) determines that an Individual Trustee is unable to carry out the duties of the Trustee, then such Individual Trustee shall be deemed unable to carry out the duties of the Trustee. If there is no such court order, then the determination that an Individual Trustee has become unable to carry out the duties of the Trustee shall be made by the remaining Co-Trustee(s), if any, or if none, by the next successor Trustee or Co-Trustees designated in this Article, and in making such determination, such person(s) may rely only upon one of the following:

   (1) a duly executed, witnessed, and acknowledged written statement ("certificate") by a licensed physician (i) representing that he or she is certified by a recognized medical board and is not related by blood or marriage to any Trustee or beneficiary hereunder, and (ii) certifying that such physician has recently examined such Individual Trustee and has determined that such Individual Trustee is unable to manage property by reason of mental or physical impairment; or

11

(2)      evidence that such person(s) deem to be credible and still currently applicable that such Individual Trustee (i) has disappeared, or is otherwise unaccountably absent, or (ii) is being detained under duress where he or she is unable to manage property.

The Grantor, during her lifetime, may in her absolute discretion remove any Trustee then serving or designated to serve as Trustee, and in the case of such removal, the Grantor shall appoint or designate one or more Individual Trustees and/or Corporate Trustees as Trustee or as successor trustee, as the case may be, of all trusts held under this Trust Agreement in lieu thereof; provided, however, that such appointed Trustee or designated successor trustee shall be neither the Grantor nor a person who is a "related or subordinate party" (as defined in Section 672(c) of the Code) as to the Grantor. Notwithstanding the foregoing provisions of this Article, if, during the Grantor's lifetime, (i) a Trustee serving hereunder dies, resigns, becomes unable to carry out the duties of the Trustee, or ceases to act as Trustee for any reason whatsoever, (ii) either no successor trustee is designated pursuant to the foregoing provisions of this Article or no person who is designated as successor trustee pursuant to the foregoing provisions of this Article accepts the trusteeship within a reasonable time thereof, and (iii) no other Trustee is then serving, then the Grantor shall appoint a successor trustee to serve as Trustee of all trusts held under this Trust Agreement; provided, however, that such appointed Trustee shall be neither the Grantor nor a person who is a "related or subordinate party" (as defined in Section 672(c) of the Code) as to the Grantor.

If the Grantor should die and if Grantor's husband survives the Grantor, and if, during the Grantor's husband's lifetime, (i) a Trustee serving hereunder dies, resigns, becomes unable to carry out the duties of the Trustee, or ceases to act as Trustee for any reason whatsoever, (ii) either no successor trustee is designated pursuant to the foregoing provisions of this Article or no person who is designated as successor trustee pursuant to the foregoing provisions of this Article accepts the trusteeship within a reasonable time thereof, and (iii) no other Trustee is then serving, then the Grantor's husband shall appoint a successor trustee to serve as Trustee of all trusts held under this Trust Agreement; provided, however, that such appointed Trustee shall be neither the Grantor's husband nor a person who is a "related or subordinate party" (as defined in Section 672(c) of the Code) as to the Grantor's husband. If the Grantor should die and if the Grantor's husband survives the Grantor, and if, during the Grantor's husband's lifetime, (i) a Trustee serving hereunder dies, resigns, becomes unable to carry out the duties of the Trustee, or ceases to act as Trustee for any reason whatsoever, (ii) either no successor trustee is designated pursuant to the foregoing provisions of this Article or no person who is designated as successor trustee pursuant to the foregoing provisions of this Article accepts the trusteeship within a reasonable time thereof, and (iii) no other Trustee is then serving, then the Grantor's husband shall appoint a successor trustee to serve as Trustee of all trusts held under this Trust Agreement; provided, however, that such appointed Trustee shall be neither the Grantor nor a person who is a "related or subordinate party" (as defined in Section 672(c) of the Code) as to the Grantor's husband.

Notwithstanding anything in this Trust Agreement to the contrary, in no event shall the Grantor or the Grantor's husband serve as a Trustee of the DC 2019 IRREVOCABLE TRUST, or any trust thereof.

