UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 18-CR-20685-WILLIAMS

UNITED STATES OF AMERICA

v.

GUSTAVO ADOLFO HERNANDEZ FRIERI,

      Defendant,

_____/

MARIA LUCIA HERNANDEZ,
GRAMERCY IRREVOCABLE OPERATING TRUST,
AMERICAS FIDUCIARY LTD.,
3 GRAMERCY PARK WEST LLC, and
HH MASTER SETTLEMENT TRUST,

      Third-Party Petitioners.

_____/

**RESPONSE TO MOTION TO DISMISS AND, IN THE ALTERNATIVE,
PETITIONERS' MOTION FOR LEAVE TO AMEND**

      Petitioners, MARIA LUCIA HERNANDEZ, GRAMERCY IRREVOCABLE OPERATING TRUST, AMERICAS FIDUCIARY LTD., 3 GRAMERCY PARK WEST LLC, and HH MASTER SETTLEMENT TRUST, through undersigned counsel, hereby respond in opposition to the Government's Motion to Dismiss (D.E. 424), which should be denied. Petitioners request, in the alternative, leave to amend their petition to cure any perceived pleading defect, and further state as follows:

      In moving to dismiss the Petition, the Government asserts an interpretation of the forfeiture and ancillary hearing laws and rules that would unconstitutionally deny

any participation in the process by parties whose right to notice and hearing regarding the deprivation of their valid legal interest is protected under the Fifth Amendment's Due Process Clause.  The forfeiture laws and implementing rules do not support the Government's interpretation, nor does relevant precedent.  Further, the Government's motion is premature, and should await the summary judgment stage or the ancillary hearing, in that it rests on unresolved fact-bound questions pertaining to standing that are inextricably linked to merits resolution of the Petition's claim that voiding Petitioners' transfer of interests in interests in 3 Gramercy Park West LLC ("3GPW LLC") that funded the purchase of 314 Hicks Street would result in a constructive trust or equitable lien in favor of Petitioners.  Importantly, the Government's motion focuses only on one theory of the voiding of the transfer (a theory the Government wrongly presupposes requires a finding of wrongdoing by the Petitioners), but does not directly dispute that the Petitioners *would* have a constructive trust or equitable lien interest in 314 Hicks Street if the Government successfully challenges merely *as unauthorized* the transfer made by Petitioners to DC 2019 Irrevocable Trust ("DC Trust") in February 2019 that largely funded the purchase of 314 Hicks Street.

Even as to the potential voiding of an *authorized* transfer by the Petitioners—which the Government theorizes would also imply that the Petitioners actually are not "other than the Defendant" and that they therefore lack standing—the Government's attempt to exclude Petitioners from participation in the case (including so that they can prove that they are independent of the Defendant) is contrary to precedent holding that questions of standing must ordinarily await an opportunity for a claimant to fairly litigate the matter at an evidentiary hearing.  Because in this case Petitioners will show, as their principals have sworn in support of the petition, that

2

they are "other than the Defendant" and that it would be unjust if voiding the underlying transfer resulted in forfeiting of their interest, the Government's motion to dismiss should be denied.

**I.     The Petition Properly Asserts, under 21 U.S.C. § 853(n)(3), the Nature and Extent of the Petitioners' Interest in the Property, the Time and Circumstances of Petitioners' Obtaining Their Interest, and the Relevant Facts Supporting Their Claim for Constructive Trust Relief.**

The Government argues that Petitioners have not alleged facts showing a confidential relationship between the transferor (Petitioners) and the transferee (DC Trust); an implied promise that the transferred property (which conveyed ownership of the predecessor real estate, the Gramercy apartment) would be used to further the purposes for which the Petitioner trusts and 3GPW LLC were established; and that the dispossession of trust assets if the transfer were voided would be unjust.

