UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 18-CR-20685-WILLIAMS/TORRES

UNITED STATES OF AMERICA

vs.

GUSTAVO ADOLFO HERNANDEZ FRIERI,

      **Defendant.**
_____/

IN RE:

**314 HICKS LLC,
ALLISON DOMENEGHETTI,
OLYMPIA DE CASTRO,
G.H.D.C.,
F.H.D.C.,
A.H.D.C., and**

**MARIA LUCIA HERNANDEZ,
GRAMERCY IRREVOCABLE OPERATING TRUST,
AMERICAS FIDUCIARY LTD.,
3 GRAMERCY PARK WEST LLC, and
HH MASTER SETTLEMENT TRUST,**

      **Third-Party Petitioners.**
_____/

**UNITED STATES' MOTION TO COMPEL DEFENDANT HERNANDEZ FRIERI'S
PRODUCTION OF CERTAIN DOCUMENTS IDENTIFIED IN PRIVILEGE LOG**

The United States of America (the "United States" or the "Government"), through the undersigned Assistant United States Attorneys, respectfully moves to compel production from Defendant Gustavo Adolfo Hernandez Frieri (the "Defendant"), who was served in May 2021 with a Government subpoena for documents in ancillary proceedings regarding forfeited property located at 314 Hicks Street, Brooklyn, New York (the "314 Hicks Brooklyn Townhouse"). After several meet and confer calls and e-mail communications from October 27, 2021 until December

14, 2021, the United States files this motion to compel as the Defendant's production remains incomplete.

In particular, the Defendant continues to withhold documents based on asserted protections (*see* Sept. 20, 2021 "draft" privilege log, attached as **Exhibit A**). Certain withheld documents are subject to the Defendant's appeal [ECF No. 515] and request for stay [ECF No. 514] of the Court's Order To Compel [ECF Nos. 468, 499] production, which overruled the Defendant's assertions of joint defense agreement ("JDA") and marital communications privilege in related forfeiture ancillary proceedings. *See also* Defendant Motion for Leave To File Redacted Copies 3-4, ECF No. 513 (outlining agreement of parties to consolidate, for appeal, documents alleged to be protected by a JDA and marital communications privilege). The Government is not seeking now to compel production of the documents covered by the Defendant's appeal. However, in addition to the now-overruled bases for withholding those (and other) documents identified in the privilege log, the Defendant has also raised other protections, including attorney-client privilege and work-product doctrine. For these documents, the Defendant has failed to make a *prima facie* showing that any asserted protection applies. Further, the Defendant's deposition testimony (attached as **Exhibit B**) contradicts his assertion of privilege for many identified documents. Accordingly, the Court should compel the Defendant's production of the documents not subject to Defendant's appeal.

In further support of this motion, the United States submits the following factual and legal bases.

I. **RELEVANT FACTUAL AND PROCEDURAL BACKGROUND**

There currently are three concurrent forfeiture ancillary proceedings in the above-captioned case as a result of third-party petitions claiming the following preliminarily forfeited property: (1) 597 Hibiscus Lane, Miami, Florida 33137 ("597 Hibiscus Lane"); (2) $900,000 (plus

interest) from the sale of real property; (3) and the 314 Hicks Brooklyn Townhouse.  Olympia De Castro, who is Defendant's ex-wife, is a petitioner in each of these proceedings.

### A. 597 Hibiscus Lane

With respect to 597 Hibiscus Lane, which was forfeited in the Second Preliminary Order of Forfeiture, Ms. De Castro and 597 Hibiscus Revocable Trust ("Revocable Trust") filed a joint petition claiming the property on November 18, 2020.  *See* De Castro and Revocable Trust Petition, ECF No. 262; *see also* Hernandez 2nd Preliminary Order of Forfeiture, ECF No. 239.

The United States sought dismissal of this petition, and U.S. Magistrate Judge Edwin G. Torres issued a Report and Recommendation granting the United States' Motion To Dismiss.  *See* Report and Recommendation, ECF No. 316 (Mar. 7, 2021); *see also* U.S. Motion To Dismiss, ECF No. 264 (Dec. 18, 2020); De Castro and Revocable Trust Response, ECF No. 285 (Jan. 18, 2021); U.S. Reply, ECF No. 286 (Jan. 19, 2021); Order Referring to U.S. Magistrate Judge Torres, ECF No. 287 (Jan. 19, 2021).

