UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 18-CR-20685-WILLIAMS

UNITED STATES OF AMERICA

vs.

GUSTAVO HERNANDEZ FRIERI,

    Defendant.
_____/

### UNITED STATES' SUPPLEMENT TO ITS MOTION FOR FORFEITURE OF BAIL PURSUANT TO FEDERAL RULE OF CRIMINAL PROCEDURE 46(f)

The United States of America, by and through the undersigned Assistant United States Attorney and Department of Justice Trial Attorney, pursuant to Your Honor's direction during the February 24, 2022, status conference, respectfully supplements the United States' motion for forfeiture of defendant GUSTAVO HERNANDEZ FRIERI's bail pursuant to Federal Rule of Criminal Procedure 46(f). In the prior motion, ECF No. 493, the United States stated the following:

1. On August 16, 2018, a federal grand jury indicted Defendant HERNANDEZ with one count of conspiracy to commit money laundering, several substantive counts of money laundering, and one count of interstate and foreign travel in aid of racketeering. [ECF No. 19.]

2. On May 3, 2019, after being extradited from Spain, HERNANDEZ made his initial appearance in federal court in this criminal case. [ECF No. 95.]

3. On May 17, 2019, at a status conference regarding bond, Magistrate Judge Jacqueline Becerra ordered that "In addition to that, he will execute whatever is necessary with the

bond paperwork to make sure that his interest in that property [597 Hibiscus Lane, Miami, Florida] is also pledged as part of the bond.

4. On May 22, 2019, the Court filed two appearance bonds, each signed by HERNANDEZ and the same two sureties, one being an individual Juan Carlos Gomez. [ECF No. 102 and 103.] Both bonds required that HERNANDEZ not attempt to encumber any properties or investments and that "[n]one of the signatories may sell, pledge, mortgage, hypothecate, encumber, etc., any property they own until the bond is discharged, or otherwise modified by the Court." [ECF No. 102 and 103.]

5. On October 1, 2019, HERNANDEZ signed a document titled "Notice Of Resignation As Co-Trustee For The 597 Hibiscus Lane Revocable Trust," which gave notice of HERNZNDEZ's "resignation as Co-Trustee of 597 Hibiscus Lane Revocable Trust." In addition, the document state that "Olympia De Castro is to remain as sole Trustee" of the 597 Hibiscus Lane Revocable Trust.

6. On November 26, 2019, HERNANDEZ pleaded guilty to Count 1 of the Indictment. [ECF No. 162.]

7. On January 24, 2020, HERNANDEZ and his now ex-wife Olympia De Castro entered into a Marital Settlement Agreement and Parenting Plan. In the Marital Settlement Agreement and Parenting Plant, HERNANDEZ agreed to commit "resign as co-settlor" of the trust holding the property located at 597 Hibiscus Lane, Miami, Florida 33137.

8. On February 16, 2021, HERNANDEZ entered into a Guaranty Agreement "in favor of the Great Bhakta Corp" in which HERNANDEZ "agreed to guaranty the payment and performance of Borrower's obligations under" a loan. The loan was made to Charlemagne Kaiser, LLC from Great Bhakta Corp.

9. On April 30, 2021, HERNANDEZ, at the conclusion of a two-day sentencing was sentenced to 46 months' imprisonment. [ECF No. 392.] At the sentencing hearing, testimony and evidence were presented proving that HERNANDEZ did not report his employment to his probation officer as required by the bond.

10. HERNANDEZ surrendered to the prison facility to which he was designated by the Bureau of Prisons on July 29, 2021.

11. On August 12, 2021, counsel for HERNANDEZ approached the United States as to their position with respect to exoneration of HERNANDEZ's bond. The United States, citing Federal Rule of Criminal Procedure 46(f), stated that the United States' position was that HERNANDEZ had violated his bond and a complete exoneration of the bond was not appropriate. The United States proposed that the sureties be discharged and that $50,000 of the $150,000 cash bond be returned to HERNANDEZ and the sureties. Counsel for HERNANDEZ never replied to this proposal.

12. On October 19, 2021, HERNANDEZ moved for the exoneration of bond, discharge of sureties, and return of cash collateral ("the Motion"), which stated the United States opposed the relief sought.

13. On October 21, 2021, the Court granted the Motion. [ECF No. 488.]

14. Also on October 21, 2021, after entry of the Order granting the Motion, the United States emailed the Court stating that the United States had opposed the Motion and intended to file a response.

15. After the email to the Court, also on October 21, 2021, the Court held a status conference. At the status conference, the Court stayed the Order, ECF No. 488, and provided the United States until Monday, October 25, 2021 to file an objection to the Motion.

16. Also on October 21, 2021, the United States asked counsel for HERNANDEZ if would agree to admit violation and if so, the United States would agree to set aside the forfeiture of bail and release the sureties and return the cash bond, or in the alternative, to modify the Order issued by the Court to keep the issue of a bond violation open and release the sureties and return the cash bond. Counsel for HERNANDEZ stated:

> Gustavo does NOT admit to any bond violation.
> Given that Gustavo timely surrendered, we oppose forfeiture of the bond and submit that the sureties must be exonerated, and the Court must release to them all of the bail money that they deposited in the registry of the Court. See Fed. R. Crim. P. Rule 46(g).

