UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 18-20685-CR-WILLIAMS

UNITED STATES OF AMERICA

v.

ABRAHAM EDGARDO ORTEGA,

    DEFENDANT.

_____/

**DECLARATION OF HSI SPECIAL AGENT ALAN G. VEGA
IN SUPPORT OF PRELIMINARY ORDER OF FORFEITURE**

    I, ALAN G. VEGA, under penalty of perjury, declare:

    1.    I am a Special Agent with Homeland Security Investigations ("HSI"), performing the duties provided by law and regulation, and empowered to conduct investigations of offenses against the United States. I have been employed by HSI for the last 16 years. I am currently responsible for conducting and assisting in investigations relating to money laundering, wire fraud, and other federal crimes. I am currently assigned to the HSI Miami Illicit Proceeds and Foreign Corruption Group. I have been assigned to this group for approximately six years. In my current role, I participate in investigations concerning the concealment and laundering of illicitly derived funds by Politically Exposed Persons ("PEPs") and/or Transnational Criminal Organizations ("TCOs").

    2.    I have personally participated in the investigation of the offenses described herein. As a result of this participation, as well as information provided by other law enforcement personnel, I am familiar with all aspects of this investigation. The information contained in this declaration is based upon my personal knowledge and my review of recordings, documents, and records gathered during the course of this investigation, as well as information obtained, directly

or indirectly, from other sources and agents, including information provided to me by other agents and financial analysts who are involved in the investigation. I make this sworn declaration in support of the United States' Motion for Preliminary Order of Forfeiture. Because this declaration is being submitted for a limited purpose, it does not include all of the facts that I have learned during the course of the investigation.

3. At all relevant times, Venezuela had a foreign-currency exchange system under which the government would exchange local currency (bolivars) at a fixed rate for U.S. dollars. The fixed exchange rate had been well below the true economic rate by a substantial factor for several years. For example, in 2014, an individual could exchange $10 million for 600 million bolivars at the true economic rate. If that individual also had access to the government fixed exchange rate, the individual could convert the same 600 million bolivars into $100 million. Essentially, in two transactions, that person could buy $100 million for $10 million.

4. The difference between the fixed rate and the true economic rate created opportunity for fraud and abuse, enabling Venezuelan officials to engage in foreign currency exchange schemes in return for bribes and kickbacks.

5. Petróleos de Venezuela, S.A. ("PDVSA") was Venezuela's primary source of income and foreign currency (namely, U.S. dollars and Euros), and consequently, it funded many of the corrupt foreign exchange schemes.

6. In or around December 2014, PDVSA and Rantor Capital C.A. ("Rantor"), a Venezuelan shell company, entered into a "loan" contract, which Rantor later assigned to Eaton Global Services Limited ("Eaton"), a Hong Kong company. Under the following agreements, Eaton would receive approximately €511 million from PDVSA after only "loaning" PDVSA approximately 7.2 billion bolivars, the market equivalent of approximately €35 million (hereinafter

2

referred to as the "Eaton-Rantor Loan Scheme"):

  (i)  In a <u>loan contract</u> dated on or about December 17, 2014, Rantor agreed to "loan" 7.2 billion bolivars to PDVSA. The "loan" contract was executed by Venezuelan Official 1 as a Vice President of PDVSA. Venezuelan Official 1 was a "foreign official" as defined in the Foreign Corrupt Practices Act ("FCPA").

  (ii)  In an <u>assignment contract</u> dated on or about December 23, 2014, Rantor assigned its rights as PDVSA's creditor under the "loan" contract to Eaton, and PDVSA was given the right to cancel the debt within 180 days by paying $600 million.

  (iii)  In a <u>notice of assignment letter</u> dated on or about December 23, 2014, Eaton sent a notice of the assignment to PDVSA (*i.e.*, Venezuelan Official 1), and suggested that PDVSA repay the 7.2-billion bolivar loan in the Euro equivalent of $600 million.

7.  Based on an attachment to a September 2015 e-mail circulated among conspirators, and as corroborated by recorded conversations, approximately €227 million of the Eaton-Rantor Loan Scheme went to the "Bolichicos" or "Boli" (Defendant Francisco Convit Guruceaga and Conspirator 2). The "Bolichicos" routed approximately €78 million of their €227 million to a confidential source ("CS") for further payment to others.