A successor Trustee shall have all the duties and all the powers, including discretionary powers, herein granted to the Trustee.

12

No Trustee herein named shall be required at any time to furnish any bond or other security for the faithful performance of the Trustee's duties.

## ARTICLE IX

### Trustee's Powers

The Trustee shall have the following powers, in addition to any other powers now or hereafter conferred by law, all of which shall be exercised in a fiduciary capacity in the Trustee's sole discretion, with respect to any trust created hereunder:

(1)     to open and close bank accounts (including but not limited to checking accounts, savings accounts, and certificates of deposit), brokerage accounts, and other accounts, each in the name of the trust, and to deposit and withdraw funds or other trust property to or from such accounts;

(2)     to invest and reinvest in property of any kind, real, personal or mixed, or in choses in action, or in any business, whether or not income-producing, without being limited to investments provided by law, notwithstanding that such investments may be of a speculative nature, and notwithstanding that the same may constitute leaseholds, royalty interests, patents, interests in mines, oil and gas wells or timber lands, or other wasting assets;

(3)     to buy, sell and trade in securities of any nature (including "short" sales), including puts, calls, straddles and other options, covered and uncovered, of every kind and nature, on margin or otherwise;

(4)     to sell, pledge, mortgage, convey, transfer, exchange, convert, or otherwise dispose of or grant options with respect to any and all property at any time forming a part of the trust;

(5)     to rent or lease any property of the trust (whether as lessor or lessee), even if the term of such lease extends beyond the date the trust terminates;

(6)     to cause the securities held by Trustee to be registered in the name of a nominee, in street name, or in any other form, without disclosing that the securities are held in trust;

(7)     to vote upon all securities belonging to the trust, in person or by general or limited proxy, and to become a party to any stockholders' or similar agreements in connection with such securities; and, without limitation, to consent to the reorganization, consolidation, merger, conversion, liquidation, recapitalization or other change in any entity in which the trust has an interest, to consent to the sale, mortgage or lease of the assets (or any part thereof) of such entity, to do any act or exercise any power with respect

13

to such interests or such assets, and to do any act or exercise any power with respect to any securities or other property in which the trust has an interest, including, without limitation, the exercise of conversion, subscription, purchase or other options, the deposit, surrender or exchange of securities, the execution of voting trusts and the making of agreements or subscriptions in connection therewith;

(8)    to borrow money for any purpose connected with the protection, preservation or improvement of the trust, and to give security therefor;

(9)    to make all repairs, alterations, and improvements at any time upon real property constituting property of the trust, and to build, construct and complete any buildings or other improvements upon such property, to demolish or raze existing structures or buildings upon such property, and to allocate the cost thereof between principal and income of the trust;

(10)    to foreclose, extend, assign, give partial releases from, or discharge mortgages on real estate;

(11)    to pay from the assets of the trust all proper expenses incidental to the administration of the trust;

(12)    to enforce, defend, pay, compromise, settle, or otherwise deal with any claim or demand in favor of or against the trust or the Trustee;

(13)    to employ and compensate attorneys, accountants, investment advisors, custodians, and other agents with respect to the administration of the trust;

(14)    to act hereunder, when appropriate, through an agent or attorney-in-fact;

(15)    to determine what is income and what is principal hereunder, and what costs, taxes and charges of all kinds shall be charged against income and what shall be charged against principal, even if the exercise of the power produces a result different from the result otherwise required or permitted by applicable law;

(16)    to hold property in any jurisdiction;

(17)    to make any division or distribution required or permitted under the terms hereof in kind or in money, or partly in kind and partly in money; and

(18)    to take any steps and do any acts for the due care and management of the trust.

(1)    In addition, and without limiting the foregoing, in connection with any interest in a Company or in Real Estate (each as defined below) that is contributed to the trust by the Grantor or any other person or transferred to the trust pursuant to the terms of any trust created by the

14

Grantor or any other person, the Trustee is authorized to retain, directly or indirectly, such interest and any additional interest in the Company that the Trustee may acquire.