The allegations of the Petition (D.E. 418) readily refute the Government's argument.  The Petition sets forth detailed allegations that:

- the property transfer was undertaken with the understanding and agreement that the parties to the transaction were seeking to "effect trust purposes" and preserve the value of family trust assets, as explained an affidavit of Maria Lucia Hernandez appended to the Petition (D.E. 418 at 5);

- the "events and funding [of Petitioner's transferred interest] predate, and are unrelated to, any occurrence for which a claim of forfeitability could be asserted," as set forth both in the body of the Petition and in appended documents, the authenticity of which the government concedes (*id*.);

- Petitioners, including lawfully formed entities, and not the Defendant, were the

owners of the property interest and thus claim a constructive trust (*id*. at 6–7);

- Petitioner Maria Lucia Hernandez was the sole real-person beneficiary of the trust interests at the time of the transfer (*id*. a 6);

- as the Government previously conceded, Hernandez "family's trusts" held ownership interests in the Gramercy apartment (*id*. at 8); and

- under all relevant considerations of fairness and equity, a constructive trust should be imposed or equitable lien found if the government's effort to cancel and void the transfer of the membership interests to the DC Trust were successful, including under the government's theory that where "property of another is acquired under circumstances where authority was lacking for the transfer, ... the transfer by which acquisition occurred is deemed invalid," because such a taking would be unjust and "reversion of the interest to the putative transferor and residual owner" is required (D.E. 418 at 3).

Petitioners have alleged facts that clearly show a relationship of trust and special circumstances in the transfer of 3GPW LLC interests to the DC Trust in order to continue the trust purposes that Petitioners were serving in their acquisition and ownership of the Gramercy apartment. *See Lamm v. State Street Bank and Trust*, 749 F.3d 938, 951 (11th Cir. 2014) (explaining that a fiduciary duty claim rests on allegations of "a relationship of 'trust and confidence' or 'special circumstances'"); *see* D.E. 418 at 9 (Petition alleges that transfer was made in furtherance of original trust purposes, which encompassed trustor's original intention).

"State law determines the nature of a claimant's interest in forfeited property." *United States v. Henry*, 621 Fed.Appx. 968, 972 (11th Cir. 2015); *see also United*

*States v. Shefton*, 548 F.3d 1360, 1364 (11th Cir. 2008) (applying state law to determine nature of claimant's constructive trust interest in ancillary proceeding); *United States v. Ramunno*, 599 F.3d 1269, 127 (11th Cir. 2010)("Georgia law determines ... whether [the ancillary petitioner] is entitled to a constructive trust.").

New York law governing constructive trusts for transfers involving New York real estate provides that a constructive trust may be imposed "[w]hen property has been acquired in such circumstances that the holder of the legal title may not in good conscience retain the beneficial interest." *Beatty v. Guggenheim Exploration Co.*, 225 N.Y. 380, 386 (N.Y. 1919). New York courts ordinarily consider four requirements for imposition of a constructive trust: (1) a confidential or fiduciary relation, (2) a promise, (3) a transfer in reliance thereon and (4) unjust enrichment. *See Sharp v. Kosmalski*, 40 N.Y.2d 119, 121, 351 N.E.2d 721, 723 (1976) (and cases string-cited therein). Under New York law, however, the relationship of trust need not be a formal one, but may arise out of the special circumstances or familial relationship. *Id.* ("Most frequently, it is the existence of a confidential relationship which triggers the equitable considerations leading to the imposition of a constructive trust [and] [a]lthough no marital or other family relationship is present in this case, such is not essential for the existence of a confidential relation.").

The record of events set forth in detail in the Petition "clearly indicates that a relationship of trust and confidence did exist between the parties." *Id.* And the allegations of the Petition establish that this relationship of trust specifically extended to express and implied promises by DC Trust and related persons that the transferred property would be preserved for the purposes intended by the Petitioner trusts.

Further, under New York law, a constructive trust may be imposed "[e]ven without an express promise" by the transferee to hold the property in trust. *Id*. New York courts have concluded that "a promise may be implied or inferred from the very transaction itself." *Id*. at 122, 351 N.E.2d at 723 (citing and quoting Justice Cardozo, in *Sinclair v. Purdy*, 235 N.Y. 245, 254, 139 N.E. 255, 258 (N.Y. 1923), a decision he authored as a Judge of the New York Court of Appeals, for the proposition that "Though a promise in words was lacking, the whole transaction, it might be found, was 'instinct with an obligation' imperfectly expressed.") (internal citations omitted).