Petitioners filed objections to U.S. Magistrate Judge Torres' Report and Recommendation, which remain pending before the Court. *See* De Castro and Revocable Trust Objections, ECF No. 347 (Mar. 23, 2021); Stone Affidavit in Supp. De Castro and Revocable Trust Objections, ECF No. 356 (Mar. 30, 2021); U.S. Response to Objections, ECF No. 357 (Apr. 11, 2021); De Castro and Revocable Trust Reply, ECF No. 359 (Apr. 19, 2021); U.S. Motion To Strike Reply, ECF No. 360 (Apr. 19, 2021); De Castro and Revocable Trust Response to Motion To Strike Reply, ECF No. 361 (Apr. 20, 2021).  Thus, discovery concerning 597 Hibiscus Lane never proceeded.

### B. Approximately $900,000 (plus interest) and Order To Compel

With respect to approximately $900,000 (plus interest), which was forfeited in the Third Preliminary Order of Forfeiture, Ms. De Castro filed a petition claiming the property on February 10, 2021.  *See* De Castro Petition, ECF No. 296; *see also* GDR Petition, ECF No. 297 (petition

filed by Devine Goodman & Rasco, LLP, counsel for Ms. De Castro, which subsequently was withdrawn on Mar. 15, 2021, ECF No. 334); *see also* Hernandez 3rd Preliminary Order of Forfeiture, ECF No. 280.

A scheduling order for the proceedings over the $900,000 (plus interest) was entered on May 20, 2021, and the discovery deadline later was extended to September 3, 2021. *See* Scheduling Order, ECF No. 410; U.S. Motion To Continue Discovery Cut-Off and Hearing Date, ECF No. 417; Order, ECF No. 423.

Ms. De Castro initiated discovery concerning the approximately $900,000 (plus interest), and held depositions of four individuals (Daniel Holtz, Daniel Holtz, Jorge Mora, Keven Danow, and the Defendant). *See* U.S. Motion To Compel 3-4, ECF No. 421; **Exhibit B**, at 262-302 (7/26/2021 Defendant Dep'n 232:13-272:20). The Government served Ms. De Castro with discovery requests on April 13, 2021, including interrogatories and requests for production. *See id.* After production of certain documents, including a redacted financial affidavit, Ms. De Castro then identified certain documents as protected based on a JDA and marital privilege. *See* De Castro's Amended Privilege Log, ECF No. 459-1.

The United States moved to compel production of the documents, which both Ms. De Castro and the Defendant opposed. *See* U.S. Motion To Compel, ECF No. 421 (June 2, 2021); De Castro Response, ECF No. 427 (June 16, 2021); U.S. Reply, ECF No. 431 (June 23, 2021); Defendant Motion To Adopt De Castro Response and Present New Arguments, ECF No. 444 (July 14, 2021); U.S. Response to Defendant Motion To Adopt De Castro Response and Present New Arguments, ECF No. 448 (July 15, 2021); Defendant Reply, ECF No. 451 (July 19, 2021); U.S. Notice of Supplemental Filing, ECF No. 454 (July 29, 2021); De Castro Response to Supplemental Filing, ECF No. 460 (Aug. 4, 2021).

U.S. Magistrate Judge Torres granted the United States' Motion To Compel, which was

adopted by the Court on November 8, 2021, over the Defendant's objections (collectively, the "Order To Compel").[1]  *See* Order Granting Motion To Compel, ECF No. 468 (Aug. 25, 2021); Order Granting Defendant Motion, ECF No. 470 (Aug. 25, 2021) (indicating consideration in Order, ECF No. 468); Defendant Objections, ECF No. 476 (Sept. 13, 2021); U.S. Response, ECF No. 481 (Sept. 22, 2021); Defendant Motion for Leave To File Reply, ECF No. 486 (Oct. 6, 2021); Order Overruling Defendant Objections, ECF No. 499 (Nov. 8, 2021).

In light of the Court's Order To Compel, the Government requested that Ms. De Castro comply and produce the withheld documents by November 17, 2021, which was seven days from when the Order To Compel became final.  *See* Order Granting Motion To Compel (Aug. 25, 2021), ECF No. 468; Order Overruling Defendant Objections, ECF No. 499 (Nov. 8, 2021).

No documents were produced, and Defendant now has moved to stay the Order To Compel. *See* Defendant Motion for Stay, ECF No. 514 (Dec. 14, 2021).

### C. 314 Hicks Brooklyn Townhouse

#### 1. *Third-Party Petitioners and Discovery*

With respect to the 314 Hicks Brooklyn Townhouse, which was forfeited in the Fourth Preliminary Order of Forfeiture, two joint petitions claiming the property have been filed.  *See* De Castro et al Petition, ECF No. 383; Maria Lucia Hernandez et al Petition, ECF No. 418; *see also* Hernandez 4th Preliminary Order of Forfeiture, ECF No. 353.