\* \* \*

Since the filing of the prior motion, the United States chose to pursue only two of HERNANDEZ's violations of bond:

(1) HERNANDEZ failed to report his work and employment to his probation officer; and
(2) HERNANDEZ entered into a personal guaranty with Great Bhakta Corp in which HERNANDEZ "agreed to guaranty the payment and performance of Borrower's obligations under" a loan.

The United States and counsel for HERNANDEZ were close to submitting to the Court a proposed stipulation and order resolving the outstanding bond issues. Before the proposed stipulation could be submitted, however, counsel for HERNANDEZ informed the United States that because HERNANDEZ had not paid the monthly fees for a storage unit in Brickell, Florida under HERNANDEZ's name—or failed to arrange properly for payment—the storage company had auctioned off valuable assets belonging to HERNANDEZ, which had been stored or supposedly were stored in HERNANDEZ's storage unit. Below is a summary of the facts concerning the storage unit and its contents based on information gathered by the United States as of the date of this filing:

1. On March 11, 2021, HERNANDEZ's Pre-Sentence Investigation Report ("PSI Report", ECF No. 331) listed as an asset a Patek Philippe Aquanaut watch ("Patek Watch"). (PSI Report ¶¶ 142 and 146.) The PSI Report stated that HERNANDEZ estimated the value of the Patek Watch to be $3,000. (PSI Report ¶ 142.) However, the PSI Report stated that such watches could range in value from $59.87 to $95,317.[1] (PSI Report ¶ 146.) The PSI Report noted that the United States had offered to have the watch appraised to determine its value. (*Id.*)

2. During depositions of HERNANDEZ and Daniel Holtz in third-party ancillary proceedings, the United States learned that HERNANDEZ possessed artwork in his residence at 597 Hibiscus Lane (the property posted for bond, and subject to ancillary-forfeiture proceedings).

3. Prior to these depositions, HERNANEZ never disclosed to Probation or the United States the existence of this artwork.

4. On August 9, 2021, the United States sent an email to defense counsel inquiring about having the Patek Watch appraised, as well as the location of HERNANDEZ's artwork. The United States followed up with multiple email and telephonic communications spanning August, October, and November 2021, repeatedly inquiring about the Patek Watch and the artwork.

5. On November 18, 2021, during a meet and confer call, counsel for HERNANDEZ indicated that the artwork was in a storage facility, and the United States asked for an inventory of the items stored there. On November 30, 2021, the United States followed up on the inventory, and again asked about the location of the Patek Watch, which location still had not been identified.

---

[1] Internet sales of various Patek Philippe Aquanaut show a wide range of retail prices, including a range of up to $500,000, and sales prices of up to $206,841.00. *See, e.g.*, WatchMaxx, https://www.watchmaxx.com/patek-philippe-watch-5168g-010 (last visited March 10, 2022) (listing retail price of Aquanaut at $500,000, and sales price of that model at $206,841.00).

6. On December 6, 2021, counsel for HERNANDEZ stated in an email to the United States that "[a]s to the art in the storage facility: Hernandez has prepared a list that he should be able to produce after we speak with him on Wednesday."

7. On December 8, 2021, counsel for HERNANDEZ advised the United States via telephone and email that "no later than tomorrow," HERNANDEZ would be sending to counsel a list of the artwork in the storage unit, and counsel also advised that the Patek Watch was in the storage facility and would be turned over for appraisal.

8. The United States never received a list of the artwork in the storage unit.

9. On February 2, 2022, the United States emailed counsel for HERNANDEZ, yet again following up on the list of artwork in the storage unit and the Patek-Watch appraisal.

10. On February 7, 2022, counsel for HERNANDEZ advised the United States during a telephonic conference that the storage unit had fallen into arrears and the contents of the storage unit had been auctioned off. In a subsequent email, counsel for HERNANDEZ provided the name and address for the storage unit.

11. On February 8, 2022, in response to an email from the United States, counsel for HERNANDEZ advised via email that HERNANDEZ had paid for the storage unit with a credit card in his name (Mastercard ending in 5481). The credit card had not been disclosed by HERNANDEZ in financial disclosure statements he provided to the United States.

12. On February 9, 2022, counsel for HERNANDEZ provided the United States via email a list of the artists who had painted the artwork (and not the specific pieces); there was no inventory of the artwork. In addition, counsel for HERNANDEZ advised that the Mastercard ending 5481 was to be paid by HERNANDEZ's brother in law, Juan Carlos Gomez, who also is a surety on HERNANDEZ's bonds.

13. Also on February 9, 2022, counsel for HERNANDEZ provided the United States with the public notice for the January 18, 2022, auction of the items in HERNANDEZ's storage unit. The listed value was $991.12.

14. On February 10, 2022, counsel for HERNANDEZ advised the United States that counsel had been informed that the Patek Watch had been in the storage unit that was auctioned off.