8.  The CS was tasked with laundering these illicit proceeds from the Eaton-Rantor Loan Scheme for the benefit of Defendant Abraham Edgardo Ortega ("Defendant Ortega") and others. During the course of the conspiracy, the CS was introduced to Defendant Gustavo Adolfo Hernandez Frieri ("Defendant Hernandez"), who oversaw the scheme to launder Defendant Ortega's illicit proceeds.

9.  A summary of the flow of the illicit proceeds derived from the Eaton-Rantor Loan Scheme to the acquisition of the following specific property now sought for forfeiture is attached

3

to this declaration as **Exhibit A**, as well as further described below:

    a. All assets on deposit in account/portfolio number 10.609020 at Zarattini & Co. Bank in Lugano, SWITZERLAND, held in the name of Big Green Valley SA ("**BGV Zarattini Account**"), including, but not limited to, all shares of Global Securities Trade Finance Class C;

    b. All assets on deposit in account numbers 1466054 ("**GSTF CNB Account 6054**"), 1465724 ("**GSTF CNB Account 5724**"), and 55102421 ("**GSTF CNB Account 2421**") at City National Bank in New Jersey held by Global Securities Trade and Finance;

    c. All assets on deposit in account/portfolio number 1303311-00 at Deltec Bank & Trust Limited in Nassau, THE BAHAMAS ("**CS Deltec Account**"), including, but not limited, all shares of Global Securities Trade and Finance Class Series D-1;

    d. Real property located at 2101 South Surf Road, Unit 2E, Hollywood, Florida ("**Sage Condo Unit 2E**"); and

    e. Approximately $2 million in Series A convertible notes of Domaine Select Wine & Spirits, LLC ("**DSWS Series A Convertible Notes**"), a Delaware Limited Liability Company, acquired on or about September 22, 2016, and October 18, 2017, by Global Securities Trade and Finance and Gustavo Hernandez, respectively.

    **A. Funds Laundered into Zarattini, Deltec, and CNB Accounts**

10.    Between on or about January 14, and February 12, 2015, a total of approximately €78,876,101.07 traceable to proceeds from the Eaton-Rantor Loan Scheme was transferred, in three transactions, to an account held by the trustee of the CS' trust (hereinafter the "CS Trust

4

Account").

11. After the CS' receipt of the approximately €78 million traceable to the proceeds of the Eaton-Rantor Loan Scheme, Conspirator 1 and Conspirator 3 told the CS to assign $5 million of their share of the funds to Defendant Ortega. As set forth in the Factual Proffer [ECF No. 65], this $5 million was a bribe payment to Defendant Ortega.

12. Of the approximately €78 million, the CS had transferred approximately €10.3 million to accounts at Deltec Bank & Trust Limited ("Deltec Bank") held in the name of another company owned and controlled by the CS. The CS designated $5 million of the funds on deposit in these accounts for Defendant Ortega.

### 1. BGV Zarattini Account

13. The CS, through another company, was already managing an additional $7 million that belonged to Defendant Ortega. This approximately $7 million was on deposit in account/portfolio number 10.609020 at Zarattini Bank, held in the name of Big Green Valley SA ("Big Green Valley") ("**BGV Zarattini Account**"). These funds were not proceeds of the Eaton-Rantor Loan Scheme, but derived from another illicit scheme at PDVSA.

14. As a result, in early 2016, the CS controlled a total of approximately $12 million for Defendant Ortega's benefit.

15. In furtherance of this laundering scheme, on or about May 5, 2016, Defendant Hernandez sent, via e-mail, a fund subscription agreement for Global Securities Trade Finance ("GSTF"), a Cayman Islands exempted company with limited liability established on or about May 18, 2006. The subscription agreement directed that payment be made by wire transfer to account number 1465724 at City National Bank in New Jersey ("CNB" or "City National Bank"), held in the name of GSTF ("**GSTF CNB Account 5724**").

5

16. At the direction of Defendant Ortega and Defendant Hernandez on or about May 26, 2016, the CS caused the transfer of approximately $7 million on deposit in the **BGV Zarattini Account** to **GSTF CNB Account 5724**. Based on financial and other records, **GSTF CNB Account 5724** appears to have been designated as GSTF's master fund account at City National Bank, GSTF's custodian bank.