      (2)      For purposes of this paragraph:

            (A)      "Company" shall mean a corporation, partnership, limited liability company, or other entity that is closely held and not publicly traded on a recognized securities exchange; and

            (B)      "Real Estate" shall mean real property that is leased to a Company.

      (3)      With respect to any property authorized to be retained hereunder:

            (A)      The property may be retained without regard to any requirement of diversification otherwise imposed by law or government regulation, including but not limited to Section 518.11, Florida Statutes.

            (B)      The property may be retained until the termination of all trusts created hereunder.

            (C)      The Trustee shall not be liable to any person for any depreciation or loss by or on account of such investments under any applicable prudent investor rule or otherwise.

            (D)      Nothing in this paragraph shall impair the power of the Trustee to sell the property.

            (E)      Except as otherwise expressly provided in this Trust Agreement, the Trustee shall not be required to sell or otherwise dispose of the property because it is not producing dividends, rents, profits, or other income, and the Trustee may assume that the property is of investment merit even though not producing income.

            (F)      The Trustee may presume that the management of the property should be supported, and, without impairing the power of the Trustee to vote its interest in the property in its discretion, if such interest is voted by the Trustee in favor of the management of the property or in favor of any proposals supported by management, the Trustee shall not be responsible or liable for any act of management or for any loss or decrease in the value of the property by reason of such voting.

The powers herein granted to the Trustee may be exercised in whole or in part from time to time, and shall be deemed to be supplementary to and not exclusive of the general powers of trustees pursuant to the law, and shall include all powers necessary to carry the same into effect. Without limiting the foregoing, the Trustee may act freely under all or any of the powers given to the Trustee herein in all matters concerning any trust created hereunder for the best interest of any such trust and its beneficiaries, taking into consideration all the circumstances of any particular

situation, without the necessity of obtaining the consent or permission of any persons interested therein, or the consent or approval of any court, and notwithstanding that the Trustee may also be acting individually, or as trustee of other trusts, or as agent for other persons having an interest in the same matters.

If at any time two persons are serving as Trustee hereunder, any action by the Trustee hereunder shall be by agreement of both of the persons serving as Trustee. If at any time more than two persons are serving as Trustee hereunder, any action by the Trustee hereunder shall be by agreement of a majority of the persons serving as Trustee.

In implementing any decision that has been authorized by the Trustee in accordance with the immediately preceding paragraph, any one person serving as Trustee may exercise any power granted to the Trustee under this Trust Agreement and the signature of any one of the persons serving as Trustee shall be sufficient to evidence the Trustee's authority to deposit or withdraw funds or other trust property to or from any bank accounts, brokerage accounts, or other accounts, and to purchase or sell securities. No third person dealing with the Trustee shall be under any duty to inquire as to the authority of the Trustee exercising such power under this paragraph.

## ARTICLE X

### Compensation of Trustee

For its services hereunder, any Corporate Trustee shall be entitled to receive reasonable compensation in accordance with its rate schedule in effect from time to time for the handling of an express inter vivos trust; provided, that the Corporate Trustee's rate schedule should not be used in connection with the termination of any trust hereunder, the distribution of trust assets to a beneficiary or beneficiaries, or any transfer of trust assets to a successor Trustee. In such latter cases, the fee, if any, should be based on the value of the services rendered and not on a percentage of the value of trust assets.

Any Individual Trustee may receive reasonable compensation for his or her services as Trustee as is determined by the Trust Protector, or if no Trust Protector is serving hereunder, then any Individual Trustee may receive reasonable compensation for his or her services as Trustee.