> In deciding that a formal writing or express promise was not essential to the application of the doctrine of constructive trust, Judge Cardozo further observed in language that is most fitting in the instant case:
>
> > "Here was a man transferring to his sister the only property he had in the world * * * He was doing this, as she admits, in reliance upon her honor. Even if we were to accept her statement that there was no distinct promise to hold for his benefit, the exaction of such a promise, in view of the relation, might well have seemed to be superfluous."

*Sharp v. Kosmalski*, 40 N.Y.2d at 122, 351 N.E.2d at 72–24 (quoting *Sinclair*, 235 N.Y. at 254, 139 N.E. at 258).

The thrust of the Government's argument for dismissal is that a constructive trust cannot be imposed as to property that was the subject of a transfer later found to be void in litigation involving the transferee. Not only is there no authority cited by the Government to support that proposition, but the question of weighing of the equities on which the Government's theory relies is one that is particularly unsuited for resolution at the motion to dismiss stage. Petitioners have pled their good faith

endeavor to transfer property in reliance express and implied understandings and commitments consistent with Petitioners' trust goals.  Whether as to all or any part of the transfer questions of equity might limit the imposition of the constructive trust requires full development of the record; equity requires just that type of fact intensive analysis, as does case law regarding the Government's primary factual assertion that Petitioners lack standing.  *See United States v. Henry*, 621 Fed.Appx. 968, 972 (11th Cir. 2015) ("We have explained district judges 'cannot decide disputed factual questions or make findings of credibility essential to the question of standing on the paper record alone but must hold an evidentiary hearing.' *Bischoff v. Osceola Cnty., Fla.*, 222 F.3d 874, 879 (11th Cir. 2000); *see also id.* at 881–82 (determining the district judge improperly weighed conflicting affidavits to determine the plaintiffs lacked standing).  Instead, 'a district court should resolve disputed factual issues either at a pretrial evidentiary hearing or at trial.' *Id.* at 879.").

Further, the Government does not address the question of whether a constructive trust or equitable lien may apply to part of the property, on a pro rata basis, even if some part of the property is deemed forfeitable.  *See Ramunno*, 599 F.3d at 1275 n.3 ("If [petitioner] Martin received a constructive trust limited to his pro-rata share of the forfeited assets, the potential unfairness to the other fraud victims would appear to be eliminated.").  New York law governing equitable liens, following closely the relationship-and-reliance principle of constructive trust doctrine, and consistent with the pro-rata analysis in *Ramunno*, provides that where part of the consideration for the acquisition of property is at issue, an equitable lien applies to at least that part funded by the plaintiff or petitioner.  *See Leary v. Corvin*, 181 N.Y. 222,

227, 73 N.E. 984, 985 (1905) (lien may be either "of the whole consideration, or of some aliquot part thereof, or for the value of some particular estate in the premises conveyed").

Dispositively, for purposes of resolution of the motion to dismiss, the Government's argument rests on factual assumptions that go well beyond the scope of the Petition itself, which does not assume intentional misconduct by the transferees or the transferors.  As the Eleventh Circuit has held, a court considering a Rule 12(b) motion to dismiss is generally limited to the facts contained in the complaint and attached exhibits, including documents referred to in the complaint that are central to the claim.  *See Wilchombe v. TeeVee Toons, Inc.*, 555 F.3d 949, 959 (11th Cir. 2009); *Maxcess, Inc. v. Lucent Technologies, Inc.*, 433 F.3d 1337, 1340 (11th Cir. 2005).

The Petition pleads "factual content that allows the court to draw the reasonable inference that" Petitioners' claim is facially plausible.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  The Government's speculation that *any* set of facts that results in voiding the transfer of interests in 3 GPW LLC will cast a negative light on one or more of the Petitioners (and thus impede constructive trust or equitable lien relief) is premature and goes beyond the scope of the Petition's allegations and supporting exhibits.