First, Ms. De Castro, Allison Domeneghetti, G.H.D.C., F.H.D.C., A.H.D.C., and 314 Hicks LLC filed a joint petition on April 29, 2021.  *See* De Castro et al Petition.  Then, Maria Lucia Hernandez, Gramercy Irrevocable Operating Trust, Americas Fiduciary Ltd., 3 Gramercy Park

---

[1] The parties had 14 days to appeal U.S. Magistrate Judge Torres' Order, and De Castro requested an extension of that deadline until September 8, 2021.  *See* Magistrate L.R. 4(a)(1); Fed. R. Civ. P. 72(a); *accord* Fed. R. Crim. P. 59(a). After the period to appeal expired, Ms. De Castro attempted to join Defendant's Objections to the Order.  *See* De Castro's Notice of Joinder, ECF No. 477 (Sept. 14, 2021).  Accordingly, the only party who objected to Order To Compel was the Defendant.

5

West LLC, and HH Master Settlement Trust filed a joint petition on May 28, 2021. *See* Maria Lucia Hernandez et al Petition. The United States has sought to dismiss the joint petition filed by Maria Lucia Hernandez and others, which matter has been fully briefed and is pending before the Court. *See* U.S. Motion To Dismiss, ECF No. 424 (June 7, 2021); Maria Lucia Hernandez et al Response, ECF No. 430 (June 21, 2021): U.S. Reply, ECF No. 432 (June 24, 2021).

A scheduling order for the proceedings over the 314 Hicks Brooklyn Townhouse was entered on August 25, 2021, and the discovery deadline was initially August 31, 2021, "but may be extended if there are pending discovery disputes before the Court." *See* Scheduling Order, ECF No. 469.

The Government served Ms. De Castro, Ms. Domeneghetti, and 314 Hicks LLC with discovery requests on May 17, 2021, including interrogatories, requests for production, and notices of depositions. *See* U.S. First Set of Requests for Production to De Castro, ECF No. 450-6; U.S. First Set of Requests for Production to Domeneghetti, ECF No. 450-7; U.S. First Set of Interrogatories to Domeneghetti, ECF No. 450-8; Notice of Taking Deposition to De Castro, ECF No. 450-9; Notice of Taking Deposition to Domeneghetti, ECF No. 450-10; Notice of Taking Deposition 314 Hicks LLC, ECF No. 450-11.

Ms. De Castro, Ms. Domeneghetti, and 314 Hicks LLC sought a protective order to avoid the proposed party depositions, which matter has been fully briefed and currently is pending before the Court. *See* De Castro et al Motion for Protective Order, ECF No. 450 (July 15, 2021); U.S. Opposition, ECF No. 453 (July 27, 2021); De Castro et al Reply, ECF No. 455 (Aug. 2, 2021).

Also, from June 30 until September 21, 2021, Ms. De Castro and Ms. Domeneghetti produced documents in response to the written discovery requests. Neither produced a privilege log, and counsel for Ms. De Castro indicated previously that no "relevant financial" documents had been withheld, and that the Court's Order To Compel did not bear on Ms. De Castro's

6

production in the ancillary proceeding concerning the 314 Hicks Brooklyn Townhouse. *See* 8/25/2021- 9/2/2021 E-mail correspondence (on file with undersigned counsel).[2] With the Defendant, Ms. De Castro and her counsel have since agreed to produce a privilege log identifying withheld documents. *See* Defendant Motion for Leave To File Redacted Copies 3, ECF No. 513 (Dec. 14, 2021).

## 2. *Defendant's Subpoena Production and Privilege Log*

Also, in the ancillary proceedings concerning the 314 Hicks Brooklyn Townhouse, the United States served the Defendant with two subpoenas.

On May 13, 2021, the United States served the Defendant a subpoena for documents. *See attached* **Exhibit F**. Then, on June 4, 2021, the United States served the Defendant a subpoena for his deposition. *See attached* **Exhibit G**. On July 20 and 26, 2021, the United States deposed the Defendant (transcripts attached as **Exhibit B** and deposition exhibits attached in **Exhibit C**, **Exhibit D**, and **Exhibit E**).

Between June 17 and October 12, 2021, the Defendant produced records in response to the Government's subpoena. During that production, on September 20, 2021, the Defendant produced a "draft" privilege log (**Exhibit A**).