15. The United States requested that law enforcement investigate the auction of HERNANDEZ's storage unit and its contents, and issued a subpoena to gather records concerning the unit and auction. During the investigation and based on the subpoena return, the United States learned the following:

   a. HERNANDEZ rented the storage unit on July 23, 2021,[2] and paid for the storage unit through August 31, 2021, with cash;

   b. HERNANDEZ provided the storage unit with a Mastercard ending in 5841 to pay for the storage unit thereafter;

   c. HERNANDEZ provided the following people access to the unit:

      i. Juan Carlos Gomez (HERNANDEZ's brother-in-law)

      ii. An individual, W.J.; and

      iii. Olympia De Castro (HERNANDEZ's ex-wife).

   d. HERNANDEZ provided the storage facility with contact information: (i) two telephone numbers—one belonging to HERNANDEZ and the other belonging to W.J., and (ii) HERNANDEZ's GSA Advisors email address;

---

[2] HERNANDEZ surrendered on July 29, 2021, which was about six-days later.

e.  The storage facility attempted to reach HERNANDEZ via telephone on January 12, 2022, regarding non-payment for the storage unit;

f.  The storage facility attempted to reach HERNANDEZ via email regarding non-payment for the storage unit;

g.  The storage facility sent HERNANDEZ a letter dated December 8, 2021, warning HERNANDEZ that he was in "default for rent and fees" and that the contents of the storage unit would be sold at a private auction on January 18, 2022, if the rent and fees were not paid by January 17, 2022, however, the letter was addressed to 697 Hibiscus Lane, Miami, Florida instead of HERNANDEZ's actual home address in Miami due to a scrivener's error[3];

h.  The person who purchased the contents of the storage unit did not have an inventory of the storage unit's contents and believed he no longer had the artwork from the unit;

i.   The person who purchased the contents said he never saw a watch in the contents of the storage unit;

j.  W.J. did not recall being contacted by the storage facility concerning payment for the storage unit;

k.  Juan Carlos Gomez had been asked by HERNANDEZ to pay the monthly fees for the storage unit with the understanding that HERNANDEZ would reimburse him after HERNANDEZ was released from prison;

---

[3] HERNANDEZ's home at 597 Hibiscus Lane, Miami, Florida was sold in late December 2021 and is believed to have been unoccupied since the fall of 2021.

    l. Juan Carlos Gomez attempted to have his credit card replace HERNANDEZ's credit card as a form of monthly payment for the storage unit, but was unable to do so since Gomez was outside of the United States in Colombia and needed to make the change in person;

    m. When Juan Carlos Gomez returned from Columbia to the United States, he again attempted to replace HERNANDEZ's credit card as a form of monthly payment for the storage unit with his own credit card, but by that time, the storage unit already had fallen into arrears and its contents had been auctioned off;

    n. Juan Carlos Gomez has not seen a watch in the storage unit belonging to HERNANDEZ; and

    o. HERNANDEZ's credit report does not list a credit card held by HERNADEZ ending in 5841.

In an effort to resolve the outstanding bond issue prior to the filing of this supplement, the United States asked counsel for HERNANDEZ via email—twice—if HERNANDEZ would be willing to speak with United States concerning the above-referenced assets, HERNANDEZ's storage unit, its contents, non-payment, and the auction of its contents. Counsel for HERNANDEZ, however, never substantively responded to either email. In addition, the United States proposed to counsel for HERNANDEZ via email that the bond and storage-unit issues could be resolved if HERNANDEZ agreed to forfeit a portion of his cash bail. Again, counsel for HERNANDEZ never substantively responded to the email.

Therefore, the United States respectfully requests that a hearing be set on HERNANDEZ's alleged bond violations and that HERNANDEZ's bond be forfeited. Based on the above-stated facts, the bond violations, HERNANDEZ's characteristics, his underlying crime, his lack of

9

cooperation in the forfeiture of his assets up until and after his surrender to prison, and the dissipation and encumbrance of his assets—including the fact that one of the sureties on his bonds was involved in the dissipation and encumbrance of assets, the United States is seeking a partial forfeiture of HERNANDEZ's cash bail in order to deter him and others from future similar conduct.

## CONCLUSION

WHEREFORE, for the reasons stated above, the United States moves the Court to find that HERNANDEZ has breached conditions of his bonds, order his bail forfeited, and set aside a majority of the bail forfeiture as justice does not require complete bail forfeiture.

Respectfully submitted,

JUAN ANTONIO GONZALEZ
UNITED STATES ATTORNEY

By: */s/ Kurt K. Lunkenheimer*
KURT K. LUNKENHEIMER
Assistant United States Attorney
Court ID No. A5501535
U.S. Attorney's Office - SDFL
99 N.E. 4th Street, Suite 600
Miami, FL 33132-2111
Telephone: (305) 961-9008
Facsimile: (305) 536-4699
Email: Kurt.Lunkenheimer@usdoj.gov

JOSEPH S. BEEMSTERBOER
ACTING CHIEF, FRAUD SECTION

By: */s/ Paul A. Hayden*
Paul A. Hayden
Trial Attorney
Department of Justice
1400 New York Ave., N.W.
Washington, D.C. 20530
Tel. (202) 353-9370
paul.hayden2@usdoj.gov

10