17. As a result of this $7 million transfer, Zarattini Bank, on behalf of Big Green Valley, subscribed to GSTF Class C Series C-1 shares, and those shares were subsequently deposited into the **BGV Zarattini Account**. According to financial information and recorded conversations, the GSTF Class C shares have remained on deposit in the **BGV Zarattini Account**.

### 2. GSTF CNB Accounts 6054, 5724, 2421 and CS Deltec Account

18. After **GSTF CNB Account 5724** received the $7 million transfer from the **BGV Zarattini Account**, these funds were further transferred, on or about May 31, 2016, to account number 1466054 at City National Bank, held in the name of GSTF ("**GSTF CNB Account 6054**"). Based on financial and other records, **GSTF CNB Account 6054** appears to have been designated as GSTF's Class C account at City National Bank.

19. In addition, on or about January 21, and February 21, 2017, Defendant Hernandez sent, via e-mail, GSTF subscription agreements to the CS with respect to Defendant Ortega's remaining $5 million in the CS' custody. The agreement sent in February 2017 directed that payment be made by wire transfer to **GSTF CNB Account 6054** for "GSTF SHARE CLASS C."

20. On or about February 24, 2017, at the direction of Defendant Ortega and Defendant Hernandez, the CS instructed Deltec Bank to subscribe to GSTF's Class C using approximately $5 million on deposit in the CS' accounts there.

21. On or about February 28, 2017, approximately $5 million was transferred from

6

account/portfolio number 1303311-00 at Deltec Bank ("**CS Deltec Account**") to **GSTF CNB Account 6054**, which was the account designated for GSTF's Class C. However, as a result of this $5 million transfer, Deltec Bank subscribed to GSTF Class D Series D-1 shares, and not Class C. The Class D subscription was deposited into the **CS Deltec Account**, and those shares have remained on deposit in that account.

22. On or about March 24, 2017, the $5 million was further transferred from **GSTF CNB Account 6054** to account number 55102421 at City National Bank, held in the name of GSTF ("**GSTF CNB Account 2421**"). **GSTF CNB Account 2421** appears to have been designated as GSTF's Class D account at City National Bank.

23. A total of approximately $130,000 traceable to the $5 million was subsequently transferred from **GSTF CNB Account 2421** to **GSTF CNB Account 6054** and **GSTF Account 5724**, resulting in the commingling of proceeds traceable to the Eaton-Rantor Loan Scheme with other funds in all three accounts.

24. By using these "investment" vehicles and commingling funds in **GSTF CNB Account 2421**, **GSTF CNB Account 6054**, and **GSTF Account 5724**, Defendant Hernandez concealed and disguised the nature, location, source, ownership, and control of Defendant Ortega's $12 million in illicit proceeds, in furtherance of the laundering conspiracy.

25. A summary of the aforementioned transactions involving Defendant Ortega's $12 million and **GSTF CNB Account 2421**, **GSTF CNB Account 5724**, and **GSTF CNB Account 6054** is shown in the table below and in green in **Exhibit A**:

| Date | Originating Account | Beneficiary Account | Amount |
|---|---|---|---|
| *$7M Subscription of GSTF Class C Series C-1 on Deposit at BGV Zarattini Account* | | | |
| 5/26/16 | **BGV Zarattini Account** (No. 10.609020) | **GSTF CNB Account 5724** (No. 1465724) | $7,000,000 |
| 5/31/16 | **GSTF CNB Account 5724** (No. 1465724) | **GSTF CNB Account 6054** (No. 1466054) | $7,000,000 |

7

| Date | Originating Account | Beneficiary Account | Amount |
|---|---|---|---|
| *$5M Subscription of GSTF Class D Series D-1 Shares on Deposit at Deltec Bank* | | | |
| 2/28/17 | **CS Deltec Account** Account No. 1303311-00 | **GSTF CNB Account 6054** (No. 1466054) | $5,000,000 |
| 3/24/17 | **GSTF CNB Account 6054** (No. 1466054) | **GSTF CNB Account 2421** (No. 55102421) | $5,000,000 |
| *Other Transfers Between Accounts at City National Bank* | | | |
| 4/30/18 | **GSTF CNB Account 2421** (No. 55102421) | **GSTF CNB Account 5724** (No. 1465724) | $80,000 |
| 6/28/18 | **GSTF CNB Account 2421** (No. 55102421) | **GSTF CNB Account 6054** (No. 1466054) | $50,000 |

26. As of on or about August 16, 2018, **GSTF CNB Account 6054** had a balance of approximately $272,049.16, and such sum has been restrained pursuant to the Amended Protective Order. ECF No. 60.