## ARTICLE XI

### Principal Place of Administration and Governing Law

The original principal place of administration of the DC 2019 IRREVOCABLE TRUST is in the State of Florida. The Trustee may transfer the principal place of administration of any trust created under this Trust Agreement (including, without limitation, the DC 2019 IRREVOCABLE TRUST), or the principal place of administration of any specific trust property, to any other jurisdiction at any time and from time to time. In connection with any such transfer of principal place of administration, the Trustee may appoint a substitute or ancillary Trustee of the trust or

specific trust property with respect to which principal place of administration was changed; provided, however, that the Grantor shall not be appointed as a substitute or ancillary Trustee. The Trustee may delegate to the substitute or ancillary Trustee, with respect to the property held by the substitute or ancillary Trustee, any or all of the powers given to the Trustee by this Trust Agreement. The Trustee may elect to act as advisor to any substitute or ancillary Trustee and may receive reasonable compensation for such advisory services. The Trustee may remove any substitute or ancillary Trustee and may appoint another substitute or ancillary Trustee (including, without limitation, the Trustee, itself) of any trust or specific trust property with respect to which principal place of administration was changed; provided that such removal and appointment may include, but shall not require, an additional change of principal place of administration; provided, however, that the Grantor shall not be appointed as a substitute or ancillary Trustee. All actions taken by the Trustee pursuant to this paragraph shall be exercised by notice in writing to the substitute or ancillary Trustee appointed or removed pursuant to this paragraph, and a copy of such notice shall be delivered to the Grantor, if living, and to the Qualified Beneficiaries of the trust, trusts or specific trust property affected by such action. Any action taken by the Trustee pursuant to this paragraph shall be exercisable by the Trustee in the Trustee's sole discretion.

All questions relating to the validity or construction of any trust created hereunder shall be determined in accordance with the laws of the State of Florida. Subject to the provisions of this Trust Agreement, all matters involving the administration of any trust created hereunder shall be governed by the laws of the jurisdiction in which the trust has its principal place of administration.


## ARTICLE XII

### Trust Protector

General. At all times that a Trust Protector is serving hereunder, such Trust Protector shall serve in accordance with the provisions of this Article. The purpose of the provisions of this Article is to build flexibility into an otherwise rigid document the provisions of which may last for many years. The Grantor includes these trust protector provisions (i) in order to more fully carry out the spirit of this Trust Agreement even in a changing legal, tax and economic environment, and (ii) to adapt the terms of this Trust Agreement to the changing circumstances of beneficiaries.

Resignation. A Trust Protector at any time acting hereunder may resign by giving written notice, sent by certified or registered mail, return receipt requested, of such resignation to the Trustee, such resignation to be effective upon a successor Trust Protector being appointed. Upon receipt of a notice of resignation of the Trust Protector, the Trustee shall promptly inform the Grantor, if she is then living; provided, however, if the Grantor is not then living and the Grantor's husband is living, the Trustee shall promptly inform the Grantor's husband.

Initial Appointment and Successors. Commencing on the date of this Trust Agreement, JUAN CARLOS GOMEZ shall serve as the initial Trust Protector of all trusts held under this Trust Agreement. Except as provided in paragraphs (d) and (e) of this Article, if JUAN CARLOS GOMEZ (or any successor to JUAN CARLOS GOMEZ appointed as provided in this paragraph, with JUAN CARLOS GOMEZ or any successor to JUAN CARLOS GOMEZ appointed as

17

provided in this paragraph being hereinafter referred to as the "Resigning Trust Protector") should die, resign, become unable to carry out the duties of the Trust Protector, or fail or cease to act as Trust Protector for any reason whatsoever, then, in that event, the Resigning Trust Protector shall have a power to appoint a successor Trust Protector to serve hereunder in the Resigning Trust Protector's place and stead by delivering a written instrument to such successor Trust Protector, if the Resigning Trust Protector is then living, or, if the Resigning Trust Protector is not then living, by the Resigning Trust Protector's last will and testament or codicil thereto making express reference to this power; provided, however, that the Resigning Trust Protector, during his or her lifetime or by the Resigning Trust Protector's last will and testament or codicil thereto, shall not have the power to appoint a successor Trust Protector who is the Grantor, a descendant of the Grantor or the Grantor's husband. Except as provided in paragraphs (d) and (e) of this Article, if the Resigning Trust Protector should die, resign, become unable to carry out the duties of the Trust Protector, or fail or cease to act as Trust Protector for any reason whatsoever, and if the Resigning Trust Protector has not appointed a successor Trustee in the manner described in this paragraph, then an individual selected by a majority vote of the Current Income Beneficiaries shall serve as successor Trust Protector; provided that such individual shall not be a beneficiary of any trust held hereunder and shall not be an individual who is a "related or subordinate party" (as defined in Section 672(c) of the Code) as to any beneficiary of any trust held hereunder; provided further that the natural or legal guardian of a Current Income Beneficiary who is not *sui juris* may vote on such beneficiary's behalf.