The Supreme Court's standard for a complaint's sufficiency was articulated in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Iqbal*, 556 U.S. 662.  In *Twombly*, which involved allegations of an antitrust conspiracy by telephone companies, the Supreme Court explained it does "not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that moves from conceivable to plausible."  550 U.S. at 570 (plausibility gauged on the "face" of the

complaint not in light of competing facts offered by opposing party).

The trust-to-trust transfer in this case, explained in detail in the Petition as having been effected to best preserve and continue the trust purposes of the original acquisition of the predecessor real estate, falls clearly within the scope of constructive trust and equitable lien doctrines under New York law.  If the transfer were to be voided in this case, Petitioners merit the opportunity to prove that equity compels a constructive trust or equitable lien as to all or part of the forfeited asset.  Petitioners have alleged specific facts and circumstances that "raise a reasonable expectation" that litigation of the claims will establish their validity, thereby stating plausible claims. *Twombly*, 550 U.S. at 556.

## II.     The Government Fails to Acknowledge the Scope of its Effort to Void the Property Transfer by Petitioners and Assumes Erroneously That *Any* Voiding of the Transfer Would Bar Imposing a Constructive Trust Despite the Family Trust Relationship on Which the Transfer Was Premised.

Rather than address the full panoply of the claims it has already made in this case for voiding the transfer from Petitioners to DC Trust, the Government supposes in its motion that there could be only one possible means of voiding the transfer: the Government's theory that transfer was a fraudulent conveyance *by the Defendant* to avoid *his* creditors.  Gov't Mtn. 12–13.  But the Government has not *expressly* abandoned its other theories for voiding the transfer, *see*, *e.g.*, D.E. 344 at 11; thus it should not be permitted at the motion to dismiss stage to simply predict that it will collapse its other voiding theories into the theory of a *fraudulent conveyance by the Defendant*.  Unless the Government affirmatively abandons its other voiding theories, it should not maintain the pretense that it has no such other challenges to the transfer.

There are multiple problems with the Government's focus on a narrow subset of the possible grounds for voiding the transfer.  The Government's argument both reads the concept of fraudulent conveyance too broadly even as it too narrowly describes its own arguments for voiding the transfer.  First, the Government cites no authority for the proposition that a conveyance that is *deemed* fraudulent (in whole, or more importantly, in part) due to timing or partial interests of a debtor necessarily implies any intentional misconduct by anyone—much less a person other than the debtor (i.e., the Defendant in this case).  Thus, if the transfer by Petitioner is deemed a fraudulent conveyance for purposes of forfeiture proceedings because the Defendant is somehow found to have a *partial* interest in the transferred property, that still would not make it inequitable for the remaining interests in the transferred property to be restored to the primary owners (e.g., Petitioners in this hypothetical).  They did nothing wrong (nor did the Defendant necessarily) in making such a transfer, even if, due to its timing when a creditor's claim was pending, the timing of the transfer causes it to be *deemed* a fraudulent conveyance.  *See* Gov't Mtn. at 13 (adopting the timing theory for deeming a conveyance as fraudulent under *Durrant v. Kelly*, 186 A.D.2d 237, 238 (N.Y. 2d Dep't 1992)).  Thus, even in that worst-case voiding context, the government's premise that equity would not sustain Petitioners' constructive trust or equitable lien interest founders on the Government's failure to cite any authority that it would be inequitable to figuratively 'throw the baby out with the bath water,' simply due to a timing-based determination of fraudulent conveyance based on a mere partial interest by the Defendant.

Apart from misinterpreting the effect on equity of a timing-based voidance of

a transfer due to a partial interest by a debtor, the Government's contention is a strawman argument that assumes that at the end of the ancillary proceeding, no matter what the facts show, the Court will view everything in exactly the untoward manner the Government wants and view Petitioners in a negative light.  Unfortunately for the Government, reality intervenes in litigation.  And as to these Petitioners, it is clear that: (a) their Petition is not limited to, much less focused on, voiding of the transfer *on a fraudulent conveyance theory*, but rather on voiding of the transfer for any of the (largely technical) theories asserted by the Government in its Motion for Fourth Preliminary Order of Forfeiture (D.E. 344); and (b) even if, absent their right of participation (which is what the Government seeks to foreclose), the Government were to obtain a ruling in favor of a fraudulent conveyance theory, that would not foreclose a constructive trust; in fact, it would, given the allegations of good faith and ownership by Petitioners, *necessitate* the equivalent of a constructive trust and would afford Petitioners the independent right to show that they are innocent of any fraud and that their rights may not be foreclosed absent their participation in the litigation.