On October 27, 2021, after review of the Defendant's production, the undersigned counsel sent an e-mail requesting a meet and confer call on the Defendant's privilege log. *See* 10/27/2021 E-mail correspondence (on file with undersigned counsel).

---

[2] As part of this e-mail correspondence, on August 31, 2021, counsel for Ms. De Castro wrote:

> I have had a chance to review Magistrate Judge Torres' ruling on the Motion to Compel. The order applies to the Petition for $900,000 (not to the 314 Hicks Petition) and addresses communications "shared among Ms. De Castro, Mr. Hernandez Frieri, and DGR." **I see no findings or conclusions about other JDA protected communications. Additionally, I don't know whether counsel for any of the parties plan to contest the Order.**

*See* 8/25/2021- 9/2/2021 E-mail correspondence (on file with undersigned counsel) (bold emphasis added).

On November 8, 2021, a meet and confer call was held and the undersigned counsel conferred with counsel for the Defendant regarding the United States' concerns regarding the documents identified in the Defendant's privilege log. After the meet and confer, also on November 8, 2021, the Court affirmed the Order To Compel, overruling the Defendant's objections based on assertions of a JDA and marital privilege. *See* Order Overruling Defendant Objections, ECF No. 499; *see supra* 4-5.

On November 9, 2021, the undersigned counsel sent an e-mail noting the Order To Compel, and requesting that the Defendant produce, by November 17, 2021, the withheld documents alleged to have been subject to the JDA and marital communications privilege. *See* 11/9/2021 E-mail correspondence (on file with undersigned counsel).

On November 15, 2021, the undersigned counsel sent another e-mail, this time providing a summary of the November 8, 2021 meet and confer call, and additional details requested by counsel for the Defendant to support the Government's concerns regarding other withheld documents identified in the privilege log. *See* 11/15/2021 E-mail correspondence (on file with undersigned counsel). In this e-mail, the undersigned counsel also requested that all other documents (aside from those alleged to have been subject to the JDA and marital privilege) be produced by November 18, 2021, as initially requested in the October 27, 2021 e-mail. *See id.*

On November 16, 2021, counsel for the Defendant sent an e-mail informing the Government of the Defendant's intention to appeal the Order To Compel, and request a stay pending appeal. *See* 11/16/2021 E-mail correspondence (on file with undersigned counsel).

On November 18, 2021, the parties held a second meet and confer call, and discussed the Defendant's plan to appeal and request a stay, and whether it impacted the proceedings concerning the 314 Hicks Brooklyn Townhouse as the Order To Compel was entered in proceedings concerning the approximately $900,000 (plus interest).

On November 30, 2021, the undersigned counsel followed up with the Defendant as no appeal or request for stay had been filed, and there had been no updates on the Defendant's privilege log and production after the two meet and confer calls and several e-mails. The undersigned counsel asked for an update by December 6, 2021, and advised that the Government may otherwise need to bring this matter to the Court's attention.

On December 6, 2021, counsel for the Defendant advised via e-mail that the privilege-log issues raised by the United States were still pending the Defendant's and his other counsel's review, and on December 7, 2021, the United States advised its intention to put the unresolved issues before the Court. *See* 12/6/2021-12/7/2021 E-mail correspondence (on file with undersigned counsel).

On December 14, 2021, after discussions continued over e-mail and phone calls between December 8 and 14, 2021, the Defendant filed a Notice of Appeal regarding the Order To Compel, and a Motion for Stay of the Order To Compel (and not the ancillary proceedings). *See* ECF Nos. 514, 515; *see also* 12/8/2021-12/14/2021 E-mail correspondence (on file with undersigned counsel). The Defendant and all third-party petitioners in the ancillary proceedings concerning the 314 Hicks Brooklyn Townhouse have now agreed that the "appellate decision will conclusively resolve the validity of any joint defense asserted by [Defendant] Hernandez with them." *See* Defendant Motion for Stay 3, ECF No. 514; *see also* Defendant Motion for Leave To File Redacted Copies 3-4, ECF No. 513 ("[T]he Government and all third-party petitioners (represented by attorneys Rasco, Moss, Klugh and Rabin) have agreed that the outcome of Hernandez's appeal from this Court's compulsion order directed at De Castro [ECF#499] will conclusively resolve the validity of any joint defense privilege asserted by Hernandez with these third-parties over the withheld documents not yet the subject of a motion to compel or compulsion order [in the 314 Hicks Brooklyn Townhouse proceedings].").