27. As of on or about August 14, 2018, **GSTF CNB Account 5724** had a balance of approximately $245,305.43 and such sum has been restrained pursuant to the Amended Protective Order. *Id.*

28. As of on or about August 14, 2018, **GSTF CNB Account 2421** had a balance of approximately $301,635.42 and such sum has been restrained pursuant to the Amended Protective Order. *Id.*

29. Accordingly, a total of approximately $818,990.01 involved in the laundering of Defendant Ortega's $12 million in illicit proceeds, or property traceable to such proceeds, remained on deposit at City National Bank in or around August 2018.

**B. Funds Traceable to Defendant Ortega's $12 Million Used To Purchase Real Property and Acquire Wine Business Shares**

30. As detailed above, Defendant Ortega's $12 million in illicit proceeds were transferred into City National Bank accounts controlled by Defendant Hernandez. After these funds were transferred between **GSTF CNB Account 2421, GSTF CNB Account 5724**, and

**GSTF CNB Account 6054**, a portion of these funds were used to acquire shares in a wine business and, after being transferred to accounts in the Miami, Florida, were also used to purchase real property located in Hollywood, Florida.

### 1. Sage Condo Unit 2E

31. After Defendant Ortega's approximately $7 million was deposited into **GSTF CNB Account 6054** on or about May 31, 2016, a total of approximately $120,000 traceable to these illicit proceeds was used to fund the purchase of real property located at 2101 South Surf Road, Unit 2E, Hollywood, Florida ("**Sage Condo Unit 2E**"). Specifically, on or about April 3, 2017, approximately $30,000 was transferred from **GSTF CNB Account 6054** to account number 8984707276 at Wells Fargo Bank, held in the name of Global Securities Management LLC ("GSM" or "Global Securities Management") ("**GSM WF Account 7276**").

32. On or about April 18, 2017, approximately $30,000 was transferred from GSM WF Account 7276 to a trust account for the purchase of **Sage Condo Unit 2E**. On or about April 19, 2017, approximately $90,000 was transferred from **GSTF CNB Account 6054** to GSM WF Account 7276. On or about April 19, 2017, approximately $86,119.83 was transferred from GSM WF Account 7276 to a trust account for the purchase the **Sage Condo Unit 2E**.

33. A summary of the aforementioned transactions involving Defendant Ortega's $7 million and **GSTF CNB Account 6054** is shown in the table below and in orange in **Exhibit A**:

| Date | Originating Account | Beneficiary Account | Amount |
|---|---|---|---|
| *Purchase of Sage Condo Unit 2E* | | | |
| 4/03/17 | **GSTF CNB Account 6054** (No. 1466054) | GSM WF Account 7276 (No. 8984707276) | $30,000 |
| 4/18/17 | GSM WF Account 7276 (No. 8984707276) | Trust Account for **Sage Condo Unit 2E** | **$30,000** |
| 4/19/17 | **GSTF CNB Account 6054** (No. 1466054) | GSM WF Account 7276 (No. 8984707276) | $90,000 |
| 4/19/17 | GSM WF Account 7276 (No. 8984707276) | Trust Account for **Sage Condo Unit 2E** | **$86,119.83** |

9

34. Based on an account reconciliation report for GSTF, the $30,000 transfer to GSM WF Account 7276 was characterized as a "structuring fee" for Serfindata S.A. ("Serfindata"), a Colombian company, while the $90,000 transfer was a "loan" from GSTF to Global Securities Management.