<u>Grantor's Power to Remove and Replace Trust Protector</u>. The Grantor, during her lifetime, may in her absolute discretion remove the Trust Protector then serving and may appoint a Trust Protector in lieu thereof; provided, however, that any such appointed Trust Protector shall be neither the Grantor nor a person who is a "related or subordinate party" (as defined in Section 672(c) of the Code) as to the Grantor. If, during the Grantor's lifetime, a Trust Protector serving hereunder dies, resigns, becomes unable to carry out the duties of the Trust Protector, or ceases to serve as Trust Protector for any reason whatsoever, then the Grantor shall appoint a Trust Protector; provided, however, that any such appointed Trust Protector shall be neither the Grantor nor a person who is a "related or subordinate party" (as defined in Section 672(c) of the Code) as to the Grantor.

<u>Grantor's Husband's Power to Remove and Replace Trust Protector</u>. If the Grantor should die and if the Grantor's husband survives the Grantor, then during the lifetime of the Grantor's husband he may in his absolute discretion remove the Trust Protector then serving and may appoint a Trust Protector in lieu thereof; provided, however, that any such appointed Trust Protector shall be neither the Grantor's husband nor a person who is a "related or subordinate party" (as defined in Section 672(c) of the Code) as to the Grantor's husband. If the Grantor should die and if the Grantor's husband survives the Grantor, then during the lifetime of the Grantor's husband if a Trust Protector serving hereunder dies, resigns, becomes unable to carry out the duties of the Trust Protector, or ceases to serve as Trust Protector for any reason whatsoever, then the Grantor's husband shall appoint a Trust Protector; provided, however, that any such appointed Trust Protector shall be neither the Grantor's husband nor a person who is a "related or subordinate party" (as defined in Section 672(c) of the Code) as to the Grantor's husband.

<u>Limitation of Liability of Successor Trust Protector</u>. Any successor Trust Protector taking office hereunder shall have no responsibility for the acts or omissions of any prior Trust Protector or Trustee, and no duty to audit or investigate the accounts or administration of any prior Trust Protector or Trustee.

<u>Trust Protector's Powers</u>. Notwithstanding any provisions of this Trust Agreement to the contrary, the Trust Protector shall have the following powers, exercise of which shall be in a written instrument executed by the Trust Protector and delivered to the Trustee:

(1) <u>Grant or Withdrawal of Powers of Appointment</u>. The Trust Protector is authorized, in the Trust Protector's sole discretion, with respect to all or any part of any trust created under this Trust Agreement, including a trust created by division of an existing trust, to take any of the following actions:

(A) to create in a beneficiary or in a descendant of a beneficiary (hereinafter, "Potential Power Holder") a general power of appointment within the meaning of Section 2041 of the Code (including a power the exercise of which requires the consent of the Trust Protector) that may dispose of the trust property upon the Potential Power Holder's death;

(B) to limit a general power of appointment of a Potential Power Holder as to all or part of such property at any time prior to the Potential Power Holder's death by narrowing the class to whom the Potential Power Holder may appoint the property subject to the power of appointment, and by so doing convert such power into a limited power of appointment;

(C) to eliminate such power for all or any part of such property as to which such power was previously created by a Trust Protector; and

(D) irrevocably to release the right to create, limit or eliminate such power.