The Government's arguments for voiding the transfer to DC Trust go well beyond merely claiming a fraudulent conveyance.  The Government ignores many of its previous accusations about the trust arrangement under which the Gramercy apartment was owned and how those interests were transferred to DC Trust.  *See* D.E. 344 at 11 (arguing that the transfer had "*no authorization* from Gramercy Irrevocable Operating Trust, which had been the sole member of 3 Gramercy Park West, LLC"; that "trust documents also do not support Maria Lucia Hernandez's *authority to act*"; and that "distribution of the estate of the HH Master Settlement Trust was to be

11

*conducted upon his death and by the trustee*, which is identified as Americas Fiduciary Limited") (emphasis added).

If any of those authority-to-act arguments by the Government in the forfeiture proceedings are successful in voiding Petitioners' transfer of interests in 3 Gramercy Park West, there would be no basis in equity to deny the imposition of a constructive trust in favor of the Petitioners, who are other than the defendant.  If, instead, the Government is abandoning all authority-to-act challenges to the transfer of LLC interests, and is relying solely on the fraudulent conveyance theory that rests on the premise that Petitioners are not other than the Defendant, then the case should go forward to resolve that factual dispute.  The Petitioners have a constructive trust or equitable lien interest in 314 Hicks Street arising from the Government's effort to establish that the transfer made by these Petitioners to the DC 2019 Irrevocable Trust in February 2019 that funded the purchase of 314 Hicks Street was not formally authorized by one or more of the Petitioners.

The Government concedes that a constructive trust claim is a valid basis to petition for relief from a criminal forfeiture action.  Gov't Mtn. at 7.  The Government should likewise concede that if the transfer in this case is determined to be void—solely because of a Government argument as to *how* the transfer was made (i.e., by means of the express authorization of the sole ultimate beneficiary of the transferor trust, without objection by trustee)—then a constructive trust must be imposed as to 314 Hicks Street, the repository of the transferred asset's proceeds.  If, instead, the Government has essentially abandoned the argument of *technical* voidability of the transfer, it should now say so or otherwise be estopped to contest the formal validity

of the transfer itself.  In any event, even under the Government's narrow concept of a fraudulent conveyance theory for voiding the transfer to DC Trust (and thereby defeating the separate petition filed by DC Trust and related persons), the instant Petitioners have a right to petition to vindicate their interests.

**III.   The Government's Premature Claim That Petitioners Are Nominees of the Defendant and Thus Lack Standing Are Clearly Fact-bound and Beyond the Scope of the Petition's Allegations.**

The Government's related dismissal arguments contesting Petitioners' standing (Gov't Mtn. at 9–12) are limited to the fraudulent conveyance contention and likewise ignore the Government's own prior arguments for voiding the transfer by Petitioners that resulted in the purchase of 314 Hicks Street.  The standing arguments made by the Government entirely overlap and would render irrelevant the Government's fraudulent conveyance arguments.  In other words, if the Government succeeds in showing that Maria Lucia Hernandez and the other Petitioners in this case are not "other than the defendant," then the further question of whether the transfer was a fraudulent conveyance does not matter, because in that event, Petitioners would lack standing to make *any* claim at all.  But the Petitioners have credibly alleged the opposite of the government's contention; and, as the allegations of, and documents appended to, their Petition reveal, Petitioners clearly are *other* than the Defendant. Further, a post-hoc voiding of the transfer for any reason other than a finding that Petitioners are actually the Defendant would not implicate impropriety by the Petitioners and thus would not preclude a finding that equity supports imposing a constructive trust.