9

Although the appeal would resolve certain documents identified in the Defendant's privilege log,[3] the Defendant has asserted privileges for other written communications that would not be subject to the appellate decision. Accordingly, the United States now files this motion in order to apprise the Court on the status of the Defendant's outstanding production in response to the Government's May 13, 2021 subpoena, and to ensure that these discovery issues are timely resolved.

## II. ARGUMENT

These ancillary forfeiture proceedings are governed by Federal Rule of Criminal Procedure 32.2. Under Criminal Rule 32.2(c)(1)(B), discovery is not automatic in ancillary forfeiture proceedings, but where the Court authorizes it, the Federal Rules of Civil Procedure apply. Civil Rule 26 requires that a party that withholds information based on privilege ". . . (i) expressly make the claim; and **(ii) describe the nature of the documents, communications, or tangible things not produced or disclosed—and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim**." Fed. R. Civ. P. 26(b)(5)(A) (bold emphasis added). In addition, under Local Rule 26.1, the party asserting privilege as to any document shall disclose:

> . . . (1) the type of document . . . ; **(2) general subject matter of the document** or electronically stored information . . . ; (3) the date . . . of the document or electronically stored information; and **(4) such other information as is sufficient to identify the document** or electronically stored information for a subpoena duces tecum, including, where appropriate, the author, addressee, and any other recipient of the document or electronically stored information, **and, where not apparent, the relationship of the author, addressee, and any other recipient to each other.**

---

[3] The Defendant has asserted a JDA not only with counsel for Ms. De Castro (Margot Moss and Guy Rasco) on his privilege log, but with others, including e-mails regarding 3 Gramercy Park West, and with a certified public accountant. The privilege log also generally asserts a marital communications privilege but does not identify any particular e-mail subject to such claimed privilege. Accordingly, to avoid confusion on the applicability of the appellate decision, the United States has asked that the Defendant specifically define the e-mails raised in the 314 Hicks Brooklyn Townhouse proceedings that would be subject to the appeal of the Order To Compel. *See also* Defendant Motion for Leave To File Redacted Copies 4.

L.R. 26.1(e)(2)(B)(ii)(a) (bold emphasis added). For subpoenaed documents, a privilege log shall be served no later than 14 days after "any document production . . . from which some information or documents are withheld on the basis of a claim of privilege or work product protection," unless otherwise agreed upon by the parties or ordered by the Court. L.R. 26(e)(2)(E).

Between June 17 and October 12, 2021, the Defendant produced documents responsive to the Government's May 13, 2021 subpoena. During that time, the Defendant also produced the September 20, 2021 privilege log (**Exhibit A**), which is marked "draft." In several e-mails and meet and confer calls from October 27 until December 14, 2021, the United States raised concerns regarding the specificity of the Defendant's privilege log, and whether asserted protections applied. The privilege log does not sufficiently identify the subject matter to ascertain whether the asserted protection applies. *See* Fed. R. Civ. P. 26(b)(5)(A); *see also Campero USA Corp. v. ADS Foodservice, LLC*, 916 F. Supp. 2d 1284, 1293 (S.D. Fla. 2012) (party claiming privilege "must" *inter alia* "identify the evidence that establishes that each element of the privilege applies"); *Johnson v. Gross*, 611 F. App'x 544, 547 (11th Cir. 2015) (party failed to establish privilege applied because it failed to present the information required by Fed. R. Civ. P. 26(b)(5)(A)). In addition, for certain identified documents, no privilege can exist based on the Defendant's deposition testimony (**Exhibit B**). Accordingly, the Court should compel production of the documents.

Aside from the e-mails for which the JDA and marital communications privilege have been asserted and are subject to the Defendant's appeal of the Court's Order To Compel,[4] the documents

---

[4] *See supra* 10 & footnote 3. Although the United States is still confirming with counsel for the Defendant the universe of documents identified in the 314 Hicks Brooklyn Townhouse proceedings that would be subject to the appellate decision on the Order To Compel, preliminary discussions indicate that they would at least include the following: (1) e-mails with Margot Moss (line items 48-53); (2) e-mails with Guy Rasco (line items 63-84); and (3) e-mails for which a marital communications privilege are being raised, which are not specifically identified in the log (line item 130). *See* **Exhibit A.** Accordingly, those e-mails are not raised in this motion.

11

identified in the Defendant's privilege log can be generally categorized as follows: (A) e-mails and a letter concerning 3 Gramercy Park West (referred to as "3 GPW" or "Gramercy Apartment") (line items 1-47 on the privilege log); (B) e-mails with Gwendolyn Richards, Esq. and Tim Richards, Esq. (line items 54-62); (C) e-mails with Frank Rosillo, a certified public accountant ("CPA") (line items 85-95, 101-129); and (D) e-mails with Jeffrey Neiman, Esq. (line items 96-100). The United States addresses each of these categories in greater detail below.