35. On or about March 27, 2017, Serfindata, as borrower, and GSTF, as lender, purportedly entered into a $1-million loan agreement, which was executed on behalf of GSTF by Defendant Hernandez as its director. The loan agreement, as amended on or about June 29, 2017, contemplated a maturity date six months from disbursement on which principal plus a 10-percent interest rate would be repaid to **GSTF CNB Account 6054**. The agreement also contemplated the payment of structuring fees.

36. Based on a financial analysis of **GSTF CNB Account 6054**, the funds transferred to Serfindata as a loan were never fully repaid.

37. Similarly, on or about April 17, 2017, Global Securities Management, as borrower, and GSTF, as lender, purportedly entered into a $90,000 loan agreement, which was executed on behalf of Global Securities Management and Defendant Hernandez on behalf of GSTF. The loan agreement contemplated a maturity date one month after disbursement on which principal and 8-percent interest would be repaid to **GSTF CNB Account 6054**.

38. Based on a financial analysis of **GSTF CNB Account 6054** and the account reconciliation, the funds transferred to Global Securities Management as a loan were never fully repaid.

39. According to closing documents for **Sage Condo Unit 2E**, on or about April 14, 2017, title to **Sage Condo Unit 2E** was transferred to LAND TRUST TH 041117 dated April 10, 2017, after receipt of the approximately $120,000 traceable to Defendant Ortega's $7 million in

illicit proceeds, as well as an additional $900,000 on escrow at a title insurance company.

40. Based on trust documents, Defendant Hernandez's sister-in-law was the trustee of LAND TRUST TH 041117, and she and Defendant Hernandez's brother were the settlors and grantors.

### 2. *DSWS Series A Convertible Notes*

41. In addition to funding loans, a portion of Defendant Ortega's bribery proceeds, approximately $2 million, was used to acquire an interest in Domaine Select Wine & Spirits, LLC ("DSWS"), a Delaware limited liability company. Approximately $1.3 million of this sum was traceable to Defendant Ortega's $7 million on deposit in **GSTF CNB Account 6054**, while the remaining $700,000 was traceable to Defendant Ortega's $5 million on deposit in **GSTF CNB Account 2421**. (Both **GSTF CNB Account 6054** and **GSTF CNB Account 2421** contained illicit proceeds.)

42. Specifically, on or about September 22, 2016, approximately $1 million was transferred from **GSTF CNB Account 6054** to an account held by DSWS. On or about October 23, 2017, approximately $300,000 was transferred from **GSTF CNB Account 6054** to the same account held by DSWS.

43. Also on or about October 23, 2017, approximately $700,000 was transferred from **GSTF CNB Account 2421** to the same account held by DSWS.

44. In total, approximately $2 million traceable to Defendant Ortega's $12 million in bribery proceeds was used to acquire an interest in DSWS via Series A convertible notes ("**DSWS Series A Convertible Notes**"). A summary of these transactions are depicted in yellow on **Exhibit A**.

45. According to agreements dated on or about September 22, 2016, GSTF agreed to

11

purchase $1 million in **DSWS Series A Convertible Notes**. By the maturity date of the notes, on or about September 22, 2021, DSWS agreed to pay GSTF the $1 million plus 10-percent annual interest. The $1 million corresponds with total amount transferred to DSWS from **GSTF CNB Account 6054** on or about September 22, 2016 (as described in paragraph 42 above).

46. According to agreements dated on or about October 18, 2017, Defendant Hernandez, individually, agreed to purchase $1 million in **DSWS Series A Convertible Notes**. By the date of maturity, on or about February 22, 2022, DSWS purportedly agreed to pay Defendant Hernandez the principal sum[1] plus 10-percent annual interest. The $1 million corresponds with total amount transferred to DSWS from **GSTF CNB Account 6054** and **GSTF CNB Account 2421** on or about October 23, 2017 (as described in paragraph 43 above).

47. Based on a financial analysis of **GSTF CNB Account 6054** and **GSTF CNB Account 2421**, DSWS has not repaid the $2 million.

Executed on June __20__, 2019.

Respectfully submitted,

_____
Alan G. Vega, Special Agent
HOMELAND SECURITY INVESTIGATIONS

---

[1] Although the Series A Convertible Notes document listed a $1 million investment, it indicated the principal sum to be repaid was $324,823.33.

12