In authorizing such action, the Grantor intends but does not direct that a general power of appointment be in effect if and when the Trust Protector believes the inclusion of the property affected thereby in the gross estate of a Potential Power Holder may achieve significant savings in (a) transfer taxes, by having an estate tax rather than a generation-skipping transfer tax imposed on the property subject to the general power, which may also permit a greater use of the Potential Power Holder's exemption from generation-skipping transfer tax provided under Section 2631 (a) of the Code, or (b) income taxes. Any testamentary general power of appointment under the provisions of this subparagraph may be granted by the Trust Protector in whole or in part as a formula so that it extends over no more than that amount of property needed to minimize the overall tax burden of the trust, its beneficiaries, and their spouses and descendants. In authorizing the grant of a power of appointment by the Trust Protector, the Grantor intends but does not direct that any general power of appointment be limited to the creditors of the estate of Potential Power Holder.

19

(2)     Authority to Terminate Trust(s).  The Trust Protector is authorized, in the Trust Protector's sole discretion, to terminate one or more of the trusts established under this Trust Agreement, in whole or in part, on one or more occasions, without treating each trust similarly.  Upon such termination all affected property of the trust shall be distributed free of trust to the person or persons then entitled to receive the income thereof (but as if each spouse of a Potential Power Holder was deceased) and in the shares provided for the distribution of income as if the Trustee exercised all discretionary provisions for the distribution of income upon the principle of right of representation.  In authorizing such action it is the Grantor's intention, but not direction, that the Trust Protector have the power to terminate one or more trusts established under this Trust Agreement if: (i) the federal estate tax and federal generation-skipping transfer tax are no longer in effect; (ii) such taxes have been repealed; (iii) there are no tax advantages for the continuation of such trusts; and (iv) such termination is in the best interests of the Current Income Beneficiaries.

(3)     Change in Principal Place of Administration.  The Trust Protector may exercise, in the Trust Protector's sole discretion, one or both of the following powers: (i) to transfer the situs of any trust to another state or country, and change the principal place of administration to that jurisdiction, and (ii) to change the law governing the trust to the internal law of the jurisdiction of the situs, if it contains the principal place of trust administration. These powers may be exercised on more than one occasion.

(4)     Power to Amend Trust.  The Trust Protector may, in the Trust Protector's sole discretion, amend any provision of any trust to which the Trust Protector is serving as Trust Protector to:

(A)     alter the administrative and investment powers of the Trustee;

(B)     modify the trust administrative provisions relating to the identity, qualifications, succession, removal, and appointment of the Trustee;

(C)     reflect tax or other legal changes that affect trust administration; and

(D)     correct ambiguities, including scrivener errors that might otherwise require court construction or reformation.

An amendment made by the Trust Protector in good faith will be conclusive on all persons interested in the trust and the Trust Protector may not be held liable for the consequences of any amendment or for not having amended the trust. An amendment to any trust must be made in a written instrument signed by the Trust Protector. The Trust Protector must deliver a copy of the amendment to the beneficiaries and the Trustee.

(5)     Power to Break Deadlocks, Etc.  The Trust Protector may, in the Trust Protector's sole discretion, break any deadlock between co-trustees.

(6)     Compensation.  The Trust Protector may be entitled to reasonable compensation in connection with the Trust Protector's services hereunder.  At such time

20

that a professional such as an attorney or accountant serves as the Trust Protector, it is anticipated that the Trust Protector's compensation will be the normal hourly rate charged by such professional. In addition, the Trust Protector shall be entitled to reimbursement for reasonable costs and expenses incidental to serving as Trust Protector. Serving in the capacity of Trust Protector does not prevent the Trust Protector from also providing legal, investment, or accounting services on behalf of the trust or the trust beneficiaries. If the Trust Protector is providing professional services to the trust, the Trust Protector is entitled to charge its normal and customary fees for services rendered or to be rendered and in addition is entitled to be compensated for its services as Trust Protector.

(7)     Release of Powers.  The Trust Protector acting from time to time on the Trust Protector's own behalf and on behalf of all successor Trust Protectors, may at any time irrevocably release, renounce, suspend, or modify to a lesser extent any or all powers and discretions conferred under this Trust Agreement by a written instrument delivered to the Trustee of the trust for which the release, renunciation, suspension or modification is to apply.