Every allegation in the Petition is to the contrary of the Government's claim

that they are not other than the Defendant.  The Petition's allegations are supported by documents the authenticity of which the Government has not challenged in any way.  Thus, the Government's standing claim is, at a minimum, premature.  The Eleventh Circuit has "explained [that] district judges 'cannot decide disputed factual questions or make findings of credibility essential to the question of standing on the paper record alone but must hold an evidentiary hearing.'"  *United States v. Henry*, 621 Fed.Appx. 968, 972 (11th Cir. 2015) (quoting *Bischoff v. Osceola Cnty., Fla.*, 222 F.3d 874, 879 (11th Cir. 2000)).  In *Bischoff*, the Eleventh Circuit found the district judge improperly weighed conflicting affidavits to determine that the plaintiffs lacked standing, *see* 222 F.3d 881–82, and concluded that "a district court should resolve disputed factual issues either at a pretrial evidentiary hearing or at trial."  *Id.* at 879.

In the present case, the Government asks that the Court reject, before any hearing, the evidence and affidavits supporting Petitioner's constructive trust claim, in favor of evidence the Government presented in the criminal case in which Petitioners were not a party, thus going beyond even the impropriety in *Bischoff*.

The Government may be free to argue standing once it establishes any facts that undermine the allegations of the Petition.  But until that happens, the filing of a motion to dismiss arguing that the Court should simply assume that the Government will disprove the allegations of Petitioners as to their standing is not a valid basis for a motion to dismiss.  Although the Government concedes that the allegations of the Petition must be taken as true, Gov't Mtn. 6 (citing Fed. R. Crim. P. 32.2(c)(1)(A)), the Government pays little attention to its own concession of that principle, raising factual disputes designed solely to lay groundwork for future stages of the case.  Most importantly, it is not clear exactly what the Government will argue to void the transfer and its prediction about one possible outcome is not enough at this point.

III.   **The Government's Remaining Claims Regarding the Form or Style of the Verification Page Signed by the Director of the Sole Trustee as Well as by the Sole Person Holding a Beneficial Interest in the Petitioner Trusts Are Unfounded and Speculative and Ignore the Nature of an Oath Which must Be Made by a Real Person.**

The Government' technical arguments for dismissal defy the record, ignore the content of the petition and its appended documents (which the Government apparently concedes are authentic), misstate requirements for presentation of a third-party claim, and raise factual matters that cannot be reached at the motion to dismiss stage and must await the ancillary hearing.   First, the Government claims that it is "unclear" whether the persons who attested to the factual truth of the allegations in the petition are the correct persons to assert the claim, even though all of the allegations of the Petition and the documents incorporated by attachment into the Petition show clearly that the authorized persons verified the Petition.   Gov't Mtn. at 7 ("Maria Lucia Hernandez is one of the Second Petitioners, and can verify for her herself.   However, it is unclear whether she or Timothy D. Richards have authority to execute on behalf of any of the other Second Petitioners.").

The Government cannot fairly dispute that the sole trustee for the Petitioner trusts (whom the Government itself has previously identified *by name*, *see* D.E. 344 at 11) is Americas Fiduciary Ltd., the Director of which is signatory Timothy D. Richards.   *See* D.E. 418 at 6 (identifying Timothy D. Richards as the authorizing principal for the Petitioner Americas Fiduciary Limited, as to both of the Petitioner trusts); *id*. at 31 (Mr. Richards, Director of Americas Fiduciary Ltd., signs acceptance of status as trustee for Gramercy Irrevocable Operating Trust); *id*. at 49 (Mr. Richards, Director of Americas Fiduciary Ltd., signs acceptance of status as trustee for

15

Gramercy Irrevocable Operating Trust); *id*. at 93 (Mr. Richards, Director of Americas Fiduciary Ltd., signs for Gramercy Irrevocable Operating Trust as sole member/owner of 3 Gramercy Park West LLC). Indeed, the very premise of the Government's claim that Maria Lucia Hernandez should not have been the signatory for the Gramercy transfer was that Americas Fiduciary Ltd. (i.e., Mr. Richards) should have signed the authorization. D.E. 344 at 11.