### A. Line Items 1-47: Gramercy Apartment

For each communication identified in line items 1-47, the Defendant has raised "Attorney/Client" and "Work Product" as his bases for withholding production, and summarized the subject matter as "Communications pursuant to / in furtherance of legal advice re: 3 GPW arbitration and / or conversion of 3 GPW to a coop." *See* **Exhibit A**, at 1-10. According to counsel, the Defendant currently is categorizing these communications as either related to the arbitration or conversion, and not both, to help clarify the subject matter. During the November 8, 2021 meet and confer call, counsel also indicated that the Defendant asserted these privileges as "manager" and "occupant" of the Gramercy Apartment. However, at the time of these communications (dated from February 11 to November 22, 2019), the Defendant was neither.

The earliest identified communication was sent on February 11, 2019 (line item 19), which is after February 1, 2019—when Ms. De Castro became the nominal manager for 3 Gramercy Park West LLC. *See* LLC Agreement, ECF No. 383-14 (also Dep'n Gov't Ex. 14, **Exhibit E**, at 1-19). During his deposition, the Defendant also testified that he no longer was involved with 3 Gramercy Park West LLC in 2018. *See* **Exhibit B**, at 155-56, 160-61 (7/20/2021 Defendant Dep'n Tr.

155:17-156:16 and 160:25-161:13).[5] Thus, as a third party with no legal relationship to the Gramercy Apartment, he has no claim to any privilege.

### B. Line Items 54-62: Gwendolyn Richards, Esq., and Tim Richards, Esq.

For each communication identified in line items 54-62, the Defendant has raised "Attorney/Client" and "Work Product" as his bases for withholding production, and summarized the subject matter as "Communications pursuant to / in furtherance of legal advice." *See* **Exhibit A**, at 11-12. The subject matter otherwise is left undefined in the privilege log, and only distinguishable because the e-mail communications are from either Gwendolyn or Tim Richards.[6]

Regardless, it appears that these e-mails, all dated in 2021, are not subject to any "Attorney/Client" or "Work/Product" protections based on the Defendant's deposition testimony.

---

[5] The Defendant testified as follows:

| 7/20/2021 Defendant Dep'n Tr. 155:17-156:16 | 7/20/2021 Defendant Dep'n Tr. 155:17-156:16 |
|---|---|
| 17 **Q. And were you the manager of 3 Gramercy Park** | 25 **Q. And, Mr. Hernandez, do you recognize this** |
| 18 **West LLC at the time that transfer took place?** | 1 **document?** |
| 19 A. No, I believe not. I believe that I was no | 2 A. Yes, I do. |
| 20 longer manager of 3 Gramercy Park West LLC at the time | 3 **Q. What is it?** |
| 21 the transfer took place. | 4 A. I believe that this is an exchange with the |
| 22 **Q. And who was the manager at that time?** | 5 Gramercy Park co-owners from April 10th, 2019, that |
| 23 A. I believe that the manager at the time was | 6 addresses the legal fees owed by the co-ownership for |
| 24 Olympia de Castro. | 7 litigation of the building, the attorneys Anderson & |
| 25 **Q. And when did that change in manager occur, if** | 8 Ochs, and Bonnie, I forget her last name, that |
| 1 **you recall?** | 9 represented the Gramercy Park co-ownership in that |
| 2 A. I do not recall exactly, but I believe it was | 10 litigation. |
| 3 sometime in the fourth quarter, third or fourth quarter | 11 **Q. When this was sent on April 10th 2018, did you** |
| 4 of 2018. | 12 **have a role at 3 Gramercy Park West LLC?** |
| 5 **Q. And was there any documents you are aware of on** | 13 A. I do not believe that I did, no. |
| 6 **behalf of Gramercy Irrevocable Operating Trust that** | |
| 7 **transfers that interest to one of the DC Trusts?** | |
| 8 A. I cannot say that I'm aware of a specific | |
| 9 document. I believe that I have seen in the production | |
| 10 of documents -- I can't saw that I do, no. I don't | |
| 11 know. | |
| 12 **Q. By the fourth quarter of 2018, were you** | |
| 13 **involved in the 3 Gramercy Park West LLC?** | |
| 14 A. I believe not. I believe that I had resigned, | |
| 15 as I said, sometime on or around the third or the fourth | |
| 16 quarter 2018. | |

[6] During the November 8, 2021 meet and confer, counsel for Defendant indicated that further consultation with Mr. Michael Pasano, also counsel for the Defendant, would be required to provide additional details. Mr. Pasano has been copied on e-mail communications regarding the privilege log since October 27, 2021, and as of December 7, 2021, consultation had not yet occurred, as Mr. Pasano was out of the country and unavailable until this week. The United States has not received any update on these communications as of writing.