(8)     Fiduciary Duty and Indemnification.  A Trust Protector is a fiduciary hereunder. The Trustee shall, to the extent of and solely from the assets of the trust, indemnify the Trust Protector for all losses, costs, damages, expenses and charges, public and private, including reasonable attorneys' fees, including those arising from all litigation, groundless or otherwise, that result from the performance or non-performance of the powers given to the Trust Protector under this Trust Agreement (unless the Trust Protector has acted in bad faith as proven by clear and convincing evidence).

(9)     Agents and Advisers.  The Trust Protector is authorized to hire agents and advisers to assist the Trust Protector in carrying out its duties, and to pay such agents and advisers reasonable compensation.

(10)    Not a General Power of Appointment: Limitations.  Notwithstanding any other provision in this Trust Agreement to the contrary, the Trust Protector shall not participate in the exercise of a power that would cause the Trust Protector to possess a general power of appointment within the meaning of Sections 2041 and 2514 of the Code.  Specifically, the Trust Protector m ay not use these powers for the Trust Protector's personal benefit, or for the discharge of the Trust Protector's financial obligations. In addition, notwithstanding any other provision of this Trust Agreement to the contrary, the Trust Protector shall not exercise any power or discretion conferred hereunder that would cause any portion of the trust to be included for federal tax purposes in the Grantor's estate, in the estate of any beneficiaries (other than the grant of a power of appointment to a beneficiary for GST purposes), or in the estate of the Trust Protector or any fiduciary hereunder.

(11)    No Duty to Monitor.  The Trust Protector does not have a duty to monitor any trust created under this Trust Agreement in order to determine whether any of the powers and discretions conferred under this Trust Agreement on the Trust Protector should be exercised.  Further, the Trust Protector does not have a duty to keep informed as to the acts or omissions of others, including without limitation the Trustee or the beneficiaries, or

to take any action to prevent or minimize loss. Any exercise or non-exercise of the powers and discretions granted to the Trust Protector are in the sole and absolute discretion of the Trust Protector, and are binding and conclusive on all persons. The Trust Protector is not required to exercise any power or discretion granted under this Trust Agreement.

(12)   <u>Right to Examine</u>.  The books and records of any trust created under this Trust Agreement, including all documentation, inventories, and accountings, are to be open and available for inspection by the Trust Protector at all reasonable times.

## ARTICLE XIII

### Spendthrift Provision

The interest of any beneficiary under this Trust Agreement in either income or principal, may not be anticipated, alienated, or in any other manner assigned by the beneficiary, either voluntarily or involuntarily, and will not be subject to any legal process, bankruptcy proceedings, or the interference or control of the beneficiary's creditors or others.

## ARTICLE XIV

### Definitions

Throughout this Trust Agreement, unless otherwise specifically provided, the following terms shall have the meanings set forth below:

"Code" shall mean the Internal Revenue Code of 1986, as amended, or any statute of similar import.

"Corporate Trustee" shall mean any person that is not a natural person and that is acting as Trustee hereunder.

"Current Income Beneficiary" shall mean, on the date of determination, any then permissible distributee of income from any trust held under this Trust Agreement.

"Current Income Beneficiaries" shall mean, on the date of determination, each and every Current Income Beneficiary.

"Division Date" shall mean the later of (1) the date of death of the Grantor, (2) the date that the youngest then living child reaches the age of 35 years, or (3) the date that none of the Grantor's children are then living.

"Grantor's children" shall mean only F H D C A H D C , and G H D C

"Grantor's descendants" or any similar reference shall mean only the Grantor's children and the descendants of the Grantor's children.

"Incapacitated Person" shall mean a minor, a person who is under a current adjudication of incapacity or incompetency by a court of competent jurisdiction, or any other person who is determined by the Trustee to be unable to manage property by reason of mental or physical impairment. In making such determination, the Trustee may but shall not be required to rely upon the written medical opinion of one or more licensed physicians (who may but need not include such person's primary physician).

"Individual Trustee" shall mean any natural person that is acting as Trustee hereunder.

"Person" (whether or not capitalized) shall mean not only a natural person but also any corporation, partnership, joint venture, trust, or other entity or business organization.