The record clearly shows a prima facie basis that all of the entity petitioners fall within the scope of the signatory authority of Mr. Richards. And to the extent the Government claims any dissolution of any of the trust entities, the sole beneficiary, Maria Lucia Hernandez, would retain sufficient interest in the winding up of the assets to sign for the trusts as well. The Government argues that the authority of the signers of the verification page of the Petition should be listed in the form of a title under the signature line of the verification. But there is no precedent for imposing such a form-over-substance requirement for the verification page, where the Government's own representations establish the trustee role of Petitioner Americas Fiduciary Ltd., the trust's ownership of the member interests at the time of transfer to DC Trust in 2019, and the clear authority of even dissolved entities, such as 3 GPW LLC to litigate on matters that wind up its affairs.

The Government mistakenly suggests that the dissolution of the company last year foreclosed Petitioner GPW LLC's right to litigate this case, *see* Gov't Mtn. at 10–11, but the case the Government cites says the contrary: "It appears that under Florida law, the appellant had capacity to sue at the time of the complaint, at least insofar as the suit for patent infringement was 'necessary to wind up and liquidate its business and affairs.' Fla. Stat. ch. 607.1421(3) (2001)." *Paradise Creations, Inc. v. UV Sales, Inc.*, 315 F.3d 1304, 1306 (Fed. Cir. 2003); *see id*. at 1308 ("Because the

16

appellant was administratively dissolved on August 23, 1996, before having filed its complaint, it had capacity to sue under Florida law, as necessary to wind up its business and affairs.").

The Government notes that the transfer at issue in this Petition was the transfer of ownership interests in Petitioner 3 GPW LLC.  Gov't Mt. at 11.  But the question of whether that transfer should be voided has been raised *by the Government* in its motion for the very forfeiture order at issue in this Petition.  D.E. 344 at 11.  The Government cannot have it both ways—both claiming that DC Trust is the actual owner and at the same time claiming that ownership by DC Trust should be voided.

The Government's complaint about "authority" to verify, which appears to be purely formal and not substantive, is unfounded and unsupported by any case authority or the text of the statute.  Instead, the text and unquestioned documents that compose the Petition sufficiently establish that both nominally and as a matter of substance, the signatories to the verification page in this case are the correct persons.  The authority of the trustee and real party in interest to act for the Petitioner entities is explained in the text of the petition.  And the claim of lack of clarity as to the institutional positions of the trustee and beneficiary is belied by the existing record in the criminal case and by the numerous sworn representations in the petition itself.

The Government citation of inapposite decisions dealing with petitions that were not sworn to at all (*United States v. Burge*, 829 F. Supp. 2d 664, 667 (C.D. Ill. 2011)) or were signed by other than the actual real-person petitioner does not add any support to the Government's preference as to the way a verification signer is identified (e.g., in the text of the petition, rather than the signature block).  Notably, *United States v. Natalie Jewelry*, No. 14-CR-60094, 2015 WL 150841, at *3 (S.D. Fla. Jan. 13, 2015) (cited at Gov't Mtn. at 7), related only to petitions that were "not signed

17

under penalty of perjury" at all, by anyone; and still the *Natalie Jewelry* court resorted to dismissal only after "specifically warn[ing] the third parties ... to file amended, sworn petitions").

The Government's citation of *United States v. Javat*, Case No. 18-20668-CR-DMM, is also inapt, as the Government never challenged the verification in that case and its fact-bound claim that the signatory died during the pendency of the claim has not resulted in dismissal, but rather the setting of an ancillary hearing to be conducted on July 15, 2021. Finally, the Government's citation of *United States v. Tardon*, Case No. 11-20470-CR-JAL/JG, is off the mark, as the Government never questioned the verification page signatory authority and recognized that the members of an LLC can speak for the LLC through any chosen representative, as they did at the ancillary hearing conducted in that case.

Finally, the Government's citation of *United States v. Lamid*, 663 Fed.App'x 319, 324 (5th Cir. 2016), suffers from a misreading of its holding. In *Lamid*, the panel ruled that a representative of an estate of a deceased defendant could not file a petition on behalf of the estate *after* the time for filing an ancillary petition had passed. *Id*. at 325. The court observed also that—unlike the documentary proof of the trustee and director roles of Americas Fiduciary Ltd., and Timothy D. Richards, respectively, in this case—the petition-signer in *Lamid* had never sought legal authority to act for the petitioner in that case. "But because Rudy did not take these steps, he lacked authority to sue on Mrs. Lamid's behalf." *Id*. *Lamid* says nothing to support the formality claim made by the government.