13

During his deposition, the Defendant testified, without raising any privilege, that he had communicated with Timothy Richards in 2021 to obtain documents for production. *See* **Exhibit B**, at 124 (7/20/2021 Defendant Dep'n Tr. 124:2-124:7, 124:17-124:21).[7] The Defendant also expressed uncertainty as to his relationship to Mr. Richards, noting that prior to that conversation, he had not spoken with Mr. Richards for about a decade and had not "dealt with the trusts" related to Mr. Richards "in any capacity," except to ask for documentation for production. *See id.* at 124-25, 150 (7/20/2021 Defendant Dep'n Tr. 124:22-125:24; 150:1-150:20).[8]

---

[7] The Defendant testified as follows:

| 7/20/2021 Defendant Dep'n Tr. 124:2-124:7 | 7/20/2021 Defendant Dep'n Tr. 124:17-124:21 |
|---|---|
| 2 **Q. And when was the least *[sic]* time you communicated** <br> 3 **with Timothy Richards?** <br> 4 A. I communicated with Timothy Richards, I want to <br> 5 say about six to eight weeks back, or perhaps a bit <br> 6 longer, in the context of the document production <br> 7 request. . . . | 17 **Q. And so when you communicated, was that in** <br> 18 **writing, e-mail, text messages, phone calls, how did you** <br> 19 **communicate with him?** <br> 20 A. I communicated with Tim Richards via e-mail and <br> 21 over the phone. |

[8] The Defendant testified as follows:

| 7/20/2021 Defendant Dep'n Tr. 124:22-125:24 | 7/20/2021 Defendant Dep'n Tr. 150:1-150:20 |
|---|---|
| 22 **Q. And how frequent did you speak with Timothy** <br> 23 **Richards before then?** <br> 24 A. Well, I had not spoken with him in probably a <br> 25 bit over ten years. Probably a little bit more, a <br> 1 little bit less. <br> 2 **Q. And what did Timothy Richards do on behalf of** <br> 3 **Gramercy Irrevocable Operating Trust?** <br> 4 A. Timothy Richards served as director for <br> 5 America's Fiduciary LTD, which was the trustee for the <br> 6 Gramercy Irrevocable Operating Trust. <br> 7 **Q. And over the last ten years, you in your role** <br> 8 **at the director of the protector had no communications** <br> 9 **with Timothy D Richards?** <br> 10 A. No, I do not recollect having any <br> 11 communications since I do not -- yes, I do not recollect <br> 12 having any communications with Tim Richards in my role <br> 13 as codirector of H&H Protectors for the Gramercy <br> 14 Irrevocable Trust. <br> 15 **Q. And you said that you talked to him about the** <br> 16 **document production six to eight weeks back. What** <br> 17 **documents were you seeking from him?** <br> 18 A. So the 3 Gramercy Park West LLC corporate <br> 19 documents and the Gramercy Irrevocable Operating Trust <br> 20 documents, the HH Master Settlement Trust documents, I <br> 21 believe that those are the documents that I requested <br> 22 for them to provide a copy. <br> 23 **Q. And he provided you that copy?** <br> 24 A. Yes, they did. | 1 **Q. Mr. Hernandez, what is the status of HH Master** <br> 2 **Settlement?** <br> 3 A. Again, what I understand is that the Global <br> 4 Securities related entities have been dissolved or are <br> 5 in the process of being dissolved. I don't know the <br> 6 exact status of the HH Master Settlement Trust. <br> 7 **Q. What in what capacity did you last deal with** <br> 8 **that trust then?** <br> 9 A. I just requested information for Richards & <br> 10 Associates in order to produce the documents. <br> 11 **Q. And do you know what the current status of** <br> 12 **Gramercy Irrevocable Trust is?** <br> 13 A. No, I do not know what is the exact status of <br> 14 the Gramercy Irrevocable Trust. <br> 15 **Q. And in what capacity did you last deal with** <br> 16 **that trust?** <br> 17 A. Again, I don't believe that I have dealt with <br> 18 the trust in any capacity. I have reached out to the <br> 19 attorneys in order to obtain copies of that <br> 20 documentation. |