"Personal Representative" shall mean the person or persons appointed by the court to administer the estate of the person specified, acting in such capacity, including without limitation any ancillary Personal Representative.

"Qualified Beneficiaries" shall mean qualified beneficiaries as defined in Section 736.0103(16), Florida Statutes.

"Trustee" shall mean any person or persons named as Trustee hereunder, when acting in such capacity.

"Trust Protector" shall mean any person or persons named as Trust Protector hereunder, when acting in such capacity.

"Withdrawal Beneficiary" shall mean each of the Grantor's children. "Withdrawal Beneficiaries" shall mean more than one Withdrawal Beneficiary.

"Withdrawal Right" shall mean the right to withdraw and appoint referred to in paragraph (a) of Article VI of this Trust Agreement of a Withdrawal Beneficiary who (i) is living on the date of the contribution to which the Withdrawal Right relates and (ii) has not been excluded from exercising a Withdrawal Right with respect to such contribution.

## ARTICLE XV

### Miscellaneous

When, pursuant to the terms of this Trust Agreement, trust assets are to be divided into shares for a person's then living descendants, per stirpes, those trust assets shall first be divided into equal shares to provide one share for each then living child of such person and one share collectively for the then living descendants of a deceased child of such person. The share of each deceased child

shall be further divided among his or her descendants on a per stirpes basis by reapplying the preceding rule to that deceased child and his or her descendants as many times as necessary.

For all purposes under this Trust Agreement, an adopted child shall be regarded as a natural born child of the adopting parent.

For purposes of determining under this Trust Agreement whether a child is living on any given date, a child in gestation on such date shall be deemed to be living on such date if such child is later born alive.

For purposes of this Trust Agreement, except where the context indicates otherwise, the term "paragraph" shall refer to items with designations such as "(a)"; the term "subparagraph" shall refer to items with designations such as "(1)"; the term "section" shall refer to items with designations such as "(A)"; the term "subsection" shall refer to items with designations such as "(i)"; the term "part" shall refer to items with designations such as "a."; and the term "subpart" shall refer to items with designations such as "1."

For purposes of this Trust Agreement, all statutory references shall include any successor statute or other statute of similar import.

Reference in this Trust Agreement to any gender includes either masculine or feminine, as appropriate, and reference to any number includes both singular and plural where the context permits or requires.

Any notice that is required or that may be given under this Trust Agreement shall be in writing and, unless a later date is specified in such notice, shall be deemed to have been duly given when received, if personally delivered; the day it is sent, if sent by electronic mail; the day after it is sent, if sent by recognized overnight delivery service; and three (3) days after it is sent if mailed, first class United States mail, postage prepaid.

For purposes of this Trust Agreement, references to "Last Will and Testament," "will," and any similar term shall include all codicils thereto.

*[Signature Pages Follow]*

24

IN WITNESS WHEREOF, the Grantor and the Trustee have executed this Trust Agreement on this 22 day of February, 2019.

OLYMPIA DE CASTRO

"GRANTOR"

The foregoing Trust Agreement was executed, published, and declared by OLYMPIA DE CASTRO, as Grantor, in the presence of us, the undersigned, who, at the Grantor's request, in her presence and in the presence of each other, have hereunto subscribed our names as witnesses on this 22 day of February, 2019.

Sign:
Print: Napoleon Villacis

Sign:
Print: Victoria Millac

25

Witnesses as to Trustee:

Sign:
Print: _____ Napoleon Villacis

Sign:
Print: _____ Victoria Millac

Witnesses as to Allison Domeneghetti

ALLISON DOMENEGHETTI

"TRUSTEE"

26

## SCHEDULE A

SCHEDULE OF PROPERTY TRANSFERRED PURSUANT TO THE FOREGOING TRUST AGREEMENT BETWEEN OLYMPIA DE CASTRO AS GRANTOR, AND ALLISON DOMENEGHETTI AS TRUSTEE.

$10.00

Approved on this 22 day of February 2019.

_____

OLYMPIA DE CASTRO

"GRANTOR"

_____

ALLISON DOMENEGHETTI

"TRUSTEE"