The Petition in this case was verified by the appropriate persons with real and formal authority, including as to any entity as to which the Government claims formal dissolution.

IV.   **[In the Alternative] If the Court were to find any technical deficiency in the style of the verification page or the identification of the persons signing, or if the Court were to conclude that the Petition otherwise lacks information the submission of which would cure any defect, Petitioners request leave to amend the Petition accordingly in the interest of justice.**

Although "[a] district court is not required to grant a plaintiff leave to amend his complaint sua sponte when the plaintiff, who is represented by counsel, never filed a motion to amend nor requested leave to amend before the district court," *Wagner v. Daewoo Heavy Indus. Am. Corp.*, 314 F.3d 541, 542 (11th Cir. 2002) (*en banc*), where the record shows that any defect is readily curable without prejudice to the opposing party, dismissal without leave to amend is error. *Id.* (modifying rule in *Bank v. Pitt*, 928 F.2d 1108, 1112 (11th Cir. 1991)). *Wagner* makes it clear that dismissal without leave to amend is error where the pleading defect is capable of cure and where the amendment does not expand the claim.

In the ancillary petition context, the key question for amendment is whether the clamant maintains the same claim of interest as asserted in the originally-filed petition. *See United States v. Henry*, 621 Fed.Appx. 968, 974 (11th Cir. 2015) ("Although Nugen omitted important supporting facts from its timely § 853(n) petition and changed its position regarding the nature of its interest in the Audi, this case is distinguishable from [*United States v. Soreide*, 461 F.3d 1351 (11th Cir.2006)]. ... Unlike *Soreide*, Nugen did not switch from asserting only a claim under § 853(n)(6)(B) (the bona fide-purchaser provision) in its timely § 853(n) petition to asserting a belated claim under § 853(n)(6)(A) (the superior-interest provision). *See Soreide*, 461 F.3d at 1355. Consequently, we decline to deem Nugen's § 853(n)(6)(A) theory untimely or improperly raised.").

The amendment of the Petition in this case, either to add additional information to the signature block or to quote additional case law regarding the constructive trust or to respond to other government arguments that Petitioner contends should be heard at an ancillary hearing rather than litigated on the papers, would not change the nature of the interest claimed.  Thus, while Petitioners strongly urge that there is no technical or other defect in the constructive trust claim, if the Court were to conclude that additional factual detail is required, leave should be granted to amend.

The ancillary proceeding determines the ownership of the forfeited property and amounts to "essentially a quiet title proceeding."  *United States v. Gilbert*, 244 F.3d 888, 911 (11th Cir. 2001).  Fed. R. Crim. P.  32.2(c) and 21 U.S.C. § 853(n) allow a third party claiming a cognizable interest to demonstrate that it is the "'rightful owner[]' of forfeited assets."  *Caplin & Drysdale, Chartered v. United States*, 491 U.S. 617, 629 (1989); *see* 21 U.S.C. § 853(n); Fed. R. Crim. P. 32.2(c).  The third party may challenge the forfeiture "*in whole or in part*."  21 U.S.C. § 853(n)(6).  The instant ancillary proceeding cannot effectively act as a quiet title proceeding absent the participation of the Petitioner entities and person whose ownership interest long precedes the criminal conduct, the indictment, and the forfeiture orders in this case.

WHEREFORE, Petitioners request that the Court deny the Motion to Dismiss their Petition in this case, and alternatively request that they be permitted to amend their Petition to correct any technical or other correctable pleading defect.

Respectfully submitted,

  s/ Richard C. Klugh
Richard C. Klugh, Esq.
Fla. Bar No. 305294
Counsel for Petitioners
40 N.W. 3rd Street, PH1
Miami, Florida 33128
Tel. (305) 536-1191
Fax (305) 536-2170
E-Mail rklugh@klughlaw.com