### C. Line Items 85-95, 101-129: Frank Rosillo, CPA

For each communication identified in line items 85-95, 101-129, the Defendant has raised "Attorney/Client" as his basis for withholding production. *See* **Exhibit A**, at 15-21. In addition, for some of these line items, the Defendant has asserted additional protections, including "Work-Product" (line items 85-95, 102-104, 106-110, 118-125), "Joint Defense" (line items 86, 102-103, 106-110, 114, 118-125), and "Marital Communications" (line items 106, 123-124). *See id.* However, most of the identified e-mails do not even include an attorney among the recipients (line items 101-103, 105-129). *See id.*

The privilege log summarized the subject matter of these e-mails as "Communications pursuant to / in furtherance of legal advice." *See id.* Otherwise, the subject matter is only suggested by the e-mails being sent or received by Frank Rosillo, a CPA.[9] There is no accountant-privilege under federal law and no state-created privilege has been recognized. *Couch v. United States*, 409 U.S. 322, 335 (1973). Based on federal income tax returns provided by counsel for the Defendant in accordance with his Plea Agreement, Mr. Rosillo appears to have been directly engaged by the Defendant, and the Defendant testified that Mr. Rosillo has been his accountant since 2013 or 2014. *See* **Exhibit B**, at 168-69 (7/20/2021 Defendant Dep'n Tr. 168:24-169:10).[10]

### D. Line Items 96-100: Jeffrey Neiman, Esq.

Finally, the privilege log identifies a handful of e-mails sent by Jeffrey Neiman (line items

---

[9] *See supra* footnote 6. Counsel for Defendant indicated that further consultation with Mr. Pasano, also counsel for the Defendant, would be required to provide additional details.

[10] The Defendant testified as follows:

| 7/20/2021 Defendant Dep'n Tr. 168:24-169:10 | |
|---|---|
| 24 **Q. Has Mr. Frank Rosillo worked for you?** <br> 25 A. Frank Rosillo's firm has been my CPA that did <br> 1 my tax filings, yes. <br> 2 **Q. And since when?** <br> 3 A. I'd like to say 2013, 2014, approximately. <br> 4 **Q. And did he prepare any income tax returns for** <br> 5 **you?** <br> 6 A. Yes | 7 **Q. And which years, if you recall?** <br> 8 A. I am very certain that from 2017 onwards, Frank <br> 9 Rosillo's firm, CPA firm, prepared my tax accounts, tax <br> 10 filing. |

96-100), for which the Defendant has asserted "Attorney/Client" and "Work Product" as his bases for withholding production. *See* **Exhibit A**, at 16-17.[11] All of these e-mails are summarized as "Communications pursuant to / in furtherance of legal advice." *See id.* However, each of these e-mails were also sent to Mr. Rosillo.[12] Again, the Defendant has failed to set forth a *prima facie* showing that any protection applies to these documents, or that any privilege has not been waived by the presence of a third party.

WHEREFORE, pursuant to Federal Rule of Criminal Procedure 32.2, Federal Rule of Civil Procedure 26, and Local Rule 26.1, the United States respectfully requests that the Court compel the Defendant's production of the documents identified in line items 1-47, 54-62, 85-95, 101-129, and 96-100 of his privilege log.

### LOCAL RULES 7.1(a)(3) & 88.9 CERTIFICATION

As set forth above, counsel for the United States has conferred since October 27, 2021, with counsel for the Defendant in multiple meet and confer calls and e-mails, and have made good-faith efforts to resolve the issues raised in the motion but have been unable to do so.

Respectfully submitted,
JUAN ANTONIO GONZALEZ
UNITED STATES ATTORNEY

By: */s/ Nalina Sombuntham and Joshua Paster*
Joshua Paster, Court ID No. A5502616
Nalina Sombuntham, Fla. Bar No. 96139
Assistant United States Attorneys
99 N.E. 4th Street, 7th Floor
Miami, Florida 33132-2111
Telephone: (305) 961-9224 / (305) 961-9342
Facsimile: (305) 536-4089
joshua.paster@usdoj.gov
nalina.sombuntham@usdoj.gov
*Counsel for United States of America*

---

[11] Several of the e-mails identified above as being sent by Mr. Rosillo count Jeffrey Neiman among the recipients as well (line items 87-95). *See* **Exhibit A**, at 15-16.

[12] *See supra* footnote 6. Counsel for Defendant indicated that further consultation with Mr. Pasano, also counsel for the Defendant, would be required to provide additional details.